ANTHONY J WEIBELL, SBN 238850
KELLY M. KNOLL, SBN 305579
THOMAS R. WAKEFIELD, SBN 330121
QIFAN HUANG, SBN 339672
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: aweibell@wsgr.com
Email: kknoll@wsgr.com
Email: twakefield@wsgr.com
Email: qhuang@wsgr.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| A.B., a minor, by and through his guardian JEN TURNER, C.D.1, C.D.2, and C.D.3 minors, by and through their guardian KIRENDA JOHNSON, E.F.1, and E.F.2, by and through their guardian BARABRA HAYDEN-SEAMAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>GOOGLE LLC, ADMOB GOOGLE INC., and ADMOB, INC.,<br><br>        Defendants. | CASE NO.: 5:23-cv-03101-PCP<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>Date: Jan. 18, 2024<br>Time: 10 a.m.<br>Judge: Hon. P. Casey Pitts<br>Courtroom: 8 |

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUES ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................1

    INTRODUCTION.................................................................................................1

    BACKGROUND...................................................................................................3

        I.     AdMob, Google Play, and the Designed for Families Program.................3

        II.    The Tiny Lab Apps and Prior Litigation.....................................................4

        III.   Plaintiffs and Their Claims Against Google ................................................6

    LEGAL STANDARD ............................................................................................7

    ARGUMENT .........................................................................................................7

        I.     Plaintiffs' Failure to Provide a Short, Plain Statement of Any Timely Claims Requires Dismissal Under Rule 8 ....................................................7

        II.    Plaintiffs Lack Standing to Seek Prospective Injunctive Relief ..............10

        III.   Plaintiffs Premise Their Case on a Fundamental Misunderstanding of COPPA, Which Preempts All Their State-Law Claims........................11

        IV.   Plaintiffs Fail to State a Claim Under California's Unfair Competition Law....................................................................................14

              A.     Plaintiffs Lack Standing Under the UCL .....................................15

              B.     Plaintiffs Have Failed to Allege Wrongful Conduct Under Any Prong of the UCL ...............................................................17

              C.     Plaintiffs Have No Available Remedies Under the UCL..............18

        V.    Plaintiffs Fail to State a Claim Under New York's and Florida's Consumer-Protection Laws .......................................................................18

        VI.   Plaintiff Fails to State a Claim for California Privacy Violations.............21

        VII.  Plaintiff Fails to State a Claim for Unjust Enrichment ............................24

    CONCLUSION ....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abuelhawa v. Santa Clara Univ.*,
    529 F. Supp. 3d 1059 (N.D. Cal. 2021) ...............................................................24

*Alhassid v. Bank of Am., N.A.*,
    60 F. Supp. 3d 1302 (S.D. Fla. 2014).................................................................24

*Amable v. New Sch.*,
    551 F. Supp. 3d 299 (S.D.N.Y. 2021) .................................................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................7

*B.C. v. Plumas Unified Sch. Dist.*,
    192 F.3d 1260 (9th Cir. 1999)..............................................................................10

*Bass v. Facebook, Inc.*,
    394 F. Supp. 3d 1024 (N.D. Cal. 2019) ...............................................................16

*Becerra v. Dr Pepper/Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019)..............................................................................15

*Beffa v. Bank of W.*,
    152 F.3d 1174 (9th Cir. 1998)..............................................................................14

*Bell Atl. Co. v. Twombly*,
    550 U.S. 544 (2006) ................................................................................................8

*Bentley v. United of Omaha Life Ins. Co.*,
    2016 WL 7443189 (C.D. Cal. June 22, 2016)......................................................10

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009)................................................................................17

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ...............................................................2, 8

*Campbell v. Whole Foods Mkt. Grp., Inc.*,
    516 F. Supp. 3d 370 (S.D.N.Y. 2021) .................................................................24

*Carnival Corp. v. Rolls-Royce PLC*,
    2009 WL 3861450 (S.D. Fla. Nov. 17, 2009) ......................................................20

*Chowning v. Kohl's Dep't Stores, Inc.*,
    735 F. App'x 924 (9th Cir. 2018)..........................................................................18

*City of Oakland v. Oakland Raiders*,
    83 Cal. App. 5th 458 (Cal. Ct. App. 2022) ..........................................................24

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010)..................................................................................7

*Davis v. Riversource Life Ins. Co.*,
    240 F. Supp. 3d 1011 (N.D. Cal. 2017) ............................................................................16

*dotStrategy Co. v. Facebook Inc.*,
    482 F. Supp. 3d 994 (N.D. Cal. 2020) ......................................................................15, 17

*Figy v. Amy's Kitchen, Inc.*,
    2013 WL 6169503 (N.D. Cal. Nov. 25, 2013) ................................................................17

*Five for Entm't S.A. v. Rodriguez*,
    877 F. Supp. 2d 1321 (S.D. Fla. 2012) ...........................................................................20

*Folgelstrom v. Lamps Plus, Inc.*,
    195 Cal. App. 4th 986 (Cal. Ct. App. 2011) ..............................................................22, 23

*Ginsberg v. Google Inc.*,
    586 F. Supp. 3d 998 (N.D. Cal. 2022) ............................................................................17

*Goshen v. Mut. Life Ins. Co. of New York*,
    98 N.Y.2d 314 (N.Y. 2002) .............................................................................................20

*Hakim-Daccach v. Knauf Int'l GmbH*,
    2017 WL 5634629 (S.D. Fla. Nov. 22, 2017) .................................................................20

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ...................................................17, 21, 22, 23, 24

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (Cal. 2009) ......................................................................................21, 24

*Hill v. Nat'l Collegiate Athletic Assn.*,
    7 Cal. 4th 1 (Cal. 1994) ............................................................................................21, 22

*Hodgers-Durgin v. de la Vina*,
    199 F.3d 1037 (9th Cir. 1999) .........................................................................................10

*In re Apple Inc. Device Performance Litig.*,
    347 F. Supp. 3d 434 (N.D. Cal. 2018) ............................................................................16

*In re Ethereummax Inv'r Litig.*,
    2022 U.S. Dist. LEXIS 220968 (C.D. Cal. Dec. 6, 2022).................................................19

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020).............................................................................................23

*In re Facebook Priv. Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011) ............................................................................15

*In re GE/CBPS Data Breach Litig.*,
    2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021) ..................................................................20

*In re Gilead Scis. Secs. Litig.*,
    536 F.3d 1049 (9th Cir. 2008).............................................................................................7

*In re Google Android Consumer Priv. Litig.*,
    2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ................................................................23

*In re Google, Inc. Priv. Pol'y Litig.*,
 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ...........................................................22

*In re Google, Inc. Priv. Pol'y Litig.*,
 58 F. Supp. 3d 968 (N.D. Cal. 2014) .....................................................................22

*In re iPhone Application Litig.*,
 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................22

*In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*,
 497 F. Supp. 3d 552 (N.D. Cal. 2020) ...................................................................19

*In re Nexus 6P Prods. Liab. Litig.*,
 293 F. Supp. 3d 888 (N.D. Cal. 2018) ...................................................................19

*In re Nickelodeon Consumer Priv. Litig.*,
 827 F.3d 262 (3d Cir. 2016) ..................................................................................22

*In re Yahoo Mail Litig.*,
 7 F. Supp. 3d 1016 (N.D. Cal. 2014) .....................................................................21

*Ingrami v. Rovner*,
 847 N.Y.S.2d 132 (N.Y. App. Div. 2007) ...............................................................8

*Ishikawa v. Delta Airlines, Inc.*,
 343 F.3d 1129 (9th Cir. 2003) ...............................................................................14

*James v. J2 Cloud Servs., Inc.*,
 2019 WL 2304157 (C.D. Cal. May 29, 2019) ..........................................................8

*Johnson v. Glock, Inc.*,
 2021 WL 1966692 (N.D. Cal. May 17, 2021) .........................................................9

*Jones v. Google LLC*,
 73 F.4th 636 (9th Cir. 2023) ..................................................................................13

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009) ...........................................................................7, 19

*Kilgore v. Ocwen Loan Servicing, LLC*,
 89 F. Supp. 3d 526 (E.D.N.Y. 2015) ......................................................................19

*Kwikset Corp. v. Superior Ct.*,
 51 Cal. 4th 310 (Cal. 2011) ...................................................................................18

*Letizia v. Facebook Inc.*,
 267 F. Supp. 3d 1235 (N.D. Cal. 2017) ............................................................16, 24

