Patrick Carey, (Bar No. 308623)
Mark Todzo, (Bar No. 168389)
LEXINGTON LAW GROUP
503 Divisadero Street
San Francisco, California 94117
Telephone: (415) 913-7800
pcarey@lexlawgroup.com
mtodzo@lexlawgroup.com

David S. Golub, (*pro hac vice* forthcoming)
Steven L. Bloch (*pro hac vice* forthcoming)
Ian W. Sloss (admitted *pro hac vice*)
Jennifer Sclar (*pro hac vice* forthcoming)
Johnathan Seredynski (*pro hac vice* forthcoming)
SILVER GOLUB & TEITELL LLP
One Landmark Square, 15th Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491
dgolub@sgtlaw.com
sbloch@sgtlaw.com
isloss@sgtlaw.com
jsclar@sgtlaw.com
jseredynski@sgtlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTHERN CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| A.B., a minor, by and through his guardian JEN TURNER, C.D.1, C.D.2, and C.D.3 minors, by and through their guardian KIRENDA JOHNSON, E.F.1, and E.F.2, by and through their guardian BARBARA HAYDEN-SEAMAN, individually and on behalf of all others similarly situated,<br><br>        *Plaintiffs,*<br>    v.<br><br>GOOGLE LLC, ADMOB GOOGLE INC., and ADMOB, INC.,<br><br>        *Defendants.* | Civil Case No.: 5:23-cv-03101-PCP<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date: February 22, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. P. Casey Pitts |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................iii

INTRODUCTION ..............................................................................................................1

STATEMENT OF THE CASE.............................................................................................2

LEGAL ARGUMENT ........................................................................................................4

I.      Legal Standards ....................................................................................................4

II.     Plaintiffs' claims are timely .................................................................................5

        A.      Plaintiffs sufficiently allege the dates of Defendants' misconduct .........5

        B.      Defendants improperly attempt to manufacture a statute of
                limitations defense .................................................................................6

        C.      Minority Tolling Statutes and Equitable Principles tolled applicable
                California and New York statute of limitations.........................................8

        D.      Fraudulent concealment, discovery tolling and estoppel tolled all
                applicable statute of limitations ............................................................10

                i.       Discovery Rule Tolling..............................................................10

III.    Plaintiffs' claims are not preempted by COPPA ..................................................11

IV.     Plaintiffs state claims for invasion of privacy and for violation of the California Constitution's
        right of privacy.

        A.      Plaintiffs, children under the age of 13, had a reasonable
                expectation of privacy ...........................................................................15

        B.      Defendants' conduct was egregious .......................................................16

IV.     Plaintiffs sufficiently state a UCL claim .............................................................17

        A.      Plaintiffs allege economic injury ...........................................................18

        B.      To the extent Plaintiffs are required to allege reliance,
                they allege it .........................................................................................19

        C.      Plaintiffs allege unlawful, unfair, and fraudulent conduct.....................19

D.  Plaintiffs allege entitlement to restitution ...................................................20

V.  Plaintiffs sufficiently state consumer protection claims under Florida and
New York law..................................................................................................21

A.  Plaintiffs' claims under FDUTPA and GBL § 349 are not precluded
by the choice-of-law in Google's TOS...................................................21

B.  Plaintiffs' claims sufficiently plead fraud ................................................21

C.  Plaintiffs have alleged a sufficient nexus to both Florida and New York...............23

VI.  Plaintiffs state unjust enrichment claims under California, New York, and
Florida law......................................................................................................23

VII.  Plaintiffs have standing to seek prospective injunctive relief ...........................25

CONCLUSION.........................................................................................................25

## TABLE OF AUTHORITIES

Page

<u>Cases</u>

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................. 5

*Barker v. Garza*,
    218 Cal. App. 4th 1449, 160 Cal. Rptr. 3d 891 (2013) ....................................... 9

*Bell Atl.Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................. 4

*Brodsky v. Apple Inc.,*
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ................................................................ 5

*Brown v. Google LLC*,
    No. 20-CV-03664-LHK,
    2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ................................ 2, 3, 19, 20, 21

*Brown v. Google LLC*,
    525 F. Supp. 3d 1049 (N.D. Cal. 2021) ......................................................... 6, 11

*Calhoun v. Google LLC*,
    526 F. Supp. 3d 605 (N.D. Cal. 2021) ...................................................... 6, 18, 20

*Casas v. Victoria's Secret Stores, LLC, et al*.,
    No. CV 14-6412-GW(VBKX),
    2014 WL 12708972 (C.D. Cal. Oct. 20, 2014) .................................................. 6

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999) ...................................................................................... 19

*Conmar Corp. v. Mitsui & Co. (U.S.A.),*
    858 F.2d 499 (9th Cir. 1988) ............................................................................ 11

*DeCoursey v. Murad, LLC,*
    No. 3:22-CV-353 (AMN/ML),
    2023 WL 3478459 (N.D.N.Y. May 16, 2023) .................................................. 22

*Disability Rights Montana, Inc. v. Batista*,
    930 F.3d 1090 (9th Cir. 2019) ............................................................................ 5

*Doe 1 v. Univ. of San Francisco*,
    No. 22-CV-01559-LB,
    2023 WL 5021811 (N.D. Cal. Aug. 4, 2023) ................................................... 10

*Doe v. Epic Games, Inc.,*
    435 F. Supp. 3d 1024 (N.D. Cal. 2020) ...................................................................... 15

*Epoch Int'l Partners, LLP v. Bigfoot Inc.,*
    587 F. Supp. 3d 1214 (S.D. Fla. 2022) ...................................................................... 21

*Galstaldi v. Sunvest Communities USA, LLC,*
    637 F. Supp. 2d 1045 (S.D. Fla. 2009) ...................................................................... 21

*Goldemberg v. Johnson & Johnson Consumer Companies,* Inc.,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ........................................................................... 22

*Hasemann v. Gerber Prod. Co.,*
    331 F.R.D. 239 (E.D.N.Y. 2019) ............................................................................... 22

*Henry ex rel. Henry v. City of New York,*
    94 N.Y.2d 275, 724 N.E.2d 372, 374 (1999) ............................................................. 10

*Hernandez v. Hillsides, Inc.,*
    211 F.3d 1063 (Cal. 2009) ........................................................................................ 15

*Huynh v. Chase Manhattan Bank,*
    465 F.3d 992 (9th Cir.2006) ................................................................................... 6, 7

*Imber-Gluck v. Google, Inc.,*
    No. 5:14-CV-01070-RMW,
    2014 WL 3600506 (N.D. Cal. July 21, 2014) ............................................................ 23

*In re Facebook Inc. Internet Tracking Litig.,*
    956 F.3d 589 (9th Cir. 2020) .................................................................................... 15

*In re Facebook Priv. Litig.,*
    791 F. Supp. 2d 705 (N.D. Cal. 2011),
    *aff'd,* 572 F. App'x 494 (9th Cir. 2014) .................................................................. 18

*In re Flonase Antitrust Litig.,*
    692 F. Supp. 2d 524 (E.D. Pa. 2010) ....................................................................... 23

*In re GE/CBPS Data Breach Litig.,*
    No. 20 CIV. 2903 (KPF),
    2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021) ............................................................. 23

*In re Nat'l Prescription Opiate Litig.,*
    452 F. Supp. 3d 745 (N.D. Ohio 2020) .................................................................... 21

*In re Nickelodeon Consumer Priv. Litig.,*
    827 F.3d 262 (3d Cir. 2016) ..................................................................................... 16

iv

*In re Pork Antitrust Litig.*,
    495 F. Supp. 3d 753 (D. Minn. 2020) ...........................................................23

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 16-MD-02752-LHK,
    2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) .............................................20

*Ingrami v. Rovner*,
    847 N.Y.S.2d 132 (N.Y. App. Div. 2007) .....................................................10

*Jessica H. v. Allstate Ins. Co*.,
    155 Cal. App. 3d 590, 202 Cal. Rptr. 239 (Ct. App. 1984) ...............................9

*Jones v. Google LLC*,
    56 F.4th 735 (9th Cir. 2022), *opinion amended and superseded*
    *on denial of reh'g*, 73 F.4th 636 (9th Cir. 2023) ....................................... 1, 11, 12

*Kirksey v. Google LLC*,
    No. 21-CV-08465-VKD,
    2023 WL 2671381 (N.D. Cal. Mar. 27, 2023) ........................................11, 18

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310, 246 P.3d 877 (2011) ................................................. 17, 18, 19

*LeGrand v. Abbott Lab'ys*,
    No. 22-CV-05815-TSH,
    2023 WL 1819159 (N.D. Cal. Feb. 8, 2023) .................................................23

*Linear Tech. Corp. v. Applied Materials, Inc.*,
    152 Cal. App. 4th 115, 61 Cal. Rptr. 3d 221 (2007) ......................................20