*Lloyd v. Facebook, Inc.*,
 2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) ...........................................................22

*Lombardo v. Johnson & Johnson Consumer Cos.*,
 124 F. Supp. 3d 1283 (S.D. Fla. 2015) ...................................................................19

*Lopez v. Apple, Inc.*,
 519 F. Supp. 3d 672 (N.D. Cal. 2021) ....................................................................21

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................................................22

*Lucas v. Breg, Inc.*,
    212 F. Supp. 3d 950 (S.D. Cal. 2016) .....................................................................18

*Lukovsky v. City & Cnty. of S.F.*,
    535 F.3d 1044 (9th Cir. 2008)..................................................................................9

*M.K. v. Google LLC*,
    2023 WL 2671381 (N.D. Cal. Mar. 27, 2023) .........................................................16

*Manigault-Johnson v. Google, LLC*,
    2019 WL 3006646 (D.S.C. Mar. 31, 2019)...............................................................23

*McDonald v. Kiloo ApS*,
    385 F. Supp. 3d 1022 (N.D. Cal. 2019) ...................................................................22

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996)....................................................................................7

*Metrophones Telecomms., Inc. v. Glob. Crossing Telecomms., Inc.*,
    423 F.3d 1056 (9th Cir. 2005)................................................................................14

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
    2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) .........................................................22

*N.M. ex rel. Balderas v. Tiny Lab Prods.*,
    457 F. Supp. 3d 1103 (D.N.M. 2020) ..........................................................5, 13, 14

*N.M. ex rel. Balderas v. Tiny Lab Prods.*,
    516 F. Supp. 3d 1293 (D.N.M. 2021) .....................................................................12

*Nguyen v. Barnes & Noble, Inc.*,
    2015 WL 12766050 (C.D. Cal. Nov. 23, 2015) .......................................................20

*Ning Xianhua v. Oath Holdings, Inc.*,
    536 F. Supp. 3d 535 (N.D. Cal. 2021) ..................................................................8, 9

*Pruchnicki v. Envision Healthcare Corp.*,
    845 F. App'x 613 (9th Cir. 2021)......................................................................15, 16

*Rojas-Lozano v. Google, Inc.*,
    159 F. Supp. 3d 1101 (N.D. Cal. 2016) ...................................................................19

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (Cal. 1999) ...........................................................................18

*Sateriale v. R.J. Reynolds Tobacco Co.*,
    697 F.3d 777 (9th Cir. 2012)..................................................................................16

*Smith v. Facebook, Inc.*,
    745 F. App'x 8 (9th Cir. 2018)................................................................................21

*Spears v. First Am. eAppraiseIt*,
    2013 WL 1748284 (N.D. Cal. Apr. 23, 2013) .......................................................9, 10

*T. K. v. Adobe Sys. Inc.*,
    2018 WL 1812200 (N.D. Cal. Apr. 17, 2018) ..............................................................10, 11

*Turner v. Wells Fargo Bank NA*,
    859 F.3d 1145 (9th Cir. 2017)................................................................................................15

*Tyman v. Pfizer, Inc.*,
    2017 WL 6988936 (S.D.N.Y. Dec. 27, 2017)........................................................................20

*Vess v. Ciba-Geigy Corp.*,
    317 F.3d 1097 (9th Cir. 2003)..................................................................................................7

*Williams v. Facebook, Inc.*,
    384 F. Supp. 3d 1043 (N.D. Cal. 2018) .................................................................................19

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012)................................................................................................17

*Wu v. Sunrider Corp.*,
    793 F. App'x 507 (9th Cir. 2019)............................................................................................9

**STATUTES**

15 U.S.C. § 6502 ...............................................................................................................3, 11, 13

15 U.S.C. § 6504 ............................................................................................................................6

15 U.S.C. § 6505 ............................................................................................................................6

Cal. Bus. & Prof. Code § 17208 ....................................................................................................8

Cal. Code. Civ. Proc. § 335.1 ........................................................................................................8

Fla. Stat. § 95.11(3) .......................................................................................................................8

N.Y. CPLR § 214(2) .......................................................................................................................8

N.Y. Gen. Bus. Law § 349 .............................................................................................................8

**RULES AND REGULATIONS**

16 C.F.R. § 312.2 ...............................................................................................................2, 4, 11, 12

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on January 18, 2024 at 10 a.m. before the Honorable P. Casey Pitts, in Courtroom 8, 4th Floor, of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA 95113, Defendants Google LLC, AdMob Google Inc., and AdMob, Inc. ("Google")[1] will and hereby do move this Court pursuant to Federal Rules of Civil Procedure ("Rules") 8, 12(b)(1), and 12(b)(6) for an order dismissing the claims asserted by the Plaintiffs in the Class Action Complaint ("Complaint") (ECF No. 1).

## STATEMENT OF REQUESTED RELIEF

Google respectfully requests that the Court dismiss the Complaint.

## STATEMENT OF THE ISSUES

1.     Whether the Court should dismiss the Complaint under Rule 8 for failure to plead facts showing the claims are not time barred (they are time barred).

2.     Whether the Court should dismiss all claims because they conflict with, and are therefore preempted by, the Children's Online Privacy Protection Act.

3.     Whether the Court should dismiss Plaintiffs' requests for injunctive relief under Rule 12(b)(1).

4.     Whether the Court should dismiss all claims for failure to state a claim under Rule 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs' case rests on a fundamental misconception of the Children's Online Privacy Protection Act ("COPPA") as it applies to Google's Designed For Families ("DFF") program. Plaintiffs do not assert a claim under COPPA itself because the statute has no private right of action, but a supposed COPPA violation is the predicate for all Plaintiffs' state-law claims. Those claims face insurmountable hurdles.

---

[1] Though the Complaint names AdMob, Inc. as a defendant, that is just the former name of the entity now named AdMob Google Inc.

The first hurdle, presented by Rule 8, is Plaintiffs' attempt to gloss over a glaring statute-of-limitations problem through opaque allegations about when their claims arose. DFF, the focus of their claims, is a now-deprecated program within Google's mobile-app marketplace (the "Play Store") that allowed third-party developers to offer their age-appropriate content to children and families. As a condition of participating in DFF, mobile-app developers expressly warranted to Google that they would comply with COPPA. Compl. ¶ 14. In Plaintiffs' telling, while Google ostensibly required developers to comply with COPPA's provisions regulating data collection and use from under-13 users, it secretly wanted developers to violate the statute so Google could benefit from illicitly collected data. *Id.* ¶¶ 102, 116. The only factual allegation that supports this imagined scheme turns on the behavior of a single developer, Tiny Lab, who misrepresented its apps as COPPA compliant.

The problem with Plaintiffs' complete reliance on Tiny Lab's conduct is that Google terminated Tiny Lab for violations of Google's policies ***over five years ago***—well outside the limitations period for Plaintiffs' claims. Plaintiffs fail to plead (and most likely cannot plead) that they downloaded and used Tiny Lab's apps within the statute-of-limitations period. That approach does not satisfy Rule 8. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 135 (N.D. Cal. 2020) (complaint should be dismissed for failure to comply with Rule 8 if it fails to identify when the purported harm occurred in the face of a "non-frivolous possibility" of a statute-of-limitations defense). There is not just a possibility, but a near certainty, that Plaintiffs' claims are time barred—and this action should be dismissed.

The problems with Plaintiffs' claims run deeper. Every claim assumes an underlying COPPA violation. But Plaintiffs have not alleged facts that, if proved, would establish a COPPA violation. Under the FTC's COPPA Rule, an advertising network like Google's violates COPPA only if it has "actual knowledge" that either (1) an app from which it collects data is primarily child directed, or (2) an app relevant to mixed audiences (children, teens, and adults) is not properly age-screening its users. 16 C.F.R. § 312.2 ("COPPA Rule"). Apart from the time-barred Tiny Lab apps, there is no allegation that Google actually knew of ***a single app*** that might have violated COPPA. Instead, Plaintiffs broadly posit that, if an online service operates a marketplace that hosts

content of "relevance" to children, then everything in the marketplace is necessarily "'child-directed content' for the purposes of COPPA." Compl. ¶ 118. That is not the law and, indeed, would read the actual-knowledge requirement out of the COPPA Rule. Plaintiffs assert their COPPA theory through state-law claims, but because those claims are plainly "inconsistent" with COPPA, they are preempted. 15 U.S.C. § 6502(d).