*M.K. by & through Kirksey v. Google LLC*,
    No. 21-CV-08465-VKD,
    2023 WL 2671381 (N.D. Cal. Mar. 27, 2023) ........................................11, 18

*Marty v. Anheuser-Busch Companies, LLC*,
    43 F. Supp. 3d 1333 (S.D. Fla. 2014) ...........................................................24

*McDonald v. Kiloo ApS*,
    385 F. Supp. 3d 1022 (N.D. Cal. 2019) ............................................. 4, 16, 17, 22

*N.M. ex rel. Balderas v. Tiny Lab Prods.*,
    516 F.Supp.3d 1293 (D.N.M. 2021) ........................................................ *passim*

*Pelman ex rel. Pelman v. McDonald's Corp*.,
    396 F.3d 508, 511 (2d Cir. 2005) ...................................................................22

*Phillips v. Hobby Lobby Stores, Inc.,*
    No. 2:16-CV-00837-JEO,
    2019 WL 8348613 (N.D. Ala. Dec. 16, 2019) .................................................. 22

*Poorsina v. New Penn Fin., LLC,*
    No. 21-CV-05001-LB,
    2021 WL 5744329, at *3 (N.D. Cal. Dec. 2, 2021) ........................................... 7

*Putnal v. Walker,*
    61 Fla. 720, 55 So. 844 (1911) ....................................................................... 21

*Quintanilla v. WW Int'l, Inc*.,
    541 F. Supp. 3d 331 (S.D.N.Y. 2021) ............................................................ 24

*Reveal Chat Holdco, LLC v. Facebook, Inc.,*
    471 F. Supp. 3d 981 (N.D. Cal. 2020) ........................................................... 11

*Schneider v. Colgate-Palmolive Co.,*
    No. 5:22-CV-1294,
    2023 WL 4009099 (N.D.N.Y. June 15, 2023) ............................................... 24

*Scott Eden Mgmt. v. Kavovit,*
    149 Misc. 2d 262, 563 N.Y.S.2d 1001 (Sup. Ct. 1990) ................................. 21

*Sherb v. Monticello Cent. Sch. Dist.,*
    163 A.D.3d 1130, 81 N.Y.S.3d 265 (2018) .................................................... 10

*Supermail Cargo, Inc. v. United States,*
    68 F.3d 1204 (9th Cir. 1995) ....................................................................... 6, 7

*W. Shield Investigations & Sec. Consultants v. Superior Ct.,*
    82 Cal. App. 4th 935, 98 Cal. Rptr. 2d 612 (2000),
    *as modified on denial of reh'g* (Aug. 23, 2000) ............................................. 9

*Williams v. Los Angeles Metro. Transit Auth.,*
    68 Cal. 2d 599, 440 P.2d 497 (1968) .............................................................. 9


Statutes and Other Authorities:

15 U.S.C.A. § 6501 .............................................................................................. 1

Fed. R. Civ. P. 8 ......................................................................................... *passim*

Fed. R. Civ. P. 8(a) ....................................................................................... 4, 22

Fed. R. Civ. P. 8(a)(2) ......................................................................................... 4

Fed. R. Civ. P. 8(d) ..................................................................................................24

Fed. R. Civ. P. Rule 9(b) ....................................................................................21, 22

Cal. Civ. Proc. Code § 335.1 .....................................................................................9

Cal. Civ. Proc. Code §352 (a) ...................................................................................9

Cal. Bus. & Prof. Code § 17200 .........................................................................17, 19

Cal. Bus. & Prof. Code § 17204 ...............................................................................19

Cal. Bus. & Prof. Code § 17208 .................................................................................9

Cal. Fam. Code § 6710 .............................................................................................15

Fla. Stat. § 501.201 ...................................................................................................21

Fla. Stat. § 501.204(1) ..............................................................................................21

N.Y. C.P.L.R. art. 12 ................................................................................................10

N.Y. C.P.L.R. § 208 .................................................................................................10

N.Y. C.P.L.R. § 214(2) .............................................................................................10

N.Y. Gen. Bus. Law § 349 ............................................................................21, 22, 24

N.Y. Gen. Oblig. Law § 3-101 .................................................................................21

**INTRODUCTION**

Defendants Google and AdMob, two prolific violators of individuals' privacy rights, mischaracterize Plaintiffs' allegations in a bid to evade liability for their systematic violation of the privacy rights of millions of children under the age of 13. Google lured these children (including Plaintiffs) into using applications on the Android operating system which collected their personal information and tracked them without parental consent. Defendants accomplished this by economically incentivizing developers to intentionally design applications that appealed to children under 13. Defendants instructed developers to include a software code (the "AdMob SDK") in those apps which allowed AdMob to collect intimate personal information of the children using those apps (the "DFF AdMob Apps"). Defendants then used that information to track these minors' activities on the internet and develop individualized profiles that served as the basis for lucrative behavioral advertising targeted to these young children. Defendants engaged in this conduct without obtaining parental consent as required by law.

Defendants' conduct violated the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C.A. § 6501, *et. seq.*, as well as the consumer protection and common law of several states, including California, New York, and Florida. Plaintiffs seek redress on behalf of all children under thirteen who used DFF Apps containing the AdMob SDK and were tracked, profiled and targeted with advertising as a result.

Defendants seek to distort Plaintiffs' claims and the record to manufacture a statute of limitations defense under the cloak of Rule 8, but the Court should reject Defendants' improper (and irrelevant) competing factual allegations, which ignore the continuing nature of Defendants' misconduct through at least 2021. Def. MTD at 2, 7-10. Moreover, Defendants' statute of limitations defense is meritless because all victims of Defendants' conduct were minors for whom the applicable statutes of limitations are tolled by law. *See infra,* Section II.

Defendants' preemption arguments are equally meritless. The Ninth Circuit has now held that COPPA does not preempt consistent state laws. *Jones v. Google LLC,* 56 F.4th 735, 741 (9th Cir. 2022), *opinion amended and superseded on denial of reh'g*, 73 F.4th 636 (9th Cir. 2023). Defendants propound arguments that Google and AdMob lacked "actual knowledge" that the DFF Apps using AdMob were primarily child-directed and as a result, the conduct alleged herein did not violate COPPA. But in *N.M. ex*

*rel. Balderas v. Tiny Lab Prods,* 516 F. Supp. 3d 1293, 1302 (D.N.M. 2021), United States District Judge Martha Vasquez held that the exact behavior alleged in Plaintiffs' Complaint "adequately alleged actual knowledge on the part of Google" and that "[i]t follows that there is no basis to dismiss Plaintiff's COPPA claim . . . [a]nd because Plaintiff's COPPA claim against Google survives, there is no basis to hold Plaintiff's intrusion on seclusion preempted."

For these, and the additional reasons discussed below, Defendants' motion to dismiss the Complaint should be denied.

## STATEMENT OF THE CASE

Google markets itself as a technology company, but its primary source of revenue is advertising. Cplt., ¶ 42. Google captures individuals' attention in order to serve them advertising via technological devices running Google's Android operating system ("Android"). *Id.,* ¶¶ 3, 41-42. Examples of devices running Android include smartphones and tablets. Google also develops software applications for Android. *Id.,* ¶ 39. One Android application developed by Google is called the Play Store. *Id.,* ¶¶ 57-59. The Play Store enables Android device users to download software applications developed by third parties for use on their Android devices ("Android Apps"). *Id.,* ¶¶ 58, 63.

In 2015 Google launched the "Designed for Families" ("DFF") program on the Google Play Store. *Id.,* ¶ 11. Google marketed the DFF program as a way parents and children could find age-appropriate content (*i.e.,* children's apps) on the Play Store. *Id.,* ¶¶ 11, 93, 104. To attract child users for DFF Apps, Google stated that all Apps included in the DFF program met a "stringent legal and policy bar" and were required to "undergo a specialized operations review" to ensure compliance with the DFF program rules, including, *inter alia,* data collection and ad targeting, and that Apps were required to comply with COPPA and all other applicable children's privacy regulations. *Id.,* ¶¶ 94-95, 234. Google warned that non-compliance could result in expulsion from the DFF program and the Google Play Store. *Id.,* ¶ 98.

Google simultaneously marketed DFF to app developers as an easy way to gain access to a child audience. *Id.,* ¶¶ 107-108. Children are an extremely lucrative demographic because they are easily influenced and have an outsized impact on family spending. *Id.,* ¶¶ 100-101. Because the purpose of the DFF program was to build a child audience for advertisers and app developers, Google forbade app developers from submitting apps "that have no specific benefit or relevance for audiences under the age

of thirteen" for inclusion in the DFF program. *Id.,* ¶¶ 103-104. To this end, Google reviewed each DFF App submission to ensure that the App provided a "specific benefit" to children under 13 before including it in the DFF program. *Id.,* ¶¶ 115-117.