Even if Plaintiffs could allege a predicate COPPA violation and escape preemption, their consumer-protection claims under California, Florida, and New York law are riddled with deficiencies that independently require dismissal. For instance, causation is an essential element of all three states' statutes, yet Plaintiffs fail to allege that they ever saw—much less relied on—a single Google representation regarding DFF. Plaintiffs' failure to plead facts showing causation is fatal to those claims. Equally deficient are Plaintiffs' privacy claims under California tort and constitutional law. Both require Plaintiffs to plead facts showing they had a reasonable expectation of privacy in the data that they allege was wrongly collected and used. But Plaintiffs could not have any such expectation given Google's public disclosures regarding data collection and use. In any event, the routine collection of anonymized data at issue here does not egregiously breach social norms in the manner that California law prohibits.

For all these reasons, the Court should dismiss the Complaint.

## BACKGROUND

## I.    AdMob, Google Play, and the Designed for Families Program

Google owns Google Play, an online marketplace where developers can offer their mobile apps to users. Compl. ¶¶ 3, 56, 58. Third-party developers, rather than Google itself, create and operate nearly all the apps that are available for download in Google Play. *See id.* Google also owns AdMob, which delivers ads to mobile apps that opt to use AdMob's software development kit ("SDK"). *Id*. ¶ 4. If a developer wants to display ads from the AdMob network to users of its app, the developer can program its app to request ads from AdMob by incorporating AdMob's SDK. *See id.* ¶¶ 70, 72, 74.

Contractual terms and policies govern the use of these services. Before downloading apps from Google Play, users must agree to the Google Play Terms of Service ("Play TOS"), which

1    incorporates Google's general Terms of Service and Privacy Policy. The Play TOS informs users

2    that "Google is not responsible for and does not endorse any Content made available through

3    Google Play that originates from a source other than Google." Wakefield Decl. Ex. 2, § 2. The

4    Privacy Policy discloses to users that, "[d]epending on your settings, we may also show you

5    personalized ads based on your interests" and that Google "may share non-personally identifiable

6    information . . . with our partners—like . . . advertisers." Wakefield Decl. Ex. 3 at 6, 13.

7         DFF was a program within Google Play that provided users with "family-friendly browse

8    and search experiences." Compl. ¶ 107. Developers could participate in DFF if their apps were

9    "made for kids" or "the entire family." *Id.* ¶ 103. Google imposed robust data-privacy requirements

10   for DFF that hewed closely to the COPPA Rule. *See* 16 C.F.R. § 312.2. As a condition of

11   participating in DFF, developers warranted to Google that their apps were "relevant for children

12   under the age of 13" and would "comply with applicable legal obligations relating to advertising

13   to children." Compl. ¶ 95. Google further required developers to warrant specifically that their

14   DFF apps were COPPA compliant: "Before submitting an app to the Designed for Families

15   program, ensure your app is appropriate for children and compliant with COPPA and other relevant

16   laws." Wakefield Decl. Ex. 5 at 1; *accord* Compl. ¶ 14.

17        Google went still further to ensure compliance. Following a distinction that the FTC drew

18   in the COPPA Rule, Google required developers to categorize their apps as either (1) targeting

19   children under 13 as their primary audience ("primarily child directed apps"), or (2) having

20   children as only one of their audiences ("mixed-audience apps"). Compl. ¶ 96. Primarily child

21   directed apps were ***required*** to opt into DFF to ensure COPPA-compliant treatment of their users'

22   data. Wakefield Decl. Ex. 5. Once opted in, Google ***automatically*** took "steps to disable interest-

23   based advertising and remarketing ads for such requests." *Id.* After informing developers that they

24   were "responsible" for COPPA compliance, Google warned them that misrepresentations

25   regarding an app's categorization "may result in removal" of that app. *Id.*; *see also* Compl. ¶ 98.

26   **II.    The Tiny Lab Apps and Prior Litigation**

27        The Complaint identifies only one developer—Tiny Lab—whose apps were available in

28   the DFF program. Compl. ¶ 112 & Ex. A. It alleges that, to participate in DFF, Tiny Lab "expressly

warrant[ed]" to Google that its apps were "compliant with COPPA" and "other relevant statutes." Compl. ¶¶ 11, 95; *see also* Wakefield Decl. Ex. 1 §§ 4.8, 11.3. The Complaint further alleges that Google required Tiny Lab to declare whether its apps were "primarily directed to children," *id.* ¶ 96, and to represent that its apps "comply with applicable legal obligations relating to advertising to children," *id.* ¶ 95. The DFF requirements had teeth; as Google warned Tiny Lab and other developers whose apps participated in DFF, "noncompliance with these requirements could result in expulsion from either or both the DFF program and Google Play." *Id.* ¶ 98. That is exactly what happened to Tiny Lab. As sources cited in the Complaint indicate, Google terminated all Tiny Lab apps from the Play Store for policy violations **over five years ago**.[2]

In September 2018, after Google terminated Tiny Lab, the New Mexico Attorney General ("AG") sued over Tiny Lab's presence in the Play Store and its use of AdMob. The AG's theory in *New Mexico ex rel. Balderas v. Tiny Lab Productions* ("Tiny Lab Action") was that Tiny Lab violated COPPA by collecting and using personal information from child users of its apps without parental notice and consent. *See* Wakefield Decl. Ex. 6, ¶¶ 30-31, 97-104, 191-204 ("NM Compl."). The AG also sued several technology companies, including Google, in a secondary capacity on the claim that they provided advertising services to Tiny Lab. *See, e.g.*, *id.* ¶¶ 67-74. After the court partially dismissed the complaint in 2020, *N.M. ex rel. Balderas v. Tiny Lab Prods.*, 457 F. Supp. 3d 1103, 1129 (D.N.M. 2020),[3] Google settled the case without any admission of liability in 2021, Stip. of Dismissal, Case No. 1:18-cv-00854, *N.M. ex rel. Balderas v. Tiny Lab Prods.*, ECF No. 149. As part of that settlement, Google deprecated DFF and modified aspects of its Families program. *See* Compl. ¶ 136. For its part, Tiny Lab failed to meaningfully defend itself in the litigation, having apparently "ceased as a going concern" after being terminated by Google

---

[2] *See, e.g.*, Compl. ¶ 151 n.42 (citing *Gizmodo* article); *see* Wakefield Decl. Ex. 10 at 4 (copy of *Gizmodo* article: "Google told *Gizmodo* in a statement that it banned Tiny Lab from its Play Store on September 10 for 'repeated violations' of its policy."). Other public court filings indicate the same. *See infra* 8-9.

[3] Plaintiffs repeatedly state that the court in the Tiny Lab Action held that Google violated the New Mexico Unfair Practices Act. Compl. ¶¶ 137-38, 157. In fact, the court dismissed that claim. 457 F. Supp. 3d at 1123, 1128.

in September 2018. Wakefield Decl. Ex. 8 at 2 (AG's request that the court dismiss Tiny Lab with prejudice and close the case).

### III.    Plaintiffs and Their Claims Against Google

Years after Google terminated Tiny Lab from Google Play, and years after the AG brought (and settled) its claims against Google, Plaintiffs filed the present Complaint on June 22, 2023 in a bid to relitigate the Tiny Lab Action. Plaintiffs cannot assert a claim under COPPA itself because they lack a private right of action, *see* 15 U.S.C. §§ 6504(a), 6505(a), but all their state-law claims derive from their core assertion that Google violated COPPA. *See, e.g.*, *id.* ¶¶ 78-98, 100-38. The Complaint lifts (often verbatim) the statistics, news sources, images, quotations, etc. originally offered by the AG in his 2018 complaint.[4] Recognizing that Tiny Lab is apparently a long-defunct entity, Plaintiffs have not pursued claims against the developer in this action.