As of March 2018, Google had reviewed and accepted over 5,855 child-directed apps into the DFF program. *Id.,* ¶ 123. These DFF Apps were downloaded 4.5 billion times. *Id*. Like the vast majority of apps in the Google Play Store (3.6 million out of a total of 3.8 million), most of the DFF Apps were offered for free, but showed users advertisements, because that is by far the most lucrative way to monetize an App because it avoids asking children to ask for money to download the app. *Id.,* ¶¶ 60-63, 125.

Defendants further economically incentivized app developers to develop child-directed apps for the DFF program by offering developers an easy, prepackaged way to earn advertising revenue from their apps. *Id.,* ¶ 105. Specifically, Google and AdMob subsidiary wrote the AdMob SDK which they provided to app developers to embed in their DFF Apps. *Id.,* ¶ 7-8, 74. Once embedded in a DFF App, the AdMob SDK automatically sends AdMob the personal information of each user of the DFF App and show those users advertisements. *Id.,* ¶¶ 5, 66, 71, 74. AdMob charges advertisers for the right to show advertisements to the children using DFF Apps and shares the revenue with app developers. *Id.,* ¶¶ 146, 191.

Defendants' efforts to track, profile and target young children with lucrative behavioral advertising were enormously successful. App developers embedded the AdMob SDK in at least hundreds, if not thousands of DFF Apps that were downloaded hundreds of millions of times by children under thirteen. *Id.,* ¶¶ 141, 155. Indeed, researchers investigating the information collected by DFF Apps personally observed over 168 DFF Apps (a small subset of the total number of apps using the AdMob SDK) sending information to AdMob. That is, every time a child used one of the DFF Apps in which the AdMob SDK was embedded, AdMob collected that child's intimate personal information for purposes of showing that child personalized behavior-based advertising and did in fact show that child personalized advertising for profit. *Id*., ¶¶ 10, 20, 130.

In September 2018, the New Mexico Attorney General ("NM AG") sued Google, AdMob, and several tracking technology companies over the exact conduct at issue in this action on behalf of New Mexico residents. *N.M. ex rel. Balderas v. Tiny Lab Prods.*, Case No. 1:18-cv-00854, District of New Mexico ("NM Action"), ECF No. 1. The NM AG alleged that the use of the AdMob SDK by DFF Apps

violated COPPA, the New Mexico unfair trade practices act, and the common law invasion privacy tort intrusion upon seclusion. *Id.,* ¶¶ 1-10, 207-51. After United States District Judge Martha Vasquez sustained the NM AG's claims against Google and AdMob, *N.M. ex rel. Balderas v. Tiny Lab Prods.*, 516 F.Supp.3d 1293 (D.N.M. 2021), Google and AdMob settled with the NM AG on December 10, 2021, agreeing to pay $5 million and to amend their practices to comply with COPPA (the "NM AG Settlement"). NM Action, ECF No. 149; Cplt. ¶ 157. As one aspect of Defendants' settlement with the NM AG in 2021, Defendants agreed, for the first time, that AdMob "will begin to treat the app and date previously collected therefrom in a manner consistent with COPPA." *Id.,* ¶ 136.

Plaintiffs filed the instant action on June 22, 2023, seeking redress on behalf of all children under 13 who used DFF AdMob Apps and as a result had their personal information collected by Defendants without parental consent. *Id.,* ¶¶ 1-24. Each Plaintiff downloaded and used DFF AdMob Apps, meaning their personal information was collected by AdMob for purposes of tracking and profiling them and targeting them with personalized behavior-based advertising. The DFF AdMob Apps used by Plaintiffs include (1) Fun Kid Racing, (2) GummyBear and Friends Speed Racing, and (3) Monster Truck Racing. *Id.,* ¶¶ 193-210. Each of these DFF AdMob Apps have been observed by researchers as having collected personal information from its users, and as stated above, at least hundreds of additional DFF AdMob Apps collected personal information from children under 13 using the apps. *Id.,* ¶ 155.

Plaintiffs' Complaint asserts claims under the consumer protection laws of California, New York and Florida, for unjust enrichment under the laws of those states, and common law and California Constitutional privacy violations. *Id.,* ¶¶ 231-350.

## LEGAL ARGUMENT

### I.    Legal Standards.

A complaint is only required to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a plaintiff must "allege enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "This does not impose a probability requirement at the pleading stage." *McDonald v. Kiloo ApS*, 385 F. Supp.3d 1022, 1030 (N.D. Cal. 2019). "[I]t simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the conduct challenged by Plaintiff."

*Twombly*, 550 U.S. at 556. "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations must be "sufficiently clear and concrete to give the defendant an 'idea [of] where to begin' in preparing a response." *Twombly*, 550 U.S. at 565, n.10. The court "must 'take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party.'" *Disability Rights Montana, Inc. v. Batista*, 930 F.3d 1090, 1096-97 (9th Cir. 2019).

## II. Plaintiffs' claims are timely.

As their first basis for dismissal, Defendants contend Plaintiffs' claims are time-barred. Specifically, Defendants argue Plaintiffs have failed to comply with Rule 8 by "fail[ing] to identify when the purported harm occurred." Def. MTD at 8. Defendants then use Plaintiffs' alleged Rule 8 failure as a basis to assert a statute of limitations defense. *Id*. at 8-9. As discussed below, Defendants' argument fails for the following reasons: (1) Plaintiffs' Complaint alleges wrongful conduct beginning in 2015 and extending through 2021 in satisfaction of Rule 8 and within every applicable statute of limitations; and (2) Plaintiffs and all members of the class were children under the age of 13 at the time of the violations, and various state statutes of limitations are tolled by those states' minority tolling statutes and recognition of fraudulent concealment and equitable tolling principles.

### A. Plaintiffs sufficiently allege the dates of Defendants' misconduct.

Rule 8 requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief" and "[c]ourts often dismiss claims under Rule 8 when plaintiffs fail to allege approximately when the actionable misconduct occurred." *Brodsky v. Apple Inc*., 445 F. Supp. 3d 110, 121, 135 (N.D. Cal. 2020). Defendants misstate Plaintiffs' allegations to invent an argument based on the fact that Plaintiffs do not allege the exact date that they downloaded the DFF AdMob Apps. But a cursory reading of the Complaint shows why that argument fails.

The Complaint alleges that the misconduct at issue began when Google created the DFF program in April 2015 and incentivized child-directed app developers to miscategorize their apps. *See, e.g.,* Cplt. ¶ 11. The Complaint also alleges that, by Spring 2018, researchers had found that the AdMob SDK which was included in at least hundreds of the thousands of DFF Apps was unlawfully collecting the personal

information of children under thirteen without parental consent. *Id.,* ¶ 133. And the Complaint also alleges that Google failed to remedy this conduct until entering into a settlement agreement with the NM AG's office on December 10, 2021. *Id.,* ¶ 136. The Complaint thus plainly alleges the misconduct occurred from 2015 through 2021, and each Plaintiff alleges that they used DFF AdMob Apps during this period. Because the Complaints alleges, at a minimum, "approximately when the actionable misconduct occurred", Defendants' Rule 8 arguments should be rejected. *See, e.g., Casas v. Victoria's Secret Stores*, *LLC, et al.,* No. CV 14-6412-GW(VBKX), 2014 WL 12708972, *4 (C.D. Cal. Oct. 20, 2014) ("[w]hen a plaintiff describes a violation and alleges it has occurred repeatedly, Rule 8 does not require a description of each specific instance of the violation at the pleading stage") (collecting cases).[1]

**B.     Defendants improperly attempt to manufacture a statute of limitations defense.**

In support of their statute of limitations argument, Defendants improperly submit extrinsic evidence—some sworn, some not sworn—that Defendants contend establishes that apps developed by non-party Tiny Lab Productions were removed from the Google Play Store on September 11, 2018 (the same day the NM AG filed suit).[2] But, even if credited, this evidence does not establish a statute of limitations defense because it fails to address the timing of Defendants' alleged misconduct.

It is well-settled that "[a] claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir.2006). That is, "[a] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir.1995). Defendants attempt to circumvent this by raising their statute of limitations defense

---

[1] Defendants argue that Plaintiffs have failed to plead when they downloaded the Tiny Lab Apps. Def. MTD at 6.  Given that Defendants' misconduct occurred during the use of the DFF AdMob Apps, each use triggered a fresh violation for purposes of the statute of limitations, and the date of download is irrelevant.  *Brown v. Google LLC,* 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021) ("separate, recurring invasions of the same right each trigger their own separate statute of limitations"), *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 625 (N.D. Cal. 2021) (same).

[2] *See* Defendants' judicial notice motion. ECF Nos. 28-29.

under the guise of a Rule 8 violation, but as demonstrated below, this argument is meritless, and the Court should reject Defendants' naked attempt to improperly raise a statute of limitations defense at this stage.