In addition to copying-and-pasting passages from the AG's complaint, Plaintiffs scrapbook decade-old news articles and past settlements that have nothing to do with the claims at issue here. The Complaint offers scarcely any individualized allegations regarding the named Plaintiffs, who are alleged to be six minors currently residing in California, Florida, and New York. Compl. ¶¶ 30-35. It alleges that, at some unspecified time when they were under 13, Plaintiffs "used Android Apps included in the DFF program," including one of three Tiny Lab apps: (1) Fun Kid Racing, (2) Monster Truck Racing, and (3) GummyBear and Friends Speed Racing. Compl. ¶¶ 111, 193-210. Beyond that, the Complaint repeats the same vague and conclusory allegations for each named Plaintiff. *See id.* ¶ 193 ("At all relevant times, Plaintiff A.B. used Android Apps included in the DFF program."), *id.* ¶ 199 (same), *id.* ¶ 205 (same). Nowhere does the Complaint allege such basic information as when (or where) they downloaded and used the Tiny Lab apps; which (if any) other apps from the DFF program they downloaded and used; which (if any) Google representations regarding DFF they saw, much less relied on; or whether they passed through an

---

[4] *Compare, e.g.*, Compl. ¶ 90 (citing and quoting the FTC Kids Mobile App Report) *with* NM Compl. ¶ 126 (same); Compl. ¶¶ 113-14 (images from Google Play Store) *with* NM Compl. ¶ 100 (same exact images); Compl. ¶ 133 (research findings from a 2018 study at the University of California) *with* NM Compl. ¶ 110 (same); Compl. ¶¶ 173-78 (survey results from the Center for Digital Democracy) *with* NM Compl. ¶ 165 (same).

age-gate before using any DFF apps. The Complaint asserts a host of claims under the consumer-protection statutes of California, Florida, and New York, for unjust enrichment under those states' laws, and for privacy violations under California law. *Id.* ¶¶ 231-350.

**LEGAL STANDARD**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008), nor do they "accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice," *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *see also* Defs.' Req. Judicial Notice & Incorporation by Reference (filed concurrently). In addition, where a complaint contains allegations that sound in fraud, it "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). That requires alleging "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003). "Any averments which do not meet that standard should be 'disregarded,' or 'stripped,' from the claim for failure to satisfy Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

**ARGUMENT**

**I.     Plaintiffs' Failure to Provide a Short, Plain Statement of Any Timely Claims Requires Dismissal Under Rule 8**

A complaint violates Rule 8 if it eschews a "short and plain" statement, instead veering into "[s]omething labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity." *McHenry v. Renne*, 84 F.3d 1172, 1174, 1179-80 (9th Cir. 1996). The Complaint is voluminous, but it fails to apprise Google of certain basic facts regarding Plaintiffs' claims. Most obviously, Plaintiffs do not allege ***when*** the supposed misconduct occurred. The Complaint avoids mentioning any date (or approximate dates) when any of the named Plaintiffs downloaded or used Tiny Lab's apps. At most, it gestures toward the

"relevant time period" (Compl. ¶¶ 30-31), "all relevant times" (*id.* ¶ 193), and "applicable statute of limitations period" (*id.* ¶¶ 218-19)—but never defines any such period.

That failure contravenes Rule 8, which requires a plaintiff to provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 555 (2006). A complaint does not give fair notice if it fails to identify when the purported harm occurred. *Ning Xianhua v. Oath Holdings, Inc.*, 536 F. Supp. 3d 535, 558 (N.D. Cal. 2021). Consequently, "[c]ourts often dismiss claims under Rule 8 when plaintiffs fail to allege approximately when the actionable misconduct occurred." *Brodsky*, 445 F. Supp. 3d at 135 (collecting cases and dismissing privacy claim because plaintiffs failed to allege when data was collected); *see also, e.g.*, *Ning Xianhua*, 536 F. Supp. 3d at 559 (dismissing UCL claim because the "Complaint does not plead any dates as to when the alleged misconduct occurred"). Dismissal is appropriate where a defendant raises the "non-frivolous possibility" of a statute-of-limitations defense. *Brodsky*, 445 F. Supp. 3d at 135.

Plaintiffs' problems under the applicable statutes of limitation are not just possibly "non-frivolous," *id.*, but grave. The limitations periods for nearly all Plaintiffs' claims range from one to four years.[5] Because Plaintiffs filed this lawsuit on June 22, 2023, any claims that accrued before June 22, 2019 are time barred. From the few concrete allegations scattered throughout the Complaint, it is evident that ***none*** of Plaintiffs' claims are timely.

Plaintiffs admit that the Tiny Lab Action involved "the *exact* behavior Plaintiffs allege in this complaint." Compl. ¶ 157 (emphasis in original). Unsurprisingly, then, the Complaint relies on supposed misrepresentations that Google made between 2015 and 2018.[6] It also identifies only

---

[5] Cal. Bus. & Prof. Code § 17208 (UCL 4 years); Cal. Code. Civ. Proc. § 335.1 (CA intrusion upon seclusion and CA constitutional right to privacy 2 years); Fla. Stat. § 95.11(3)(o) (FL intrusion upon seclusion 4 years); *James v. J2 Cloud Servs., Inc.*, 2019 WL 2304157, at *11 (C.D. Cal. May 29, 2019) (CA unjust enrichment 2 or 3 years); Fla. Stat. § 95.11(3)(f) (FDUTPA 4 years); Fla. Stat. § 95.11(3)(k) (FL unjust enrichment 4 years); N.Y. CPLR § 214(2) (N.Y. Gen. Bus. Law § 349 3 years); *Ingrami v. Rovner*, 847 N.Y.S.2d 132, 134 (N.Y. App. Div. 2007) (NY unjust enrichment 3 years for claims seeking monetary damages).

[6] *E.g.*, Compl. ¶ 12 & n.1 (quoting April 2015 article) *id.* ¶ 93 (quoting April 2015 post on Android Developers Blog); *id.* ¶¶ 103, 107-108 & nn.38-40 (quoting June 2015 version of Android Developer Policy page).

---

three specific apps that Plaintiffs purportedly used (*see id.* ¶¶ 194, 200, 206)—all of them developed by Tiny Lab (*id.* ¶ 11), all of them the subject of investigation in "the Spring of 2018" (*id.* ¶ 133), all of them referenced in the Tiny Lab Action (NM Compl. ¶ 3), and all of them removed from the Google Play Store in September 2018.[7] Given that, Plaintiffs cannot pursue claims based on the Tiny Lab apps—the *only* apps specifically mentioned in the Complaint. Their case should be dismissed. *See Ning Xianhua*, 536 F. Supp. 3d at 559 ("Because Defendants raise the possibility of a statute of limitations defense, and because the Complaint does not plead any dates as to when the alleged misconduct occurred, the Court concludes that the Complaint is insufficiently pled under Rule 8.").

Anticipating this terminal problem, Plaintiffs thinly allege that their claims should be tolled per the discovery rule (Compl. ¶¶ 211-12), fraudulent concealment (*id.* ¶¶ 213-14), or estoppel (*id.* ¶¶ 215-16). None of these three doctrines applies. *First*, "[a] plaintiff relying on the discovery rule, must show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Wu v. Sunrider Corp.*, 793 F. App'x 507, 510 (9th Cir. 2019). But Plaintiffs do not even try to plead either element. *Second*, to plead fraudulent concealment, the plaintiff must allege "(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Johnson v. Glock, Inc.*, 2021 WL 1966692, at *3 (N.D. Cal. May 17, 2021). Plaintiffs again offer nothing of relevance, despite the fact that fraudulent concealment must be pleaded with particularity. *Id.* *Third*, for equitable estoppel, a plaintiff must allege "fraudulent concealment or misrepresentation *above and beyond* the actual basis for the lawsuit." *Lukovsky v. City & Cnty. of S.F.*, 535 F.3d

---

[7] *See* Wakefield Decl. Ex. 7, ¶ 3, Ex. C ("Press" page from Tiny Lab Productions website indicating: "Since 11th of September Tiny Lab Racing Games are not available on Google Play Store."); *see also* Wakefield Decl. Ex. 9 at 1 (Feb. 2019 statement of Tiny Lab indicating it "was banned from Google Play"); Wakefield Decl. Ex. 8 at 2 (July 2023 stipulation of dismissal, filed by AG, stating that "as a result of the conduct alleged in the Complaint, Google removed Tiny Lab from the Google Play Store, which substantially limited its ability to publish online games and to profit from them" and that "upon investigation of undersigned counsel, Tiny Lab ceased as a going concern").

1044, 1051-52 (9th Cir. 2008) (noting that equitable estoppel is "sometimes referred to as 'fraudulent concealment'") (emphasis added). Here, Plaintiffs explicitly premise estoppel on the merits, asserting that Google is estopped because it violated its "duties and obligations under COPPA and state common law." Compl. ¶ 215. This allegation is "part and parcel" of the underlying claims, so estoppel fails as a matter of law. *Spears v. First Am. eAppraiseIt*, 2013 WL 1748284, at *5 (N.D. Cal. Apr. 23, 2013).

Plaintiffs' failure to allege any dates when they downloaded and used Tiny Lab's apps requires dismissal, and the tolling doctrines cited in the Complaint do not relieve them of that basic obligation. The Court should dismiss the Complaint and end its analysis here.