First, Defendants' own conduct undermines any argument that it is facially apparent all applicable statutes of limitations have run. If it was apparent from the face of the Plaintiffs' Complaint that Plaintiffs could allege no timely claims, there would be no need for Defendants to, as they have done here, introduce extrinsic evidence.[3] This alone renders Defendants' defense improper. *See, e.g., Poorsina v. New Penn Fin., LLC,* No. 21-CV-05001-LB, 2021 WL 5744329, at *3 (N.D. Cal. Dec. 2, 2021), *aff'd,* No. 22-15239, 2022 WL 17038952 (9th Cir. Nov. 17, 2022) ("a motion for summary judgment is the proper procedure to evaluate the expiration of the statute of limitations when the inquiry turns on disputed facts."). Moreover, because Plaintiffs plainly allege that the misconduct in this case is the collection of personal information of Plaintiffs *during each use of* a DFF AdMob App, *not* the downloading of the DFF AdMob Apps themselves, Defendants' proffered extrinsic evidence fails to limit the time period of their misconduct. Cplt., ¶¶ 127-28, 139-50, 193-210. Therefore, because it is *not* facially apparent that Plaintiffs' claims are time barred, Defendants' statute of limitations defense should be disregarded as improperly raised. *Huynh*, 465 F.3d at 997.

Second, even if credited, Defendants' extrinsic evidence fails to establish that Defendants' wrongful conduct stopped in September 2018, as claimed by Defendants. Defendants' statute of limitations argument is premised on a fundamental misunderstanding (or purposeful misstatement) of the basis for Plaintiffs' claims. The wrongful conduct Plaintiffs allege is the AdMob SDK's *collection of Plaintiffs' personal information* which occurs during the *use of the already-downloaded* DFF AdMob Apps and not their mere download from the Google Play Store. Importantly, once downloaded, DFF AdMob Apps remain functional and playable, as confirmed by Google's own website: "[i]f you have the app installed on your device, you can continue to use the app" and that "the app will not be removed from your device."[4]

---

[3] *See supra,* n. 2.

[4] *App removed from Google Play Store*, Google Play Help, [emphasis added],https://support.google.com/googleplay/answer/12246761?sjid=15330455506275306200-NA (accessed Nov. 18, 2023).

Each Plaintiff alleges that they downloaded *and used* DFF AdMob Apps through 2021 and that while *using* the DFF AdMob Apps, their personal information was collected by Defendants. Cplt., ¶¶ 193-210. No Plaintiff alleges they stopped using the DFF AdMob Apps once Google allegedly removed the apps from the Play Store and no properly considered facts support this conclusion. Moreover, Defendants' own settlement with the NM AG executed on December 10, 2021 demonstrates that AdMob had not stopped collecting the personal information of DFF AdMob App users as of that date:

> 4.2. AdMob. Google will maintain a mechanism that will communicate the child-directed status of apps on Google Play to AdMob to help promote consistent treatment of those apps by AdMob. Within 30 days of an app's child-directed status being communicated to AdMob, AdMob will begin to treat the app and the data previously collected therefrom in a manner consistent with COPPA and other applicable legal obligations.[5]

When the basis for Plaintiffs' claims is properly considered, Defendants' Rule 8 and statute of limitations arguments fail, because they simply do not address the wrongful conduct alleged and its continuing nature through 2021. Plaintiffs' Complaint plainly alleges that Defendants' conduct, which forms the basis of Plaintiffs' claims continued until Defendants entered into their 2021 NM AG Settlement. *E.g.,* Cplt., ¶ 136. Defendants' Rule 8 and statute of limitations arguments should be rejected on this basis.

**C.      Minority Tolling Statutes and Equitable Principles tolled applicable California and New York statute of limitations.**

Even if Defendants were correct that their wrongdoing ceases in 2018, they could still not prevail on their statute of limitations arguments.  Plaintiffs were all children under the age of 13 at the time of the violations alleged in the Complaint and are thus covered by applicable the minority tolling statutes of California and New York and by equitable tolling principles applicable in those states.

California, New York, and many other states consider children to have a distinct legal disability, as they are prohibited from personally bringing a cause of action before reaching the age of majority. The underlying rationale of minority tolling is to safeguard minors' rights during a period in which minors are viewed as being immature, inexperienced, and unable to independently protect themselves. To effectuate

---

[5] NM AG Settlement, at 4.

this goal, state legislatures across the country, including California and New York, have enacted minority tolling statutes exempting children from the operation of statutes of limitations during their period of legal disability. These statutes generally operate to suspend the running of a statute of limitations until minors reach the age of majority.

Here, Plaintiffs' claims under California and New York law are covered by applicable minority tolling statutes.  California's Cal. Civ. Proc. Code § 352 (a) provides, in relevant part, that:

> If a person entitled to bring an action . . . is, at the time the cause of action accrued either under the age of majority or lacking the legal capacity to make decisions, the time of the disability is not part of the time limited for the commencement of the action.

California minority tolling statute thus tolled any applicable statutes of limitation for causes of action based on California law. "The tolling provisions of [Code of Civil Procedure section] 352 prevail over special time limitations contained in specific statutes, in the absence of a contrary expression of legislative intent." *W. Shield Investigations & Sec. Consultants v. Superior Ct.*, 82 Cal. App. 4th 935, 98 Cal. Rptr. 2d 612 (2000), a*s modified on denial of reh'g* (Aug. 23, 2000). *See also Jessica H. v. Allstate Ins. Co.*, 155 Cal. App. 3d 590, 592, 202 Cal. Rptr. 239, 240 (Ct. App. 1984). Because there is no clear expression of legislative intent that § 352 should not prevail as to Plaintiffs' claims, the provision covers all claims brought by Plaintiffs under California law. *See* Cal. Bus. & Prof. Code § 17208; Cal. Civ. Proc. Code § 335.1.

This result is consistent with California's "strong public policy in favor of protecting minors from the sometimes harsh application of statutes of limitations." *Barker v. Garza*, 218 Cal. App. 4th 1449, 1462, 160 Cal. Rptr. 3d 891, 902 (2013). *See also Williams v. Los Angeles Metro. Transit Auth.*, 68 Cal. 2d 599, 602, 440 P.2d 497, 499 (1968) (explaining that § 352 "effectuate[s] a deep and long recognized principle of the common law and of this state: children are to be protected during their minority from the destruction of their rights by the running of the statute of limitations."); *W. Shield Investigations & Sec. Consultants*, 82 Cal. App. 4th at 947, 98 Cal. Rptr. 2d at 620 ("Because a minor does not have the understanding or experience of an adult, and because a minor may not bring an action except through a guardian . . . special

safeguards are required to protect the minor's right of action . . . . The tolling provision is not easily overcome.").

Similarly, New York law provides that where a person "is under a disability because of infancy . . . at the time the cause of action accrues" the applicable statute of limitations will be tolled for the period of disability. *Henry ex rel. Henry v. City of New York*, 94 N.Y.2d 275, 279, 724 N.E.2d 372, 374 (1999) (quoting N.Y. C.P.L.R. § 208). Under N.Y. C.P.L.R. § 208, if the applicable statute of limitations is three years or longer, the plaintiff will have *the longer of* (1) the time provided by the statute of limitations, or (2) three years from the time the plaintiff reaches majority to commence the cause of action. Here, because the applicable statute of limitations for each of Plaintiffs' New York claims is three years or longer (*see* N.Y. C.P.L.R. § 214(2); *Ingrami v. Rovner*, 847 N.Y.S.2d 132, 134 (N.Y. App. Div. 2007)), each of the Plaintiffs has three years from the time he or she reaches majority to commence each cause of action. This result is consistent with New York's "strong public policy of protecting those who are disabled because of their age." *Henry*, 94 N.Y.2d at 282, 724 N.E.2d at 377; *see also Sherb v. Monticello Cent. Sch. Dist.*, 163 A.D.3d 1130, 1131, 81 N.Y.S.3d 265, 267 (2018) (holding minor tolling was unaffected by plaintiff's father's efforts to pursue claim on plaintiff's behalf, citing New York public policy in favor of protecting infants); N.Y. C.P.L.R. art. 12.

Thus, even accepting Defendants' artificial cutoff date of September 2018 (when the Tiny Lab Apps were purportedly removed from the Google Play Store) as the accrual date for Plaintiffs' claims, Plaintiffs' New York and California claims are well within the statute of limitations.

### D. Fraudulent concealment, discovery tolling and estoppel tolled all applicable statutes of limitations.

Even if the state law claims in California and New York were not covered by Minority Tolling Statutes, Plaintiffs are well within the statute of limitations due to discovery tolling, fraudulent concealment, and estoppel.

"Courts apply the discovery rule in situations where the injury is difficult to detect, and the defendant has superior knowledge of the injury and reason to think that the plaintiff is unaware of it." *Doe 1 v. Univ. of San Francisco,* No. 22-CV-01559-LB, 2023 WL 5021811, at *10 (N.D. Cal. Aug. 4, 2023).