## II.     Plaintiffs Lack Standing to Seek Prospective Injunctive Relief

Even if Plaintiffs could allege a timely claim, their requests for injunctive relief must be dismissed for lack of Article III standing. To have standing for injunctive relief, a prospective remedy, the plaintiff "must demonstrate a real or immediate threat" that they will again be wronged in the same way. *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999). "[A] named plaintiff must show that she herself is subject to a likelihood of future injury." *See T. K. v. Adobe Sys. Inc.*, 2018 WL 1812200, at *14 (N.D. Cal. Apr. 17, 2018); *accord Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999).

Plaintiffs concede that Google already deprecated DFF and already revised its Families policies. Compl. ¶¶ 136-38 (alleging that Google's "changes can be summarized as ensuring that Google and AdMob comply with COPPA"). Because Google remedied the alleged gaps in the relevant policy, Plaintiffs lack standing for injunctive relief. *E.g.*, *Bentley v. United of Omaha Life Ins. Co.*, 2016 WL 7443189, at *7 (C.D. Cal. June 22, 2016) ("Because the Policy has lapsed, there is no ongoing need for injunctive relief."). Plaintiffs also seek an injunction requiring Google to "delete, destroy or otherwise sequester" data and to "provide a complete audit and accounting" of data. Compl. ¶¶ 24, 253, 263, 283, 308, 341. But again, to the extent any of Plaintiffs' data was collected, it happened ***years ago*** in connection with apps offered by a now-defunct developer through a now-deprecated program. Regardless, by casting their use of the apps entirely in the past tense, Plaintiffs confirm that they no longer use them. *E.g.*, Compl. ¶¶ 193 ("Plaintiff A.B. ***used***

Android Apps including in the DFF program.") (emphasis added), 199 (same), 205 (same). That alone forecloses injunctive relief. *T.K.*, 2018 WL 1812200, at \*14 (dismissing injunctive-relief claims for lack of standing because there was "no evidence to suggest that [minor plaintiff] continues to use [the product at issue]").

There is no real, immediate risk of future harm on these allegations, and all claims for injunctive relief must be dismissed pursuant to Rule 12(b)(1).

## III.   Plaintiffs Premise Their Case on a Fundamental Misunderstanding of COPPA, Which Preempts All Their State-Law Claims

Plaintiffs' case rests on a misapprehension of the COPPA Rule. They reckon that, because DFF hosted apps that were relevant to children, all DFF apps were "directed to children" within the meaning of COPPA. This misapprehension goes to the very foundation of the Complaint, as all Plaintiffs' claims assert supposed COPPA violations under the guise of state law. These state-law claims are inconsistent with the COPPA Rule, and therefore preempted.

Under COPPA, if an online service (like a mobile app) is "directed to children,"[8] then it must provide parents with notice and receive parental consent before collecting and using personal information from under-13 users. 15 U.S.C. §§ 6502(a)-(b). The FTC's COPPA Rule defines the two circumstances in which an app is "directed to children":

> (1) if it "primarily" targets children under 13; or
> (2) if it is a mixed-audience app for children, teens, and adults, but it fails to use age-screening to prevent the collection and use of personal information from users under 13.

16 C.F.R. § 312.2. In this way, the FTC provided a separate compliance option for mixed-audience apps (*i.e.*, those that are not ***primarily*** child directed): they can age-gate their services and thereby avoid being deemed "directed to children." *Id.* Ad networks (like AdMob) operate at a degree of removal from the apps (like Tiny Lab) that might choose to use their services. Ad networks can be

---

[8] The criteria for determining whether an app is "child directed" include the app's "subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics." 16 C.F.R. § 312.2.

liable for the collection and use of personal information from children under 13 only if they have "actual knowledge" that they are collecting such information from apps that are "directed to children." *Id.* That is, ad networks are subject to liability only where they ***actually know*** that either (1) an app is primarily directed to children, or (2) an app is for mixed audiences but does not properly age-gate its service. *Id.* As the only court to grapple with the COPPA Rule explained:

> The mixed-audience exception makes clear that where an app does not target children as its primary audience, so long as it screens its users for age and does not collect personal information from users who identify themselves as under 13 without complying with certain notice and consent requirements, ***the app will not be deemed directed to children.*** 16 C.F.R. § 312.2. And if an app is not deemed directed to children, it follows that an ad network that collects information from users of that (non-child-directed) app could not be found to have 'actual knowledge' that the app is directed to children.

*N.M. ex rel. Balderas v. Tiny Lab Prods.*, 516 F. Supp. 3d 1293, 1299 (D.N.M. 2021) (emphasis added).

Plaintiffs' theory departs radically from the FTC's COPPA Rule. Under the proper framework, Plaintiffs would need to identify individual apps that were allegedly "child directed" per the statutory criteria, then show that Google actually knew those particular apps met the statutory definition yet were miscategorized. But here, Plaintiffs read the actual-knowledge requirement out of the COPPA Rule, instead launching a broadside against the entire DFF program. Compl. ¶¶ 102-38. This approach leads Plaintiffs to an untenable conclusion: "Google had ***actual knowledge*** that ***every DFF App*** was 'child directed' as defined under COPPA." *Id.* ¶ 121 (emphasis added); *see also id.* ¶ 143.

Plaintiffs' sole basis for that sweeping conclusion is Google's requirement that DFF apps "be appropriate for children." *Id.* ¶ 95; *see also id.* ¶ 121. But content can be, and very often is, "appropriate for children" without being "directed to children" under COPPA's definition. The world is full of such content; there are dictionary apps, sports apps, weather apps, foreign-language apps, and so on. In short, Plaintiffs' theory of the case conflicts with COPPA because it depends on the erroneous assertion that Google's requirement that DFF apps be appropriate for children means that Google ***necessarily*** obtained actual knowledge that any and all apps in the program were "directed to children" under COPPA. *Id.* ¶ 142 ("Because Google controlled the DFF

program and required the DFF Apps to be child-directed to be included in the DFF program, Google (and thus AdMob) had actual knowledge that the Personal Information of DFF App users under thirteen was being collected."); *see also id.* ¶¶ 118-22.

Plaintiffs deploy state-law claims for their COPPA theory, but those claims are fundamentally "inconsistent" with—and thus preempted by—COPPA. 15 U.S.C. § 6502(d). If accepted, Plaintiffs' theory would eviscerate the FTC's careful delineation of what constitutes a child-directed service and expose services to liability whenever they host third-party content that is appropriate for younger users, including children. It would also eliminate the COPPA Rule's actual-knowledge requirement, while disincentivizing platforms from helping users find family-friendly content. The theory here is not just inconsistent, but incompatible, with the COPPA Rule. As one court has already found, COPPA preempts such a theory:

> It would be inconsistent with COPPA's imposition of an actual knowledge standard on ad networks to hold the SDK Defendants liable under state law for their collection of personal information from app users in the absence of allegations that the SDK Defendants actually knew that the users were using child-directed apps. In other words, because Plaintiff's COPPA claim fails as to the SDK Defendants for lack of actual knowledge, and because COPPA preempts state law that treats like conduct differently, Plaintiff's state law claims equally must fail for lack of actual knowledge.

*See N.M. ex rel. Balderas v. Tiny Lab Prods.*, 457 F. Supp. 3d at 1121.

The Ninth Circuit's recent decision in *Jones v. Google LLC*, 73 F.4th 636 (9th Cir. 2023), does not counsel otherwise. To be sure, *Jones* held that Congress did not intend to preempt "all state remedies for violations of [COPPA]." *Id.* at 643. But *Jones* examined "state-law causes of action that are parallel to, or proscribe the same conduct forbidden by, COPPA." *Id.* There, the parties "***agree[d]*** that all of the claims allege conduct that would violate COPPA's requirement[s]," so the court addressed "whether COPPA preempts state law claims ***based on underlying conduct that also violates COPPA's regulations***." *Id.* at 640-41 (emphasis added). Here, by contrast, there is no underlying COPPA violation, and Plaintiffs' COPPA theory is plainly "inconsistent" with the COPPA Rule. 15 U.S.C. § 6502(d). COPPA preempts Plaintiffs' state-law claims, and neither *Jones* nor the trio of preemption cases cited therein supports a different outcome.[9]

---

[9] One of those cases clarifies that a court deciding preemption "must consider the theory of each claim and determine whether the legal duty that is the predicate of that claim is inconsistent

Notably, Plaintiffs concede that Google followed the COPPA Rule by requiring developers "to categorize their DFF App" as either primarily child directed or for mixed audiences—and required developers to warrant expressly that they would comply with COPPA. *Id.* ¶¶ 95, 98, 120, 126-28. Plaintiffs try to place these facts in a conspiratorial light, *see id.* ¶¶ 130-31 (claiming Google's COPPA-compliance efforts were merely a "ploy" to get developers "to mis-categorize their Apps"), but those allegations are implausible given Plaintiffs' failure to identify ***even a single miscategorized app*** (apart from Tiny Lab's time-barred apps) that supports their theory, *e.g.*, *id.* ¶ 116. Plaintiffs' pleading failure also distinguishes the aspect of the holding in the Tiny Lab Action that allowed a single state-law claim to proceed against Google; the court reached that holding ***only because*** it could draw a "reasonable inference that Google had actual knowledge that Tiny Lab's apps were child-directed." *Tiny Lab Prods.*, 457 F. Supp. 3d at 1119. Such an inference cannot be drawn years later now that claims based on Tiny Lab's apps are time barred.