It would be unreasonable to expect Defendants' victims here, who are minors under 13, to themselves discover the complex nature of Defendants' conduct. As the Complaint details, Defendants affirmatively created the illusion that the DFF AdMob Apps were "high quality, age-appropriate content…design[ed] for children", while permitting rampant COPPA violations through its practice of permitting app developers to label an app as "mixed audiences" within the DFF program, a fact concealed from Plaintiffs. Cplt. ¶¶ 94, 133.  Defendants also affirmatively denied and/or concealed they were knowingly violating COPPA when confronted by the Berkeley researchers about their findings (Cplt. ¶ 133), and continued denying wrongdoing in settling the NM AG Action. "An affirmative act of denial . . . is enough if the circumstances make the plaintiff's reliance on the denial reasonable." *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 992 (N.D. Cal. 2020) (quoting *Conmar Corp. v. Mitsui & Co. (U.S.A.),* 858 F.2d 499, 505 (9th Cir. 1988)).

The same facts justify application of fraudulent concealment tolling. *See Brown v. Google LLC*, 525 F.Supp.3d 1049, 1070 (N.D. Cal. 2023).

### III.    Plaintiffs' claims are not preempted by COPPA.

The Ninth Circuit recently settled the law with respect to COPPA's preemption of state law causes of action when it held that any state law remedy that "does not stand as an obstacle to COPPA in purpose or effect . . . [is] consistent with COPPA." *Jones v. Google LLC*, 73 F.4th 636, 643 (9th Cir. 2023). *See also M.K. by & through Kirksey v. Google LLC*, No. 21-CV-08465-VKD, 2023 WL 2671381, *4 (N.D. Cal. Mar. 27, 2023) (following holding in *Jones*).

More specifically, the Court held that state law causes of action against Google for violations of children's privacy laws in connection with its operation of YouTube—the same causes of action Plaintiffs' have alleged in the Complaint in this action—were *not* preempted by COPPA.  *Jones*, 73 F.4th at 643-44. In deciding whether to rehear the case *en banc* at Google's request, the Ninth Circuit solicited the views of the FTC.  *Id.* at 643.  The FTC explicitly agreed with the ruling of the Ninth Circuit panel, stating that:

> [t]he panel correctly determined that state law claims like those here, which are brought as fully stand-alone causes of action under state law . . . but involve conduct that also violates COPPA, are generally consistent with COPPA and not preempted. Congress did not intend to wholly foreclose state protection of children's online privacy, and the panel properly rejected an interpretation of COPPA that would achieve that outcome . . . . [t]he panel properly rejected Google's interpretation, which would have the extreme effect of providing immunity from a wide swath of traditional state law claims that were never discussed in COPPA's legislative history, much less swept aside altogether. *Id.*

Notably, Defendants do not argue that any of the state law remedies in this case stand as an obstacle to COPPA in purpose or effect. As in *Jones,* the claims in this case are entirely consistent with COPPA. In an effort to avoid the holding in *Jones,* Defendants rehash an already discredited argument (*see Balderas,* 516 F. Supp. 3d at 1299) to contend that Plaintiffs' claims are premised on a "fundamental misunderstanding" of COPPA. Def. MTD at 11. But, like most of Defendants' arguments, this contention is based on a misstatement of Plaintiffs' claims and here, COPPA's requirements. For the reasons discussed below, the Court should reject Defendants' arguments as to COPPA, as their alleged conduct clearly violates COPPA, nullifying Defendants' preemption arguments.

COPPA "makes clear that ad networks [such as AdMob] may be held liable for the collection of personal information from child app users only if they have 'actual knowledge' that the apps in which their SDKs are embedded are 'directed to children." *Balderas*, 516 F. Supp. 3d at 1298 (*citing* 16 C.F.R. § 312.2). COPPA deems mobile apps such as the DFF AdMob Apps "directed to children" if they are "targeted to children. *Id.* To determine whether mobile apps are "directed" or "targeted" to children, various criteria are considered, including "competent and reliable empirical evidence regarding audience composition, and evidence regarding the intended audience" and:

> [an app's] subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children. *Id.*

The "mixed-audience exception" to COPPA provides, however, that where an app "does not target children as its primary audience" it will not be deemed directed to children if the app engages in age gating

and does not collect information from children who identify themselves under thirteen. *Id.* Defendants argue the "mixed-audience exception" saves their conduct from violating COPPA, as they contend Plaintiffs insufficiently allege that Defendants had actual knowledge the DFF AdMob Apps used by Plaintiffs and the putative class "target[ed] children as [their] primary audience." Def. MTD at 11-12. Defendants made this precise argument in *Balderas*, and the court soundly rejected it.

The DFF AdMob Apps at issue in *Balderas* were developed by Tiny Lab Productions, and are the same DFF AdMob Apps downloaded and used by Plaintiffs. Plaintiffs' Complaint, like the NM AG's *Balderas* Complaint, alleges that when an app developer sought to have their app included in the DFF program, they submitted the app to Google for review and that Google reviewed the app to ensure that every app included in the DFF program appealed to children under thirteen. Cplt., ¶¶ 20, 115-17.

The *Balderas* decision cited by Defendants determined that the exact conduct at issue in this case— Defendants' tracking of children under 13 via DFF AdMob Apps—did *not* fall within the "mixed-audience exception" to COPPA and *did* violate COPPA. *Balderas* reached this decision despite the fact that plaintiffs in *Balderas* had "fail[ed] to use the precise words 'primarily child-directed.'" *Balderas*, 516 F. Supp. 3d at 1300. Instead, Judge Vasquez observed, "what matters" is "whether the factual content of the Complaint allows the Court to draw the reasonable inference that Google had actual knowledge that Tiny Lab's apps 'target[ed] children as their primary audience . . . the Court finds that it does." *Id.*

This finding in *Balderas* was based on the fact that the *Balderas* Complaint, like Plaintiffs' Complaint, alleged that the DFF AdMob Apps at issue were "fun, free, kid-focused games" with a "cartoonish design and subject matter," with "levels [ ] designed specifically for children[.]" *Id.* The court further took note of DFF AdMob App called "called 'Fun Kid Racing,' which gives players "an assortment of cartoonish cars" to race along to a "child-friendly soundtrack," and is designed for children aged 2 through 10, with "levels" and "controls" that "even a toddler" can use "without any problem." *Id.* Notably, several Plaintiffs here downloaded and used the same Fun Kid Racing app. Cplt., ¶¶ 18, 194, 200, 206.

The court next noted that the *Balderas* Complaint alleges, as Plaintiffs allege here, that "Google reviews the content of apps submitted to its Designed for Families program with a particular eye toward whether the apps are relevant for children" and "Tiny Lab's apps, replete with characteristics revealing their content, were submitted to, and accepted by, Google into that program." *Balderas*, 516 F. Supp. 3d

at 1301. Importantly, as alleged in Plaintiffs' Complaint, the *Balderas* Complaint, and Judge Vasquez above, Google reviewed *every* DFF AdMob App included in the DFF program in the same way Defendants reviewed the specific DFF AdMob Apps at issue in *Balderas* (*i.e.,* the apps developed by Tiny Lab).

Based upon the above, Judge Vasquez found that the allegations in *Balderas* of Google's initial review of apps submitted for inclusion in the DFF program were sufficiently to establish the inference that Google possessed actual knowledge that the DFF apps primarily targeted children:

> [T]he factual content of the Complaint plausibly alleges that, first through its review process in connection with the submission of Tiny Lab's apps to its Designed for Families program and again through its investigation of those apps to determine whether they were "primarily directed to children," Google obtained actual knowledge that Tiny Lab's apps are "child directed sites or services whose primary target audience is children." *Id.*

Plaintiffs here allege that Google conducted the same review of all apps included within the DFF program, and Judge Vasquez's holding that such allegations supporting a finding of Defendants' actual knowledge that all DFF AdMob Apps were "primarily directed to children" is equally applicable.