In sum, even if Plaintiff could assert a COPPA claim, they have failed to do so here. That dooms all their derivative state law claims, which are preempted as inconsistent with COPPA.[10]

## IV.   Plaintiffs Fail to State a Claim Under California's Unfair Competition Law

Plaintiffs premise their UCL claim on the same misguided theory: in April 2015, Google launched DFF to attract children to use the apps in the program, which Google represented to be COPPA compliant. Compl. ¶¶ 11-16, 19-22. Plaintiffs allege that, in reality, Google was conspiring with developers who violated Google's stated COPPA requirements so that Google and

---

with the federal regulations." *Metrophones Telecomms., Inc. v. Glob. Crossing Telecomms., Inc.*, 423 F.3d 1056, 1075 (9th Cir. 2005), *aff'd*, 550 U.S. 45 (2007). And the other two cases do not save Plaintiffs' claims from preemption. *See Ishikawa v. Delta Airlines, Inc.*, 343 F.3d 1129, 1132 (9th Cir. 2003), *amended on denial of reh'g*, 350 F.3d 915 (9th Cir. 2003) (addressing preemption where defendant "ma[de] no attempt to show that anything about the state law applied in this case actually *was* inconsistent"); *Beffa v. Bank of W.*, 152 F.3d 1174, 1177 (9th Cir. 1998) (determining whether state-law claims "supplement[ed], rather than contradict[ed], [federal statute]").

[10] Plaintiffs purport to represent a putative class, *see* Compl. ¶¶ 218-22, but the proposed classes would be fractured by individual questions as to each individual app (*e.g.*, whether the app was child directed under the FTC's multi-factor criteria) ***and*** each individual user (*e.g.*, whether the user passed through an age gate, and if so, whether they accurately entered their age). Such classes cannot be certified, especially given their astonishing overbreadth—the classes are not even limited to DFF and instead cover all users of "Android Apps." *Id.*

the developers could share in the spoils of illegal advertising.[11] *Id.* This theory sounds in fraud, *dotStrategy Co. v. Facebook Inc.*, 482 F. Supp. 3d 994, 1001 (N.D. Cal. 2020) (claims "are grounded in fraud" if they allege "a continuous course of false, deceptive, and misleading activity"), and it is as baseless as it is convoluted.

As a threshold matter, Plaintiffs lack standing to bring a UCL claim because they have not suffered an economic injury as a result of Google's conduct. Even if they had UCL standing, Plaintiffs fail to allege that Google engaged in any unlawful, fraudulent, or unfair conduct, and they are without remedies under the UCL. These deficiencies would require dismissal under Rule 8's more modest requirements, but they fall far short under Rule 9(b)'s heightened standard. *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019).

### A.   Plaintiffs Lack Standing Under the UCL

There are two requirements for UCL standing: a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the gravamen of the claim." *Turner v. Wells Fargo Bank NA*, 859 F.3d 1145, 1151 (9th Cir. 2017). Here, Plaintiffs alleged neither.

***Plaintiffs have not alleged economic injury.*** "[M]ere misappropriation of personal information does not establish compensable damages." *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021). Indeed, courts within this District have long held that "personal information does not constitute property . . . [under the] UCL." *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014). Here, the only money or property that Plaintiffs allegedly lost was "the value or diminishment in value of their Personal Information" and "the ability to control the use of their Personal Information."

---

[11] *See also, e.g.*, Compl. ¶ 116 ("While Google represented that review of Apps submitted for inclusion in the DFF program was to ensure that children were protected, in reality, Google conducted its review to ensure the Apps included in the DFF program would successfully attract children . . . —a lucrative advertising audience."); ¶ 242 (Google "conceal[ed] and fail[ed] to disclose the exfiltration" of children's data, "while promoting, representing, and purporting to ensure that Android Apps comply with law and societal expectation").

Compl. ¶ 248. That is not enough. *E.g.*, *M.K. v. Google LLC*, 2023 WL 2671381, at *5 (N.D. Cal. Mar. 27, 2023) (dismissing UCL claim for lack of economic injury where minor plaintiff based "his standing on the alleged collection and storage of his personal information").

Assuming *arguendo* that personal information had value in the abstract, Plaintiffs do not allege how their personal information has ***economic value to them***. "That the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019). In other words, Plaintiffs would have to allege that Google deprived them of an opportunity to benefit from the sale of their personal information. They did not do so, and that failure provides another ground for dismissal. *E.g.*, *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614-15 (9th Cir. 2021) (affirming dismissal for failure to adequately allege that plaintiffs' personal information actually lost value).

**Plaintiffs have not alleged reliance on any misleading statement.** A plaintiff whose claim sounds in fraud must demonstrate "***actual reliance*** on the allegedly deceptive or misleading statements, and that the misrepresentation was an ***immediate cause*** of their injury-producing conduct." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012) (emphasis added) (citations omitted); *accord Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1244 (N.D. Cal. 2017) (citing UCL cases requiring "plaintiffs to allege they actually saw and relied on alleged misrepresentations"). Rule 9(b) requires that the plaintiff "specify which statements [they] actually saw and relied upon." *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 458 (N.D. Cal. 2018). Failure to do so is dispositive of any UCL claims, whether brought under the fraudulent, unlawful, or unfair prongs. *See Davis v. Riversource Life Ins. Co.*, 240 F. Supp. 3d 1011, 1017 (N.D. Cal. 2017) (requiring the plaintiff to "establish reliance under the unlawful and unfair prongs where, as here, the gravamen of the claim is based on alleged misrepresentation").

Plaintiffs' UCL claim depends on alleged misrepresentations, *e.g.*, Compl. ¶ 243, but they do not identify a single Google statement that they saw, let alone relied on. That is not surprising; Google directed the statements referenced in the Complaint to developers like Tiny Lab, rather than users like Plaintiffs. *Id.* ¶¶ 12-14, 93, 95-96, 98, 103-4, 106-8; *cf. Ginsberg v. Google Inc.*,

586 F. Supp. 3d 998, 1008 (N.D. Cal. 2022) (dismissing UCL claim where "Plaintiffs have failed to allege facts demonstrating that they suffered an economic injury as a result of Google's allegedly unfair practice of failing to enforce its guidelines for app developers"). In case after case, courts within this District have dismissed UCL claims for failing "to plausibly allege actual reliance with particularity." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1084 (N.D. Cal. 2022); *see also dotStrategy*, 482 F. Supp. 3d at 1001 (dismissing UCL claim for lack of actual reliance). This Court should do the same.

**B.  Plaintiffs Have Failed to Allege Wrongful Conduct Under Any Prong of the UCL**

Even if Plaintiffs' UCL claim could somehow clear these two dispositive hurdles (no economic injury, no actual reliance), their allegations still do not amount to fraudulent, unlawful, or unfair conduct within the meaning of the statute.

*Plaintiffs have no claim under the UCL's fraudulent prong.* A plaintiff asserting a UCL fraudulent claim must "at a minimum allege that [they] saw the representation at issue." *Figy v. Amy's Kitchen, Inc.*, 2013 WL 6169503, at *4 (N.D. Cal. Nov. 25, 2013) (collecting cases). There is no such allegation here. Thus, to the extent that Plaintiffs' reference to a "deceptive" UCL claim invokes the fraudulent prong, *e.g.*, Compl. ¶ 232, that claim fails.