Based on these allegations—which mirror Plaintiffs' here—Judge Vasquez concluded the *Balderas* Complaint  "(1) detail[ed] the subject matter, visual content, use of animated characters, and child-oriented activities" of DFF AdMob Apps, which are "factors establishing that the apps were directed to children" and "(2) indicate[d] that the apps were specifically designed and expressly intended for young children (ages 2 through 10, toddlers), establishing that the apps were directed to children as their first, principal, or "primary" audience." *Balderas*, 516 F. Supp. 3d at 1301. Accordingly, Judge Vasquez found that the *Balderas* Complaint sufficiently created the reasonable inference the DFF AdMob Apps at issue there were not only "directed to children" but also that their "primary audience" is children, thus removing the *Balderas* defendants' conduct from the mixed-audience exception's coverage. *See id.* And Judge Vasquez further observed that Google "gained (not once but twice) a first-hand awareness or understanding – "actual knowledge" – of the nature of those apps" through its reviewed of those DFF AdMob Apps conducted prior to allowing the DFF AdMob Apps to be accepted into the DFF program. *Id.*

For the same reasons articulated in *Balderas*, the Court should reject Defendants' strained argument regarding COPPA liability. Plaintiffs' Complaint concerns the same DFF AdMob Apps at issue in *Balderas*. Plaintiffs' allegations regarding the content of the DFF AdMob Apps, coupled with those regarding the first-hand knowledge Google acquired that the DFF AdMob Apps targeted children as their primary audience thus "plausibly allege[] that, first through its review process in connection with the submission of [DFF AdMob Apps] to its Designed for Families program and again through its investigation of those apps to determine whether they were 'primarily directed to children,' Google obtained actual knowledge that [the DFF AdMob Apps] are 'child directed sites or services whose primary target audience is children.'" *Id.* As in *Balderas,* there is no basis for Defendants' preemption argument.

## IV.   Plaintiffs state claims for invasion of privacy and for violation of the California Constitution's right of privacy.

Under California law, while "intrusion upon seclusion" and state constitutional privacy claims are "separate claims with technically distinct elements," the two causes of action are "functionally identical." McDonald, 385 F. Supp. 3d at 1033.  Courts analyze these two claims together and consider "(1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests." *Hernandez v. Hillsides, Inc.*, 211 F.3d 1063, 1074 (Cal. 2009); *see also In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). Google's exfiltration of the personal information of children through its DFF program and its SDK, AdMob, for the purpose of manipulating children through behavioral advertising satisfies these elements.

### A.   Plaintiffs, children under the age of 13, had a reasonable expectation of privacy.

Defendants argue that Plaintiffs, children under the age of 13, had no reasonable expectation of privacy because they agreed to Google's Terms of Service when they downloaded third-party apps from the Google Play Store.  Def. MTD at 3-4, 21.  Defendants are wrong for two reasons.

First, even if Defendants could prove that their disclosure was adequate, which they cannot, minors have an unequivocal, statutory right to disaffirm a contract in the State of California.  Cal. Fam. Code § 6710 (West) ("[e]xcept as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards").  *See also Doe v. Epic Games, Inc.*, 435 F.

Supp. 3d 1024, 1035–36 (N.D. Cal. 2020) (holding that minor players of Fortnite disaffirmed the End User License Agreement when they filed suit, and explaining that "[t]he disaffirmance statute reflects a policy of 'shield[ing] minors from their lack of judgment and experience and confer[ing] upon them the right to avoid their contracts in order that they may be protected against their own improvidence and the designs and machinations of other people.'" (citation omitted). Defendants fail to address this issue in their brief, instead citing numerous cases in which courts have held that there was no expectation of privacy when adults consented to terms of service. Def. MTD at 21-22. Defendants do not cite to a single case involving consent to terms of service and minors.

Second, the Complaint alleges that Google collected the personal information of children under the age of 13 without obtaining parental consent, as required by COPPA. Cplt., at ¶ 190. Defendants do not suggest, because they cannot, that they obtained parental consent prior to exfiltrating the personal information of children under the age of 13.

## B.    Defendants' conduct was egregious.

Defendants argue the information collected here was "anonymous" and "routine," Def. MTD. at 22, and did not, therefore, constitute an egregious breach of social norms. *Id.* Significantly, only *one* of the nine cases Defendants cite for this proposition involves minors and COPPA violations, and that case does not support Defendants' conclusion. In *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 294-95 (3d Cir. 2016), the Third Circuit held that a jury could find that the tracking of minors through the use of cookies was highly offensive where the Viacom defendant (the owner of Nickelodeon), like the Defendants in this case, took steps to encourage parents to allow their children to browse its websites. Defendants cite this case because the Third Circuit held that the facts alleged did not support a claim against Google, where Google was not alleged to have encouraged parents to allow children to browse the Viacom websites. *Id.* In this case, the allegations against Defendants are analogous to the allegations against Viacom, where the Court held that they were sufficient to sustain a claim.

More importantly, societal norms have evolved since 2016 (when *Nickelodeon* was decided). *McDonald v. Kiloo ApS* is instructive here. In *McDonald*, parents brought a class action on behalf of their children alleging that certain gaming applications tracked their children's online behavior on a device and user-specific level, and that defendants were exploiting the data they collected "without disclosure or

consent, for profit." 385 F. Supp. 3d at 1027. Further, "the apps were covert collectors of behavioral data for delivery of targeted advertising to users, namely the kids who played the games." *Id.* at 1027-28, 1035. Finding the alleged conduct sufficiently "offensive," the court stated, "Plaintiffs state in detail what data was secretly collected, how the collection was done, and how the harvested data was used" and detailed "why these intrusions would have been highly offensive to the reasonable person on the basis of multiple sources, including reports, studies, surveys, case law and secondary legal materials. *Id.* at 1034-35.

Here, as in *McDonald*, the Complaint describes in detail the data that was surreptitiously collected, Cplt. ¶¶150-151, how it was collected, *id.,* ¶¶ 66-77, and how it was used, *id*. Further, like *McDonald*, the Complaint identifies consumer surveys reflecting societal norms with respect to the collection and commercial exploitation of the personal information of children, *id.,* ¶¶165-179, it alleges the susceptibility of children to exploitation by behavioral advertising, *id.,* ¶¶ 181-183, it documents the fact that children today begin using smartphones and tablets in their infancy, *id.,* ¶¶ 165-66, and it shows Defendants' scheme for the surreptitious tracking, profiling, and targeting of young children without disclosure or parental consent and their exploitation of manipulative behavioral advertising solely to enhance commercial exploitation. *Id.,* ¶¶ 180-190. Although Defendants try to distinguish the facts in *McDonald* by stating that "that case lacked disclosures like Google's," Def. MTD at 22, as noted above, Defendants' disclosure is both inadequate and not legally cognizable with respect to minors.

Similarly, the Court in *Balderas* upheld claims for invasion of privacy, intrusion upon seclusion, and unfair and deceptive trade practices against Defendants in a case based on many of the exact same facts alleged in the Complaint in this case. 516 F. Supp. 3d at 1302. *McDonald* and *Balderas* are directly on point and require rejection of Defendants' argument in favor of dismissal of these claims.[6]

---

[6] Defendant argues that absent some "aggravating feature[]" such as "deceit and misrepresentation," the type of information that was collected in this case is not actionable. Def. MTD. at 23. Once again, Defendants cite two cases that do not involve minors. Even if Plaintiffs were required to plead deceit or misrepresentation (which they are not), the scheme described in the Complaint is more than sufficient to state a claim.

17

**V.      Plaintiffs sufficiently state a UCL claim.**

California's Unfair Competition Law ("UCL") provides a private right of action to recover money or property lost as a result of "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200, *et seq*. The Legislature intended this "sweeping language" to include "anything that can properly be called a business practice and that at the same time is forbidden by law," providing courts with "broad equitable powers" to remedy violations. *Kwikset Corp. v. Super. Ct*., 51 Cal. 4th 310, 320, 246 P.3d 877, 883 (2011). Defendants argue that Plaintiffs have failed to sufficiently plead a UCL claim by failing to allege lost money or property, by failing to allege reliance, and by failing to allege any "unlawful," "unfair," or "fraudulent" conduct. Defendants also argue Plaintiffs have no available remedies under the UCL. Each of these arguments fails.

**A.      Plaintiffs allege economic injury.**

Defendants argue that Plaintiffs lack statutory standing under the UCL because they fail to allege that Google caused them to lose "money or property." Def. MTD at 15. In support of their argument, Defendants cite three cases that address the value of personal information in the abstract, two of which reference the general proposition that personal information is not property. *See In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) *and M.K. by & through Kirksey v. Google LLC*, No. 21-CV-08465-VKD, 2023 WL 2671381, at *5 (N.D. Cal. Mar. 27, 2023). By extension, Defendants argue that a consumer's personally identifiable information is inherently worthless to the consumer and its misappropriation cannot constitute loss of money or property and, thus, economic injury, under the UCL as a matter of law.

This Court has *rejected the same argument twice in recent cases involving Google's data tracking and retention practices. See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021); and *Brown v. Google LLC*, No. 20-CV-03664-LHK, 2021 WL 6064009, *16 (N.D. Cal. Dec. 22, 2021). As in *Calhoun* and *Brown*, Plaintiffs here allege that Google wrongly tracked, retained and exploited their personal information. Defendants do not address or attempt to distinguish either case. Instead, Defendants argue that "[a]ssuming *arguendo* that personal information had value in the abstract," Plaintiffs have failed to allege "how their personal information has *economic value to them.*" (Def. MTD at 16). However, Plaintiffs' Complaint includes an outline of Defendants' massive advertising revenue figures, as well as

allegations that that there is "a market for consumers to monetize" such information and that Plaintiffs "can no longer realize the full economic value" of their personal information because it has been collected, analyzed, acted upon, and monetized by Defendants (*See* Cplt. ¶¶ 191–192). In other words, Plaintiffs have alleged that Defendants have diminished Plaintiffs' future property interest. *See Kwikset*, 51 Cal. 4th at 323 (explaining that there are innumerable ways an economic injury can be shown, one of which being diminishment of a future property interest).