*Plaintiffs have no claim under the UCL's unlawful prong*. An action under the UCL's unlawful prong "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012). Absent a violation of an underlying statute, there can be no claim under the unlawful prong. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n.3 (9th Cir. 2009) ("[T]he plaintiffs cannot state a UCL claim under the 'unlawful' prong because such a claim is predicated solely on [other] violations of the law, which they failed to allege"). Here, Plaintiffs premise their UCL unlawful claim on violations of COPPA and of their privacy rights under California tort and constitutional law. Compl. ¶ 238. But neither their COPPA theory (*supra* 11-14) nor their privacy claims (*infra* 21-24) is viable, so their claim under the unlawful prong fails.

*Plaintiffs have no claim under the UCL's unfair prong*. In assessing unfairness, "the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged

victim." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (Cal. 1999). Google stressed in statements to developers that they "must comply with laws relating to advertising to kids," their apps must be "compliant with COPPA," and "noncompliance with these requirements could result in expulsion from either or both the DFF program and Google Play." Compl. ¶¶ 14, 95, 98. There is obvious utility to Google maintaining and enforcing policies designed to ensure that DFF offered age-appropriate and legally compliant apps for younger users. Nor is there anything "immoral, unethical, oppressive, unscrupulous or substantially injurious" about Google's policies. *S. Bay*, 72 Cal. App. 4th at 886-87. Here, the utility of the policies outweighs any harm caused by a rogue developer who might violate the policies. And in the one instance of alleged abuse, Google terminated the offender (Tiny Lab) over five years ago—thus proving the utility of maintaining and enforcing its policies. *Supra* 7-10.

### C.     Plaintiffs Have No Available Remedies Under the UCL

Setting aside these dispositive problems with Plaintiffs' UCL claim, they are not entitled to the relief sought. *See* Compl. ¶ 253. As explained, they lack standing to seek injunctive relief absent any risk of being supposedly wronged in the same way again. *Supra* 10-11. As for monetary relief, disgorgement of profits "is unavailable in UCL actions." *Chowning v. Kohl's Dep't Stores, Inc.*, 735 F. App'x 924, 925-26 (9th Cir. 2018). Likewise, restitution is unavailable where, as here, a plaintiff suffered no economic injury. *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 336 (Cal. 2011); *accord Lucas v. Breg, Inc.*, 212 F. Supp. 3d 950, 965 (S.D. Cal. 2016).

### V.     Plaintiffs Fail to State a Claim Under New York's and Florida's Consumer-Protection Laws

Plaintiffs repurpose their UCL allegations to assert claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and the New York General Business Law ("NYGBL"). These claims fare no better than their UCL claim.

***Google's TOS forecloses claims under Florida and New York law.*** As a threshold matter, Plaintiffs' claims under the Florida and New York statutes run headlong into the choice-of-law provision in Google's TOS, which provides: "California law will govern all disputes arising out of or relating to these terms, service-specific additional terms, or any related services, regardless

of conflict of laws rules." Wakefield Decl. Ex. 4 at 13. Courts routinely enforce this provision, and others just like it, to dismiss consumer-protection claims asserted under other states' laws. *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 934-35 (N.D. Cal. 2018) (dismissing claims under various states' consumer-protection statutes, including FDUTPA, as barred by choice-of-law provision in Google TOS); *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1109-12 (N.D. Cal. 2016) (same, as to claim under Massachusetts consumer-protection statute); *see also, e.g.*, *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1055-57 (N.D. Cal. 2018) (dismissing claim under NYGBL as barred by choice-of-law provision in Facebook TOS). That is reason enough to dismiss the FDUTPA and NYGBL claims, which also fail for the additional reasons below.

       ***Plaintiffs have not pleaded FDUPTA and NYGBL with particularity***. Plaintiffs premise their FDUTPA and NYGBL claims on the same underlying conduct as their UCL claim: *i.e.*, that Google fraudulently misrepresented the data-collection practices for DFF apps. *Supra* 14-15. Regardless of which consumer-protection statute Plaintiffs sue under, they must plead with particularity because the claims sound in fraud. *See Kearns*, 567 F.3d at 1125; *accord In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 666 (N.D. Cal. 2020) (requiring FDUPTA and NYGBL claims "based on fraudulent conduct" to be pleaded with particularity).

       Plaintiffs' failure to do so is most glaring with respect to causation, an essential element of both FDUTPA and NYGBL claims. *See Lombardo v. Johnson & Johnson Consumer Cos.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) (causation is a "necessary element" of FDUPTA; "[C]ausation must be direct, rather than remote or speculative."); *accord Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 537 (E.D.N.Y. 2015) (same for NYGBL; "Alleging causation, and how the alleged acts have caused the alleged injury, is essential."). Again, Plaintiffs fail to allege "which statements they viewed," and that basic pleading failure "necessarily" precludes a finding of causation. *In re Ethereummax Inv'r Litig.*, 2022 U.S. Dist. LEXIS 220968, at *51 (C.D. Cal. Dec. 6, 2022) (applying Rule 9(b)'s heightened standard to dismiss consumer-protection claims brought under all three statutes: UCL, FDUTPA, and NYGBL). The FDUPTA and NYGBL

1  claims must be dismissed. *See Tyman v. Pfizer, Inc.*, 2017 WL 6988936, at *23-24 (S.D.N.Y. Dec.

2  27, 2017) (collecting cases that dismissed FDUTPA and NYGBL claims for lack of causation).

3          ***Plaintiffs have not pleaded a sufficient nexus to either Florida or New York***. "FDUTPA

4  applies only to action[s] that occurred within the state of Florida." *Carnival Corp. v. Rolls-Royce*

5  *PLC*, 2009 WL 3861450, at *6 (S.D. Fla. Nov. 17, 2009) (noting that "purpose of FDUTPA is to

6  prohibit unfair and deceptive practices which have transpired within the territorial boundaries of

7  the state of Florida"). Likewise, under the NYGBL, "the deception of a consumer must occur in

8  New York." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324-25 (N.Y. 2002) (noting

9  that the statute "unambiguously evinces a legislative intent to address commercial misconduct

10  occurring within New York").

11          Yet the Complaint does not allege any connection between (i) Google's purported

12  misconduct and (ii) either Florida or New York. Plaintiffs fail to allege, for instance, whether they

13  used Tiny Lab's apps or saw Google's statements regarding DFF in either state. The only relevant

14  allegation is that certain named Plaintiffs "are or were residents of" Florida or New York "and/or

15  used the Apps in" those states. Compl. ¶¶ 285, 318. That says next to nothing. It does not even

16  specify whether the "Apps" that Plaintiffs used were offered by Tiny Lab or included in DFF. *Id.*;

17  *see also id.* ¶ 3 (broadly defining "Apps" as "applications . . . that run on Google's Android

18  operating system"). Plaintiffs' FDUTPA and NYGBL claims cannot proceed for lack of a nexus

19  to Florida and New York. *E.g.*, *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1330-31

20  (S.D. Fla. 2012) (dismissing FDUTPA claim for lack of allegations of "sufficient specificity for

21  the location of the conduct giving rise to the FDUTPA claim"); *Hakim-Daccach v. Knauf Int'l*

22  *GmbH*, 2017 WL 5634629, at *6-7 (S.D. Fla. Nov. 22, 2017) (same); *accord In re GE/CBPS Data*

23  *Breach Litig.*, 2021 WL 3406374, at *13 (S.D.N.Y. Aug. 4, 2021) (dismissing NYGBL claim

24  because of merely "conclusory" allegations regarding "the requisite nexus between specific

25  deceptive conduct and New York"); *Nguyen v. Barnes & Noble, Inc.*, 2015 WL 12766050, at *3

26  (C.D. Cal. Nov. 23, 2015) (same).

27

28

## VI.     Plaintiff Fails to State a Claim for California Privacy Violations

Plaintiffs assert intrusion-upon-seclusion and invasion-of-privacy claims under California tort and constitutional law, respectively. Compl. ¶¶ 254-63, 273-83. The California Supreme Court "distilled the largely parallel elements of these two causes of action" into a single analysis, *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 288 (Cal. 2009), which inquires "(1) whether there is a reasonable expectation of privacy, and (2) whether the intrusion was highly offensive," *Hammerling*, 615 F. Supp. 3d at 1088. California law sets a "high bar" for establishing these privacy claims. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014). Plaintiffs' allegations fall far short.