In *Brown*, the Court explained that because there is a market for consumers to monetize their personal information, it was plausible that the plaintiffs would decide to sell their data at some point. 2021 WL 6064009, at *15. By obtaining the plaintiffs' data and selling it to advertisers, Google "diminished" the plaintiffs' "future property interest." *Id.* As such, the plaintiffs had adequately alleged that they "lost money or property as a result of the unfair competition." *Id.* at *17 (citing Cal. Bus. & Prof. Code § 17204). The reasoning employed by the Court in *Brown* applies with equal force here.

## B.     To the extent Plaintiffs are required to allege reliance, they allege it.

Defendants argue that Plaintiffs' UCL claim must be dismissed for failure to allege reliance. Section 17200 is written in the disjunctive, "it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent" and, resultingly, "a practice is prohibited as unfair or deceptive even if not unlawful and vice versa." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotations and citations omitted). It follows that Plaintiffs are not required to allege reliance to withstand a motion to dismiss here, where Plaintiffs have alleged stand-alone violations of the UCL's "unlawful" and "unfair" prongs. *See, e.g., Brown*, 2021 WL 6064009, at *18 (rejecting Google's argument that reliance is required to assert a UCL claim where the claim is based on unlawful conduct) *and Kwikset*, 51 Cal. 4th at 326–27 (a UCL claim merely requires that a violation cause or result in economic injury, and reliance is the causal mechanism of fraud-based claims).

To the extent reliance is required, Plaintiffs have alleged it. For example: "The parents and guardians of Plaintiffs . . . reasonably expected that Defendants would respect children's privacy online, in accordance with their own policies and guidelines, statements, and representations," placed trust in Defendants as "reputable companies which represent that they comply with applicable laws and societal interests in safeguarding children's Personal Information," and "acted reasonably in relying on

19

Defendants' misrepresentations and omissions" because "Defendants held themselves out as complying with law and public policy regarding children's privacy rights." *See* Cplt. ¶¶ 241, 244, and 246.

### C.   Plaintiffs allege unlawful, unfair, and fraudulent conduct.

While Defendants argue that Plaintiffs have failed to allege wrongful conduct under any prong of the UCL (Def. MTD at 17), Plaintiffs sufficiently allege wrongful conduct under all three. Plaintiffs adequately plead unlawful conduct based on statutory and common law violations. *See, e.g.,* Cplt. ¶¶143–147, 153, 158, 232–233, 238. *Cf. Calhoun*, 526 F. Supp. 3d at 636, and *Brown*, 2021 WL 6064009, at *18. Plaintiffs also adequately plead unfair conduct based on Defendants' conduct in secretly and unlawfully collecting and monetizing the personal information of minor children. *See, e.g.*, Cplt. ¶¶ 143–147, 153, 158, 232–233, 239–240. *See also Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35, 61 Cal. Rptr. 3d 221, 236 (2007) (whether a practice is unfair is "generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made [at the pleading stage].").

Finally, Plaintiffs adequately plead fraudulent conduct based on Defendants' policies, guidelines, statements, and representations regarding the Android App games, the DFF program, and the Family section of the Google Play Store, which: (1) assured consumers that the games were designed, suitable, and appropriate for children, as well as compliant with applicable laws; (2) were material to reasonable consumers; (3) were intended to, were likely to, and did deceive reasonable consumers such as Plaintiffs; and (4) caused injury to consumers. *See, e.g.*, Cplt. ¶¶ 241–246. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *26 (N.D. Cal. Aug. 30, 2017) (finding that a reasonable consumer could rely on defendants' misrepresentation that defendants use safeguards that complied with federal regulations to protect users' personal information).

### D.   Plaintiffs allege entitlement to restitution.

Defendants argue that Plaintiffs have no available remedies under the UCL insofar as restitution is unavailable to a plaintiff who has suffered no economic injury. Def. MTD at 18. In *Calhoun* and *Brown*, this Court rejected Google's argument that the plaintiffs were not entitled to restitution. *See Calhoun*, 526 F. Supp. 3d at 636–37; *Brown*, 2021 WL 6064009, at *18. Here, the Court should reject Defendants' same argument. Plaintiffs have adequately alleged entitlement to restitution for Defendants' unlawful collection

of their personal data. As in *Brown*, Plaintiffs have alleged that Defendants' conduct caused a diminution of the value of Plaintiffs' private and personally identifiable information. *See Brown*, 2021 WL 6064009, at *18. If Plaintiffs can quantify this diminution of value, Plaintiffs are entitled to restitution. *Id.*

## VI. Plaintiffs sufficiently state consumer protection claims under Florida and New York law.

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.* and New York General Business Law § 349 ("GBL § 349") were enacted to protect consumers from conduct such as that at issue here: unfair and/or deceptive acts or practices in the conduct of business, trade, or commerce. Fla. Stat. § 501.204(1); N.Y. Gen. Bus. Law § 349. Defendants move to dismiss Plaintiffs' claims under these statutes on three primary bases: *first*, that Plaintiffs' claims are precluded by Google's terms of service ("TOS"), which includes a California choice-of-law provision; *second,* that Plaintiffs fail to plead their claims with requisite particularity; and *third,* that Plaintiffs fail to plead a sufficient nexus to either Florida or New York. *See* Def. MTD at 18-20. Each of these arguments fails.

### A. Plaintiffs' claims under FDUTPA and GBL § 349 are not precluded by the choice-of-law in Google's TOS.

Defendants assert that courts "routinely enforce" choice-of-law provisions, such as the one in Google's TOS here, to "dismiss state consumer protection claims under other states' laws." Def. MTD at 18-19. Assuming that consent to Google's TOS formed a contract, which Plaintiffs' dispute, this argument fails for the simple reason that Plaintiffs, all children under the age of 13, are permitted to void a contract at any time before the age of majority. *See* N.Y. Gen. Oblig. Law § 3-101 (McKinney), *Scott Eden Mgmt. v. Kavovit,* 149 Misc. 2d 262, 264, 563 N.Y.S.2d 1001 (Sup. Ct. 1990) ("[a]n infant's contract is voidable and the infant has an absolute right to disaffirm"); *Putnal v. Walker,* 61 Fla. 720, 722–23, 55 So. 844, 845 (1911) ("[t]he right of an infant to avoid his contract is one conferred by law for his protection against his own improvidence and the designs of others; and, though its exercise is not infrequently the occasion of injury to others who have in good faith dealt with him, this is a consequence which they might have avoided by declining to enter into the contract.").

### B. Plaintiffs' claims sufficiently plead fraud.

Defendants next claim that Plaintiffs' claims sound in fraud but are not pled with the requisite particularity. *See* Def. MTD at 19. As an initial matter, "[c]ourts in Florida are split on whether Rule 9(b)

applies to FDUTPA claims," *In re Nat'l Prescription Opiate Litig.*, 452 F. Supp. 3d 745, 776 (N.D. Ohio 2020), with numerous courts having found that it does not. *See Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009); *Epoch Int'l Partners, LLP v. Bigfoot Inc.*, 587 F. Supp. 3d 1214, 1219 (S.D. Fla. 2022). So too are the courts of New York, with many finding that "an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b)" and "need only meet the bare-bones notice-pleading requirements of Rule 8(a)." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 481 (S.D.N.Y. 2014).