As an initial matter, Plaintiffs fail to allege "a legally cognizable privacy interest" because they leave no clue to the "specific circumstances" under which Google allegedly collected and used their data. *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 690-91 (N.D. Cal. 2021) (dismissing California privacy claims on this basis). Apart from the time-barred Tiny Lab apps, the Complaint does not mention **a single DFF app** that Plaintiffs used—let alone what data it might have collected or how Google might have obtained actual knowledge of such third-party data collection. While Plaintiffs' privacy claims can be dismissed on this basis alone, their allegations cannot satisfy either element of these causes of action.

***Plaintiffs had no reasonable expectation of privacy***. Plaintiffs agreed to Google's Privacy Policy, which disclosed in plain language that Google shows interest-based advertising and shares non-personally identifiable information with advertising partners. *Supra* 3-4. Because "the presence or absence of opportunities to consent voluntarily to activities impacting privacy interests obviously affects the expectations of the participant," *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37 (Cal. 1994), Google's disclosure negates Plaintiffs' expectation of privacy in these activities, *see, e.g.*, *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (affirming dismissal of intrusion claim given users' acquiescence to terms and policies disclosing the data-collection practices at issue); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1037-38 (plaintiff asserting intrusion claim "must not have manifested by his or her conduct a voluntary consent to the invasive actions

of defendant").[12] And while Plaintiffs apparently templated their California privacy claims on *McDonald v. Kiloo ApS*, that case lacked disclosures like Google's—and did not involve a challenge to plaintiffs' expectation of privacy. *See* 385 F. Supp. 3d 1022, 1036 (N.D. Cal. 2019).

**Plaintiffs fail to allege "egregious" conduct.** Google's alleged data collection is not "highly offensive" to a reasonable person, especially given that Google disclosed that activity. *See Hill*, 7 Cal. 4th at 26 ("If voluntary consent is present, a defendant's conduct will rarely be deemed 'highly offensive to a reasonable person' so as to justify tort liability."). To be actionable, California law requires that the alleged activities be "sufficiently serious in their nature, scope, and actual or potential impact to constitute an ***egregious breach of the social norms*** underlying the privacy right." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (Cal. Ct. App. 2011) (emphasis added). "Courts in this district have held that data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling*, 615 F. Supp. at 1090 (collecting cases).

The anonymous data at issue here is of precisely that routine commercial sort: unique-numerical identifiers, device and operating-system information, and IP addresses. Compl. ¶ 150. Collecting and using this data is not "highly offensive." *See, e.g., In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 973, 988 (N.D. Cal. 2014) (offensiveness element lacking where defendant allegedly collected and used users' "personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, declared preferences").[13]

---

[12] *See also Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *10 (N.D. Cal. Oct. 3, 2022) (dismissing California privacy claim because the defendant disclosed the complained-of activity; the "Data Policy clearly states that third-party data will be shared even if a user is logged off"); *Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *8 (N.D. Cal. Dec. 14, 2017) (same; plaintiff was "on notice" that defendant would access the data at issue); *In re Google, Inc. Priv. Pol'y Litig.*, 2013 WL 6248499, at *16 (N.D. Cal. Dec. 3, 2013) (same; "the court does not find any expectation to be plausible in light of Google's earlier disclosure that it would commingle PII across products to support its advertising model").

[13] *See also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (same regarding "unique device identifier number, personal data, and geolocation information"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (same regarding aggregate "browsing history"); *accord In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 294-95 (3d Cir. 2016) (same regarding cookies on third-party website; "courts have long understood that tracking cookies can serve legitimate commercial purposes").

With respect to apps in particular, courts have found inoffensive the alleged collection of information that they described as "sensitive" or "intimate." *Hammerling*, 615 F. Supp. 3d at 1089-91 ("user's sleep cycle, menstrual cycle, sexual preferences, religion, and political affiliations"). *In re Google Android Consumer Privacy Litigation* is especially instructive since it addressed the AdMob SDK. In that case, the plaintiffs alleged that the SDK collected a broader range of more sensitive data without their knowledge: not only users' geolocation and unique-device codes, but also their "name, gender, zip code, [and] App activity (including search terms or selections)." *In re Google Android Consumer Priv. Litig.*, 2013 WL 1283236, at *2, *11 (N.D. Cal. Mar. 26, 2013). That was still not enough to allege "an egregious breach of social norms." *Id.* at *10. The routine commercial data at issue here is worlds apart from the "egregious breaches" with which California privacy law concerns itself. *See Folgelstrom*, 195 Cal. App. 4th at 991-92 (citing cases involving, *inter alia*, the "dissemination of photographs of the decapitated corpse of an accident victim").

Cases that have allowed privacy claims against online services for data collection to survive on the pleadings contained aggravating features—in particular, deceit and misrepresentation. After surveying the law, the Ninth Circuit observed that, "in those cases, the critical fact was that the online entity represented to the plaintiffs that their information would not be collected, ***but then proceeded to collect it anyway***." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602-03 (9th Cir. 2020) (emphasis added) (holding that plaintiffs "plausibly alleged that Facebook set an expectation that logged-out user data would not be collected, but then collected it anyway"); *cf. Hammerling*, 615 F. Supp. 3d at 1090 (dismissing California privacy claim where disclosure, while "ambiguous," was not "blatantly deceitful"); *Manigault-Johnson v. Google, LLC*, 2019 WL 3006646, at *6 (D.S.C. Mar. 31, 2019) (same given the absence of "duplicitous tactics on the part of Defendants"). Deceit or misrepresentation is not plausibly alleged here, where Google both disclosed the relevant data-collection practices and disclaimed any responsibility for non-Google apps offered in the Play Store. *Supra* 3-4.

Straining to allege misrepresentation on the part of Google, Plaintiffs point to Google's statements to ***developers***—not ***users***. They ignore that Google intended those statements to bind developers and to ensure their compliance with data-privacy laws, including COPPA. *Supra* 16-

17. Given that "pragmatic policy concerns" guide judgments regarding offensiveness, *Hernandez*, 47 Cal. 4th at 295, it would be a perverse result if a company's efforts to ensure COPPA compliance instead generate liability. Regardless, Plaintiffs have failed to allege a single app (apart from Tiny Lab's apps) that Google knew had miscategorized itself to monetize without abiding the strictures of COPPA. To the extent that happened, it was against Google's policies and without Google's knowledge—and "no cause of action will lie for accidental, misguided, or excusable acts." *Id.*

For all these reasons, the Court should dismiss the California privacy claims.

## VII.    Plaintiff Fails to State a Claim for Unjust Enrichment

Finally, Plaintiffs' tagalong claims for unjust enrichment under California, Florida, and New York law should be dismissed. As to California, Plaintiffs' claim fails for the simple reason that "[t]here is no cause of action in California labeled 'unjust enrichment.'" *City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 477 (Cal. Ct. App. 2022).[14] Even if an unjust-enrichment claim could proceed as a quasi-contract claim, it would fail because valid contracts—Google's TOS and Privacy Policy—govern this dispute. *See Letizia*, 267 F. Supp. 3d at 1253 (dismissing unjust-enrichment claim under California law because judicially noticed terms covered the same subject matter); *accord Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1322 (S.D. Fla. 2014) (dismissing unjust-enrichment claim under Florida law because contracts "govern the subject of Plaintiffs' dispute"); *Amable v. New Sch.*, 551 F. Supp. 3d 299, 318-19 (S.D.N.Y. 2021) (same under New York law).[15] And even if there could be an independent unjust-enrichment claim despite a contract covering the same subject matter, it would still fail because Plaintiffs "have not plausibly pleaded an actionable wrong" in the form of a "misrepresentation." *Hammerling*, 615 F.

---

[14] The law is divided on this issue, but the most considered opinions dismiss independent claims for unjust enrichment. *E.g.*, *Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070-72 (N.D. Cal. 2021) (surveying recent law and concluding that independent unjust-enrichment claims should be cabined to the insurance context).

[15] The claim under New York law fails as a matter of law for another reason: it "simply duplicates, or replaces, a conventional contract or tort claim." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 393-94 (S.D.N.Y. 2021).

Supp. 3d at 1096 (collecting cases). There is simply nothing "unjust" about Google's operation of DFF to provide younger users, including children, with age-appropriate experiences. Without that, Plaintiffs are not entitled to restitution.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

Dated:  September 14, 2023                          WILSON SONSINI GOODRICH & ROSATI
                                                    Professional Corporation


                                                    By:  /s/ Thomas R. Wakefield
                                                         Thomas R. Wakefield
                                                         twakefield@wsgr.com

                                                    Attorneys for Defendants
                                                    GOOGLE LLC and ADMOB GOOGLE INC.