Even assuming that a heightened pleading is required, Plaintiffs have met their burden. Defendants offer only a single example of Plaintiffs' purported pleading failure—that Plaintiffs do not sufficiently allege "causation" because they "fail to allege 'which statements they viewed.'" Def. MTD at 19. "Both the FDUTPA and section[] 349 … of the GBL require that a plaintiff prove that an objective, reasonable person would likely have been deceived by the misrepresentations." *Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 258 (E.D.N.Y. 2019). Plaintiffs identify statements Defendants made about the suitability and safety of apps in the DFF program in their promotional and marketing materials, on their websites, in their privacy policies, and on their App interfaces. *See* Cplt ¶¶ 289, 324.[7]

Plaintiffs also allege material omissions. FDUTPA recognizes an actionable omission where it is "likely to mislead the consumer acting reasonably under the circumstances to the consumer detriment." *Phillips v. Hobby Lobby Stores, Inc.*, No. 2:16-CV-00837-JEO, 2019 WL 8348613, at *5 (N.D. Ala. Dec. 16, 2019). Under GBL § 349, "[a]n omission can be 'actionable where it is shown that 'a consumer could not reasonably obtain' the omitted information," and is typically a "question of fact not suited for resolution at the motion to dismiss stage." *DeCoursey v. Murad, LLC*, No. 3:22-CV-353 (AMN/ML), 2023 WL 3478459, at *15 (N.D.N.Y. May 16, 2023). Here, Plaintiffs describe Defendants' material

---

[7] Among other things, these misrepresentations included that the "DFF program had a 'strict legal and policy bar,' requiring that Apps displaying ads 'comply with all legal obligations relating to advertising to children,' 'Ads displayed to child audiences do not involve interest-based advertising,' Apps submitted to the DFF program were 'compliant with COPPA and other relevant statutes,' and that 'Ads displayed to child audiences must comply with laws relating to advertising to kids,' and the App 'must disable interest-based advertising.'" *See* Cplt. ¶¶ 289, 324.

omissions, which Plaintiffs could not have "viewed" or "reasonably obtained" including, among other things, Defendants' failure to provide sufficient notice about the type of information collected online from children under the age of 13 and how such information was used. *See* Cplt. ¶¶ 296, 299, 329, 332. These omissions caused Plaintiffs' injuries. *See id.* ¶¶ 303-308, 336-41. For these reasons, causation is sufficiently well pled.

### C.  Plaintiffs have alleged a sufficient nexus to both Florida and New York.

In a final challenge to FDUTPA and GBL § 349, Defendants claim "Plaintiffs have not pleaded a sufficient nexus to either Florida or New York" because "Plaintiffs have not pled that the conduct occurred within Florida or New York." Def. MTD at 20.  The cases cited by Defendants involved claims that failed to allege a connection between the conduct and the relevant state. *See, e.g., In re GE/CBPS Data Breach Litig.,* No. 20 CIV. 2903 (KPF), 2021 WL 3406374, at *13 (S.D.N.Y. Aug. 4, 2021) (in data breach case, court noted conduct could have occurred in New York, where defendants were citizens, or at their headquarters in Massachusetts, or "any number of locations" where Defendants maintained their servers, but it was unclear from pleading). In contrast, Plaintiffs here allege they are residents of New York and Florida who used the Apps in those states, and that Defendants offered, sold, or distributed the Apps and other goods or services in those states, thereby engaging "in trade or commerce directly or indirectly affecting the people of" Florida and New York . *See* Cplt. ¶¶ 285-86l (Florida)*;* ¶¶ 318-19 (New York). That Plaintiffs downloaded the Apps, viewed Defendants' misrepresentations, and/or used the Apps within their respective states establishes a sufficient nexus. *See, e.g., In re Pork Antitrust Litig.,* 495 F. Supp. 3d 753, 788 (D. Minn. 2020) (sufficient that "Plaintiffs have alleged purchases within Florida"); *In re Flonase Antitrust Litig.,* 692 F. Supp. 2d 524, 538 (E.D. Pa. 2010) (FDUTPA does not even require "that the alleged injuries took place *entirely* within the state" so long as "some injury" took place there).

## VII.  Plaintiffs state unjust enrichment claims under California, New York, and Florida law.

Defendants move to dismiss Plaintiffs' unjust enrichment claims under California, New York, and Florida law, which each require proof of similar elements. Defendants first challenge is to Plaintiffs' California claim only, arguing it should be dismissed because "[t]here is no cause of action in California labeled 'unjust enrichment.'" *See* MTD at 24. As Defendants admit in a footnote, however, the law has been "divided on this issue." *Id.* at n. 14. In fact, Google is well aware that California recognizes an unjust

enrichment cause of action, having lost this argument prior. *See Imber-Gluck v. Google, Inc.,* No. 5:14-CV-01070-RMW, 2014 WL 3600506, at *8 (N.D. Cal. July 21, 2014). *See also LeGrand v. Abbott Lab'ys,* No. 22-CV-05815-TSH, 2023 WL 1819159, at *14 (N.D. Cal. Feb. 8, 2023) (independent cause of action for unjust enrichment in consumer class action).  Defendants challenge to the unjust enrichment claim based on Google's TOS and its Privacy Policy (Def. MTD at 24), fail as a matter of law given that, to the extent Plaintiffs could be said to have agreed to the terms of these documents, they have repudiated these contracts.

Defendants next challenge Plaintiffs' claim under New York law, asserting it fails because "it 'simply duplicates, or replaces, a conventional contract or tort claim.'" Def. MTD at 24, n. 15. New York law is not so limiting. For example, in *Schneider v. Colgate-Palmolive Co.,* No. 5:22-CV-1294, 2023 WL 4009099, at *9 (N.D.N.Y. June 15, 2023), even though the plaintiffs' unjust enrichment claim arose out of the same factual allegations as their claims under GBL § 349, the court agreed the unjust enrichment claim was not duplicative because the elements of unjust enrichment are distinct from the other claims, *e.g.,* "a claim for violating Section 349 requires proof that a defendant's acts are directed towards consumers, while a claim for unjust enrichment does not." Similarly, here, the elements of Plaintiffs' consumer protection claims are distinct.

Finally, Defendants challenge all three unjust enrichment claims on the basis that "[e]ven if an unjust-enrichment claim could proceed as a quasi-contract claim," the claims cannot stand "because valid contracts—Google's TOS and Privacy Policy—govern this dispute." Def. MTD at 24. This argument fails for two reasons.  First, Plaintiffs do not claim that Defendants breached a contract.  To the contrary, notice and consent are vigorously disputed in this case. [8]  Second, alternative pleading is permitted at this stage. *See* Fed. R. Civ. P. 8(d); *see also Marty v. Anheuser-Busch Companies, LLC,* 43 F. Supp. 3d 1333, 1350 (S.D. Fla. 2014) (collecting cases and noting that unjust enrichment may be pleaded in the alternative under California, Florida, and New York law). Defendants also argue that "Plaintiffs have not plausibly

---

[8] *Cf. Quintanilla v. WW Int'l, Inc.,* 541 F. Supp. 3d 331, 353–54 (S.D.N.Y. 2021) (noting that although unjust enrichment claims "may be plead in the alternative where the plaintiff challenges the validity of the contract; [they] may not be plead in the alternative alongside a claim that the defendant breached an enforceable contract").

pleaded an actionable wrong' in the form of a 'misrepresentation" because "[t]here is simply nothing 'unjust' about Google's operation of DFF to provide younger users, including children, with age-appropriate experiences." Def. MTD at 24. This is the crux of the Complaint and it is simply not Defendants' determination to make at this or any other stage of the litigation.

**VIII.   Plaintiffs have standing to seek prospective injunctive relief.**

Plaintiffs have requested that the information that Defendants unlawfully collected from children under the age of 13 be permanently deleted, destroyed, or otherwise sequestered. Defendants argue that since the data was collected in the past, and Google has "remedied the alleged gaps in the relevant policy," Def. MTD at 10, Plaintiffs lack standing to request injunctive relief. This argument should be rejected.

The injunctive relief requested here includes request for an order requiring Defendants to "permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal Information by Defendants, App developers and any other third parties, and other appropriate injunctive relief" *See, e.g.* Cplt. ¶¶ 253, 263, 283, 308, 341. The NM AG settlement did *not* provide for this relief, which Plaintiffs believe is fundamental to the privacy protections at stake. Defendants' contention that remedying the "alleged gaps in the relevant policy" deprives Plaintiffs' of standing to seek this relief is erroneous.

Plaintiffs, who are still minors, are under threat of ongoing surveillance and undue influence from Defendants because of the information in Defendants' possession. Moreover, to the extent Defendants are earning profits by exploiting this information, those profits are unjustly earned.

**CONCLUSION**

For the foregoing reasons, Defendants Motion to Dismiss the Complaint should be denied in its entirety.

Dated: November 22, 2023                    Respectfully submitted,

                                            /s/ Patrick Carey
                                            Mark Todzo, (Bar No. 168389)
                                            Patrick Carey, (Bar No. 308623)
                                            **LEXINGTON LAW GROUP**
                                            503 Divisadero Street
                                            San Francisco, CA 94117
                                            Telephone: 415-913-7800
                                            pcarey@lexlawgroup.com
                                            mtodzo@lexlawgroup.com

                                            David S. Golub
                                            Steven L. Bloch
                                            Ian W. Sloss
                                            Jennifer Sclar
                                            Johnathan Seredynski
                                            **SILVER GOLUB & TEITELL LLP**
                                            One Landmark Square, Floor 15
                                            Stamford, Connecticut 06901
                                            Telephone: (203) 325-4491
                                            Fax: (203) 325-3769
                                            dgolub@sgtlaw.com
                                            sbloch@sgtlaw.com
                                            isloss@sgtlaw.com
                                            jsclar@sgtlaw.com
                                            jseredynski@sgtlaw.com