Patrick Carey (Bar No. 30862)
Mark Todzo (Bar No. 168389)
LEXINGTON LAW GROUP
503 Divisadero Street
San Francisco, California 94105
Telephone: (415) 913-7800
pcarey@lexlawgroup.com
mtodzo@lexlawgroup.com

David S. Golub (pro hac vice forthcoming)
Steven L. Bloch (pro hac vice)
Ian W. Sloss (pro hac vice)
Jennifer Sclar (pro hac vice)
Johnathan Seredynski (pro hac vice)
SILVER GOLUB & TEITELL LLP
One Landmark Square, 15th Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491
isloss@sgtlaw.com
sbloch@sgtlaw.com
jsclar@sgtlaw.com
jseredynski@sgtlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTHERN CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| A.B., a minor, by and through his guardian JEN TURNER, C.D.1, C.D.2, and C.D.3 minors, by and through their guardian KIRENDA JOHNSON, E.F.1, and E.F.2, by and through their guardian BARABRA HAYDEN-SEAMAN, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> GOOGLE LLC, ADMOB GOOGLE INC., and ADMOB, INC., <br><br> *Defendants.* | Civil Case No.: 5:23-cv-03101-PCP <br><br> **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS** <br><br> Judge: Hon. P. Casey Pitts <br> Courtroom: Courtroom 8 – 4th Floor <br> Hearing Date: February 19, 2026 <br> Hearing Time: 10:00 a.m. |

1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...............................................................................................iii

NORTHERN DISTRICT OF CALIFORNIA PROCEDURAL GUIDANCE FOR CLASS ACTION

SETTLEMENTS: REFERENCE TABLE......................................................................viii

NOTICE OF MOTION AND MOTION ................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED .................................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 2

I.      INTRODUCTION ...................................................................................................... 2

II.     BACKGROUND ........................................................................................................ 3

    A.    Case History and Allegations............................................................................. 3

    B.    Mediation ........................................................................................................... 5

III.    SETTLEMENT TERMS ............................................................................................ 5

    A.    Benefits to Settlement Class Members ............................................................. 5

    B.    The Settlement Class is the Same as Defined in the Complaint ....................... 6

    C.    The Estimated Settlement Class Size ................................................................ 6

    D.    The Settlement Allows Plaintiffs' Counsel to Seek Fees and Costs and the Plaintiffs'

          Guardians to Seek Service Awards.................................................................... 7

    E.    The Settlement's Release Is Coextensive with the Ninth Circuit's "Identical Factual

          Predicate" Requirement and Will Not Affect Any Other Cases........................ 8

IV.     ARGUMENT .............................................................................................................. 9

    A.    The Settlement Merits Preliminary Approval ................................................... 9

        1.    The Settlement Resulted from Informed, Arm's-Length Negotiations ..................... 9

        2.    The Settlement Treats Settlement Class Members Fairly and Equally..................... 10

        3.    The Settlement Falls Within the Range of Possible Approval .................................. 11

        4.    Experienced Counsel Recommend Approval ........................................................... 15

B.  The Court Should Certify the Settlement Class ................................................. 15

  1.  The Settlement Class Satisfies Rule 23(a) ................................................. 15

    a.  *Numerosity* ................................................. 15

    b.  *Commonality* ................................................. 16

    c.  *Typicality* ................................................. 17

    d.  *Adequacy* ................................................. 18

  2.  The Settlement Class Satisfies Rule 23(b)(3) ................................................. 19

    a.  *Common issues of law and fact predominate* ................................................. 19

    b.  *Settlement class treatment is superior* ................................................. 21

C.  Plaintiffs Should Be Appointed as Settlement Class Representatives and Plaintiffs' Counsel Should Be Appointed as Settlement Class Counsel ................................................. 21

D.  The Proposed Notice Program, Settlement Administrator, and Process for Opt-Outs and Objections Should Be Approved ................................................. 22

  1.  Proposed Notice to the Class ................................................. 22

  2.  The Settlement Administrator and Claims Rate ................................................. 23

  3.  Opt-Outs and Objections ................................................. 24

E.  The Proposed Final Approval Hearing Schedule ................................................. 24

V.  CONCLUSION ................................................. 25

# TABLE OF AUTHORITIES

**PAGE(S)**

<u>Cases</u>

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................. 15

*Bellinghausen v. Tractor Supply Co.*,
  2014 WL 1289342 (N.D. Cal. Mar. 20, 2015) ...................................................... 15

*Campbell v. Facebook Inc.*,
  2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) ...................................................... 12

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ................................................................................. 9

*Cottle v. Plaid Inc.*,
  340 F.R.D. 356 (N.D. Cal. 2021) ................................................................ 9, 13, 21

*Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................... 15

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ................................................................................. 16

*Fitzhenry-Russell v. Coca-Cola Co.*,
  2019 WL 11557486 (N.D. Cal. Oct. 3, 2019) ...................................................... 20

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .......................................................... 17, 18, 19, 21

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ................................................................................. 18

*Harris v. Vector Mktg. Corp.*,
  2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ...................................................... 10

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) ................................................................................... 9

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
  2019 WL 4295285 (C.D. Cal. Sep. 9, 2019) ........................................................ 13

*In re 23andMe, Inc. Customer Data Sec. Breach Litig.*,
  2024 WL 4982986 (N.D. Cal. Dec. 4, 2024) ........................................................ 20

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) ................................................................ 9, 13, 16

*In re Anthem, Inc. Data Breach Litig.*,
   No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ................................... 7

*In re Apple Inc. Device Performance Litig.*,
   50 F.4th 769 (9th Cir. 2022) ................................................................................................ 9

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ............................................................................................... 8

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
   No. 3:18-MD-02843-VC, 2023 WL 8445812 (N.D. Cal. Oct. 10, 2023) ............................. 8

*In re Google LLC St. View Elec. Commc'ns Litig.*,
   611 F. Supp. 3d 872 (N.D. Cal. 2020) ............................................................................... 12

*In re Hyundai and Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ............................................................................................. 21

*In re Linkedin User Priv. Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ....................................................................... 8, 9, 11, 15

*In Re Live Concert Antitrust Litig.*,
   247 F.R.D. 98 (C.D. Cal. 2007) ........................................................................................ 19

*In re Mex. Money Transfer Litig.*,
   267 F.3d 743 (7th Cir. 2001) ............................................................................................. 20

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ....................................................................................... 15

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) .......................................................................... 9, 11

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   2020 WL 4212811 (N.D. Cal. July 22, 2020) ................................................................... 18

*Kumar v. Salov N. Am. Corp.*,
   2017 WL 2902898 (N.D. Cal. July 7, 2017) ..................................................................... 20

*Linney v. Cellular Alaska P'ship*,
   1997 WL 450064 (N.D. Cal. July 18, 1997) ..................................................................... 10

*Lundell v. Dell, Inc.*,
   2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ..................................................................... 20

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ............................................................................................. 16

*Mendez v. C-Two Grp., Inc.*,
  2017 WL 1133371 (N.D. Cal. Mar. 27, 2017) ............................................. 10, 11

*N.M. ex rel. Balderas v. Tiny Lab,*
  *Prods.*, 516 F.Supp.3d 1293 (D.N.M. 2021) ................................................ 4

*Nen Thio v. Genji, LLC*,
  14 F. Supp. 3d 1324 (N.D. Cal. 2014) ....................................................... 10

*Nevarez v. Forty Niners Football Co., LLC*,
  326 F.R.D. 562 (N.D. Cal. 2018) .............................................................. 15

*Nicodemus v. Saint Francis Mem'l Hosp.*,
  3 Cal. App. 5th 1200 (2016) ..................................................................... 11

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ............................................................... 16, 17

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) ................................................................... 17

*Rollins v. Dignity Health*,
  336 F.R.D. 456 (N.D. Cal. 2020) ................................................................ 9

*Satchell v. Fed. Express Corp.*,
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................................... 10

*Schuchard v. Law Off. of Rory W. Clark*,
  2016 WL 232435 (N.D. Cal. Jan. 20, 2016) .............................................. 11

*Smith v. Cardinal Logistics Mgmt. Corp.*,
  2008 WL 4156364 (N.D. Cal. Sep. 5, 2008) ............................................. 21

*Smith v. Keurig Green Mountain, Inc.*,
  2022 WL 2644105 (N.D. Cal. July 8, 2022) .............................................. 20

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ..................................................................... 18

*T.K. Through Leshore v. Bytedance Tech. Co.*,
  2022 WL 888943 (N.D. Ill. Mar. 25, 2022) .............................................. 20

*Tanner v. Plavan Com. Fueling, Inc.*,
  2025 WL 2231304 (S.D. Cal. Aug. 4, 2025) ............................................... 8

*Theodore Broomfield v. Craft Brew All., Inc.*,
  2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ............................................. 20

*Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ................................................................................. 17

*Trosper v. Stryker Corp.*,
  2014 WL 4145448 (N.D. Cal. Aug. 21, 2014) ........................................................ 18

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ................................................................................................ 19

*Uschold v. NSMG Shared Servs., LLC*,
  333 F.R.D. 157 (N.D. Cal. 2019) ......................................................................... 9, 10

*Valliere v. Tesoro Refin. & Mktg. Co. LLC*,
  2020 WL 13505042 (N.D. Cal. June 26, 2020) ...................................................... 18

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................................ 16, 17

*Williams v. Boeing Co.*,
  517 F.3d 1120 (9th Cir. 2008) ................................................................................... 9

*Wolf v. Permanente Medical Group, Inc.*,
  2018 WL 5619801 (N.D. Cal. Sept. 14, 2018) ......................................................... 8

Statutes and other authorities

15 U.S.C. § 6501 ............................................................................................................... 2

15 U.S.C. § 6502(a) ........................................................................................................ 13

Fed. R. Civ. P. 23 ...................................................................................................... 1, 3, 22

Fed. R. Civ. P. 23(a) ..................................................................................... 15, 16, 17, 18

Fed. R. Civ. P. 23(b) ..................................................................................... 15, 19, 20, 21

Fed. R. Civ. P. 23(e) ......................................................................................................... 9

Fed. R. Civ. P. 23(g) ....................................................................................................... 22

16 C.F.R. § 312.2 ............................................................................................................ 13

7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §
  1778 (3d ed. 2005) ................................................................................................. 19

*Class Certification in the Age of Aggregate Proof*,
  84 N.Y.U. L. Rev. 97 (2009) .................................................................................... 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*The Preexistence Principle and the Structure of the Class Action*,
103 Colum. L. Rev. 149 (2003) ........................................................................................... 16

**NORTHERN DISTRICT OF CALIFORNIA PROCEDURAL GUIDANCE FOR CLASS ACTION SETTLEMENTS: REFERENCE TABLE**

| Guidance Section | Guidance Topic | Page(s) Where Guidance is Discussed |
|---|---|---|
| 1(a) | Differences between settlement class and class in complaint | 6 |
| 1(b) | Differences between released claims and claims in complaint | 8–9 |
| 1(c) | Recovery under settlement | 5, 11–14 |
| 1(d) | Other cases, if any, affected by settlement | 9 |
| 1(e) | Proposed allocation plan | 5 |
| 1(f) | Claims rate | 13 |
| 1(g) | Reversion, if any | 3, 5 |
| 2(a) | Settlement administrator | 23–24 |
| 2(b) | Class member data; costs of administration | 23–24 |
| 3 | Notice | 22–23 |
| 4 | Opt-outs | 24 |
| 5 | Objections | 24 |
| 6 | Fees and costs | 7-8 |
| 7 | Service award | 8 |
| 8 | *Cy pres* | 8, n.2 |
| 9 | Timeline | 24–25 |
| 10 | CAFA notice | 23 |
| 11 | Comparable outcomes | 11–12 |

1

**<u>NOTICE OF MOTION AND MOTION</u>**

2

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

3   PLEASE TAKE NOTICE that, on February 19, 2026 at 10:00 am PST, in Courtroom 8, 4th

4 Floor, of this Court, located at 280 South 1st Street, San Jose, CA 95113, Plaintiffs A.B., by and

5 through his guardian Jen Turner, C.D.1, C.D.2, and C.D.3, by and through their guardian Kirenda

6 Johnson, E.F.1, and E.F.2, by and through their guardian Barbara Hayden-Seaman ("Plaintiffs"),

7 will and hereby do respectfully move the Court for entry of an Order, pursuant to Federal Rule of

8 Civil Procedure 23 ( "Rule 23") and the Northern District of California's Procedural Guidance for

9 Class Action Settlements ("N.D. Proc. Guidance"), in the above-captioned action (the "Action"):

10 (1) certifying this Action as a class action for settlement purposes; (2) appointing Plaintiffs (through

11 their guardians ad litem) as representatives for the proposed Settlement Class; (3) appointing Silver

12 Golub & Teitell LLP and Lexington Law Group as Settlement Class Counsel for the proposed

13 Settlement Class; (4) granting preliminary approval of a settlement in the amount of eight million

14 two hundred and fifty thousand dollars ($8,250,000) to resolve the Action (the "Settlement"); (5)

15 approving the form and substance of the proposed Notice of Proposed Settlement of Class Action

16 ("Settlement Class Notice"), the Claim Form ("Claim Form"), the manner and timing of

17 disseminating notice to the Settlement Class (the "Notice Plan"), and the selection of Kroll as

18 Settlement Administrator; (6) setting deadlines for Settlement Class Members to exercise their

19 rights in connection with the proposed Settlement; and (7) scheduling a hearing date for final

20 approval of the Settlement and Plan of Allocation and forthcoming application for attorneys' fees

21 and expenses and request for service awards ("Settlement Hearing").

22   Plaintiffs' Motion is based on this Notice, the accompanying Memorandum of Points and

23 Authorities, the Settlement Agreement ("SA"), the Declaration of Ian W. Sloss in Support of

24 Plaintiffs' Motion ("Sloss Decl.") and all exhibits thereto, any reply memorandum Plaintiffs may

25 file, the orders, pleadings and files in this Action, and such other matters as may be presented at or

26 before the hearing.[1]

27 _____

28 [1] Capitalized terms shall have the same meaning as set forth in the Class Action Settlement
Agreement and Release dated January 13, 2026 (the "Settlement Agreement"). Sloss Decl., Ex. 1.

**STATEMENT OF ISSUES TO BE DECIDED**

The issues to be decided on this Motion are:

1.      Whether the proposed Settlement on the terms and conditions set forth in the Settlement Agreement warrants preliminary approval;

2.      Whether to certify this Action as a class action for settlement purposes;

3.      Whether to appoint Plaintiffs (through their guardians *ad litem*) as Settlement Class Representatives;

4.      Whether to appoint Silver Golub & Teitell LLP and Lexington Law Group as Settlement Class Counsel;

5.      Whether to approve the form and substance of the proposed Settlement Class Notice and Claim Form, as well as the Notice Plan, including the selection of Kroll as Settlement Administrator;

6.      Whether to set deadlines for Settlement Class Members to exercise their rights in connection with the proposed Settlement; and

7.      Whether to schedule a Settlement Hearing to determine whether the Settlement, Plan of Allocation, and forthcoming application for attorneys' fees and expenses and request for service awards should be finally approved.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

The Children's Online Privacy Protection Act, ("COPPA"), 15 U.S.C. § 6501, *et seq.* prohibits any operator of a commercial website or online service directed to children under 13 years of age from collecting specified online personal identifying information from such children without first obtaining verified parental consent. Plaintiffs commenced this action on June 22, 2023, alleging that Defendants Google LLC and AdMob Google, Inc. (together, "Google" or "Defendants") collected the personal information and tracked millions of children under the age of 13 without parental consent in violation of COPPA.

After over two years of litigation, Plaintiffs and Defendants reached a mediated settlement of this litigation on a nationwide basis under which Defendants will pay $8,250,000 to fully resolve,

without any admission of liability or wrongdoing by Defendants, the claims asserted against them in the litigation. The $8,250,000 cash payment by Defendants is non-reversionary and will provide meaningful compensation to Settlement Class Members who choose to participate in the Settlement.

Pursuant to Rule 23 and the Northern District Procedural Guidance for Class Action Settlements, Plaintiffs now seek (i) preliminary approval of the Settlement, (ii) certification of the Settlement Class for settlement purposes, (iii) appointment of Plaintiffs (through their guardians *ad litem*) as Settlement Class Representatives, (iv) appointment of Silver Golub & Teitell LLP and Lexington Law Group as Settlement Class Counsel, (v) approval of the form and substance of the Settlement Class Notice, Summary Notice, Claim Form, and Notice Plan, (vi) approval of Kroll as Settlement Administrator, and (viii) a schedule for Settlement Class Members to exercise their rights in connection with the proposed Settlement and for final approval of the Settlement, the Plan of Allocation, and plaintiffs' counsel's application for attorneys' fees and expenses.

For the reasons below and in the accompanying Declaration of Ian W. Sloss, Plaintiffs' Motion should be granted in all respects.

## II.    BACKGROUND

### A.  Case History and Allegations

In 2015, Google launched the "Designed for Families" ("DFF") program on the Google Play Store. ECF No. 1 ("Compl.") ¶ 11. Google marketed the DFF program as a way parents and children could find age-appropriate content on the Google Play Store. *Id.* ¶¶ 11, 93, 104. As of March 2018, Google had reviewed and accepted over 5,855 child-directed apps into the DFF program. *Id.,* ¶ 123. These DFF Apps were downloaded 4.5 billion times. *Id.* Like nearly all apps in the Google Play Store (3.6 million out of 3.8 million), most of the DFF Apps were offered for free, but showed users advertisements. *Id.* ¶¶ 60-63, 125.

The AdMob software development kit, or "SDK," provides Android App developers with code to include in their Android Apps which (1) enables Google to collect data, including persistent identifiers, from the Android App users; and (2) shows advertisements to Android App users while they are using those Apps based on the persistent identifiers collected. *Id.* ¶ 5. Google wrote the AdMob SDK and provided it to app developers to embed in their DFF Apps. *Id.* ¶¶ 7-8, 74. If

1    embedded in a DFF App by the app developer, the AdMob SDK can send AdMob the personal

2    information of a user of the DFF App and show that user advertisements. *Id.* ¶¶ 5, 66, 71, 74. The

3    New Mexico Attorney General's Office ("NM AG") alleged that their forensic testing revealed that

4    the AdMob SDK collects personal data, including a device's location. *Id.* ¶ 21.

5        In September 2018, the NM AG sued Defendants and several tracking technology

6    companies over the exact conduct at issue here on behalf of New Mexico residents. *N.M. ex rel.*

7    *Balderas v. Tiny Lab Prods.,* Case No. 1:18-cv-00854, District of New Mexico ("NM Action"),

8    ECF No. 1. The NM AG alleged that the use of the AdMob SDK by DFF Apps violated COPPA,

9    the New Mexico unfair trade practices act, and the common law invasion privacy tort intrusion

10   upon seclusion. *Id.* ¶¶ 1-10, 207-51. After United States District Judge Martha Vasquez granted in

11   part and denied in part Google and AdMob's motion to dismiss, *N.M. ex rel. Balderas v. Tiny Lab*

12   *Prods.,* 516 F.Supp.3d 1293 (D.N.M. 2021), Google and AdMob settled with the NM AG on

13   December 10, 2021, agreeing to pay $5 million and to amend their practices to comply with

14   COPPA. NM Action, ECF No. 149; Compl. ¶ 157. As one aspect of Defendants' settlement with the

15   NM AG in 2021, Defendants agreed that AdMob "will begin to treat the app and date previously

16   collected therefrom in a manner consistent with COPPA." *Id.* ¶ 136.

17       Plaintiffs filed this action on June 22, 2023, seeking redress on behalf of all children under

18   13 who used DFF Apps and may have had their personal information collected by Defendants

19   without parental consent. *Id.* ¶¶ 1-24. Each Plaintiff (or a family member or an acquaintance)

20   downloaded and used DFF Apps, meaning their personal information may have been collected by

21   Defendants for purposes of tracking and profiling them and targeting them with personalized

22   behavior-based advertising. *Id.* ¶¶ 193-210. Plaintiffs' Complaint asserts claims under the consumer

23   protection laws of California, New York and Florida, for unjust enrichment under the laws of those

24   states, and common law and California Constitutional privacy violations. *Id.* ¶¶ 231-350.

25       On September 14, 2023, Defendants moved to dismiss the Complaint (ECF No. 27), which

26   Plaintiffs opposed (ECF No. 33).  The Court denied Defendants' motion to dismiss in its entirety on

27   June 18, 2024. ECF No. 43.

28

### B.  Mediation

On September 26, 2024, the Court ordered the parties to file a stipulation selecting an ADR process or a notice for need of ADR conference by October 24, 2024. *See* ECF No. 56. The parties conferred regarding mediation, including exchanging lists of mediators and potential dates for a mediation to take place. Sloss Decl. ¶ 10. After careful consideration, the parties selected the Hon. Jan M. Adler (Ret.) of Judicate West for a mediation to take place in early 2025. *See* ECF No. 59; Sloss Decl. ¶ 11. Mediation was scheduled for February 21, 2025. *Id.* ¶ 12. The parties exchanged confidential mediation statements a week prior on February 14, 2025. *Id.* Due to the significant differences in each party's position, the mediation was cancelled to continue with discovery and attempt to narrow the gap between the parties' respective positions. *Id.* Mediation was re-scheduled for August 29, 2025, with the parties exchanging new mediation statements based on the intervening discovery and investigation. *Id.* ¶ 13.

On September 10, 2025, the parties informed the Court that they had reached a settlement in principle. *See* ECF No. 76. Since then, the parties have been working diligently to document the Settlement with a formal Settlement Agreement, and discussing other aspects of the Settlement, such as the Notice Plan, the form and content of notices and the Claim Form, and the selection of the Settlement Administrator and Escrow Agent. *See* Sloss Decl. ¶ 15. The Settlement Agreement was finalized and executed by the parties on December X, 2025. *Id.* ¶ 16.

### III.  SETTLEMENT TERMS

### A.  Benefits to Settlement Class Members

The Settlement provides for Google to make a $8,250,000 non-reversionary cash payment to create the Settlement Fund. All costs of notice and administration, attorneys' fees and costs awarded to plaintiffs' counsel, and any service awards to the Settlement Class Representatives will be paid from the Settlement Fund, and the balance will then be distributed on a *pro rata* basis to all Settlement Class Members who file valid and timely claims. *See* Sloss Decl., Ex. 1 ("SA") ¶¶ 4.1, 4.7–4.11.[2]

---

[2] In the event that "the Settlement Administrator determines that the cost of fairly distributing any remaining balance in a second distribution exceeds the balance available to be distributed, the

**B.  The Settlement Class is the Same as Defined in the Complaint**

The Settlement Agreement defines the Settlement Class as "all Persons residing in the United States who, at any time during the Settlement Class Period, were younger than 13 years old when they downloaded or otherwise used an application from Google Play and from whom Defendants allegedly collected, used, or disclosed any personal information." *See* SA ¶ 2.39.

The definition is substantially the same as the nationwide class definition in the Complaint, which is "all persons residing in the United States who were younger than the age of 13 when they used the Android Apps, and from whom Defendants collected, used, or disclosed Personal Information without first obtaining verified parental consent during the applicable statute of limitations period." *See* Compl. ¶ 218.[3]  The Settlement Agreement defines the Settlement Class Period as April 1, 2015 to the present, *see* SA ¶ 2.42, which is consistent with the class period that has been alleged throughout this litigation. *See* Compl. ¶¶ 11, 94 n.20; ECF No. 33 at 2, 5–6.

**C.  The Estimated Settlement Class Size**

The Settlement Class covers all under-13 users who accessed the apps from Google Play and allegedly had their information collected, used, or disclosed. Because children often accessed the apps on the Google Play Store via their parents' (or another third party's) Google accounts, it is not possible to determine the precise number of class members. Plaintiffs are, however, able to make a reasonable estimate of the Settlement Class size using government census data for the U.S. population under 13 years of age, data reporting on the mobile device market share of Google's Android devices, and certain industry guidance and information produced in discovery.

According to the latest U.S. census data (excluding New Mexico, which was the subject of the prior litigation), there are 49.6 million children in the United States under the age of 13.

---

remaining balance will, subject to Court approval, be paid to the Residual Cy Pres Recipient as a Residual Settlement Payment." *See* SA ¶¶ 2.35-2.36, 4.11; N.D. Proc. Guidance ¶ 8.

[3] The Complaint states that Google "designed, developed, maintains, and markets a digital software marketplace and distribution hub application on Android called the Google Play Store, which enables Android Device users to download software, or applications ('Apps or Android Apps') that run on Google's Android operating system." Compl. ¶ 3. This is consistent with the Settlement Class definition of "application from Google Play."

Applying the 40% market share of Google's Android mobile devices to this total results in 19.8 million children in the Settlement Class. The parties agree all those claims will be released through the Settlement (if approved), and Plaintiffs further estimate the Settlement Class as consisting of approximately 3.8 to 10 million of these children. The upper bound of this estimate is based on industry guidance such as the age at which minors gain access to mobile devices and the concentration of app usage among older minors, as well as information learned in discovery such as the fact that Defendant Google maintained internal technical and policy controls during the class period that restricted data collection and use from younger Google users. The lower bound is based on the fact learned in discovery and settlement discussions that 3.8 million users may have used certain apps at issue and self-reported as being under 13 when they created their Google accounts.

### D. The Settlement Allows Plaintiffs' Counsel to Seek Fees and Costs and the Plaintiffs' Guardians to Seek Service Awards

As set forth in the Settlement Agreement, Plaintiffs will submit their fee request at least thirty-five days before the proposed Objection and Exclusion Deadline. *See* SA ¶ 12.2. Plaintiffs will seek fees for Plaintiffs' counsel in an amount not exceeding 30% of the Settlement Fund. The amount sought—no more than $2,475,000—represents a multiplier of approximately 2.02 on Plaintiffs' counsels' lodestar of $1,195,989.50,[4] based on more than 1,344 hours worked to date on the litigation. Sloss Decl. ¶ 18; *see In re Anthem, Inc. Data Breach Litig.,* No. 15-MD-02617-LHK, 2018 WL 3960068, at *4 (N.D. Cal. Aug. 17, 2018) ("Under the lodestar method, a 'lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer.'" (quoting *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 941 (9th Cir. 2011)). The fee request will be well within the multiplier range commonly awarded. *See In re Facebook, Inc. Consumer Priv. User Profile Litig.,* No. 3:18-MD-02843-VC, 2023 WL 8445812, at *1 (N.D. Cal. Oct. 10, 2023) (fee awarded based on multiplier of 1.99 on

---

[4] The lodestar and multiplier were calculated using Plaintiffs' counsel's 2025 hourly rates. If counsel's 2026 rates were used, the lodestar would be higher and the multiplier lower.

total hours billed in consumer privacy case), *aff'd sub nom. Akins v. Facebook, Inc.,* No. 23-3550, 2025 WL 484621 (9th Cir. Feb. 13, 2025); *Tanner v. Plavan Com. Fueling, Inc.,* 2025 WL 2231304, at *6 (S.D. Cal. Aug. 4, 2025) (in data breach class action, finding appropriate a multiplier of 2.29, calculated prior to hours billed in connection with preparing motion for final approval); *see also Wolf v. Permanente Medical Group, Inc.,* 2018 WL 5619801, at *2 (N.D. Cal. Sept. 14, 2018) (citing cases and noting that multiplier of 2.75 to 3.0 "falls within the range of fee multipliers courts routinely approve" in this Circuit).

Plaintiffs also intend to seek reimbursement of expenses up to $70,905.40. There is no clear sailing agreement. *See* SA ¶ 12. Approval of the Settlement is expressly not contingent upon approval of Plaintiffs' fee request, and Google has reserved its right to oppose Plaintiffs' fee request. *Id.* ¶ 12.1.

Under the Settlement, the three guardians *ad litem* for the six Plaintiffs, who each individually worked with Plaintiffs' counsel to develop the case and spent hours responding to Google's discovery, will seek approval of Service Awards of up to $500 each. *See* SA ¶ 12.6. As with Plaintiffs' fee request, approval of the Settlement is expressly not contingent upon the payment or amount of Service Awards to the guardians *ad litem* for the Plaintiffs, and Google has reserved the right to oppose Plaintiffs' Service Award request. *Id.* ¶ 12.1. The requested award amount is well within the range of reasonableness in this district. *See In re Linkedin User Priv. Litig.,* 309 F.R.D. 573, 592 (N.D. Cal. 2015) (incentive award of up to $5,000 is "presumptively reasonable).

### E. The Settlement's Release Is Coextensive with the Ninth Circuit's "Identical Factual Predicate" Requirement and Will Not Affect Any Other Cases

In exchange for Settlement Class benefits, the Settlement Agreement proposes to release Google from all claims "arising out of or relating to the allegations in the Action," including claims that "could have been brought by a parent or legal guardian on behalf of a minor child" but not asserted. *See* SA ¶ 2.31. This release is consistent with Ninth Circuit case law, which "allows federal courts to release not only those claims alleged in the complaint, but also claims 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Cottle v. Plaid Inc.,* 340 F.R.D. 356, 380 (N.D. Cal. 2021) (quoting *In re Anthem, Inc. Data Breach Litig.,*

1    327 F.R.D. 299, 327 (N.D. Cal. 2018)); *see also Hesse v. Sprint Corp.,* 598 F.3d 581, 590 (9th Cir.

2    2010) (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008); *Class Plaintiffs v. City*

3    *of Seattle,* 955 F.2d 1268, 1287 (9th Cir. 1992)).[5] Plaintiffs are unaware of any other cases that will

4    be affected by this Settlement. *See* Sloss Decl. ¶ 25.

5    **IV.    ARGUMENT**

6        **A.  The Settlement Merits Preliminary Approval**

7            Federal Rule of Civil Procedure 23(e) governs preliminary approval of class action

8    settlements. There is a "strong judicial policy that favors settlements, particularly where complex

9    class action litigation is concerned." *Class Plaintiffs*, 955 F.2d at 1276; *Rollins v. Dignity Health,*

10   336 F.R.D. 456, 461 (N.D. Cal. 2020). "Generally, unless the settlement is clearly inadequate, its

11   acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."

12   *Linkedin*, 309 F.R.D. at 587. To approve a class settlement, a court must determine that the

13   settlement is "fair, reasonable, and adequate." *In re Apple Inc. Device Performance Litig.,* 50 F.4th

14   769, 780 (9th Cir. 2022) (quoting Rule 23(e)(2)); *Uschold v. NSMG Shared Servs., LLC,* 333 F.R.D.

15   157, 169 (N.D. Cal. 2019) (at preliminary approval stage, "the settlement need only be potentially

16   fair"). The first step in this determination is to consider whether to preliminarily approve the

17   proposed settlement.

18           Under Rule 23(e), the court considers whether the settlement: (1) appears to be the product

19   of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment

20   to settlement class representatives or segments of the settlement class; (3) falls within the range of

21   possible approval; and (4) has no obvious deficiencies. *See In re Tableware Antitrust Litig.,* 484 F.

22   Supp. 2d 1078, 1079 (N.D. Cal. 2007). The proposed Settlement here merits preliminary approval

23   under all these factors.

24           **1.    The Settlement Resulted from Informed, Arm's-Length Negotiations**

25   ───────────────

26   [5] The release is also consistent with that in a substantially similar privacy case that received final

27   approval on January 13, 2026, involving Defendant Google's alleged violations of COPPA for
     illegal collection and use of data from children under 13 who watched videos on YouTube.

28   *Hubbard et al. v. Google LLC et al,* No. 5:19-cv-07016-SVK (N.D. Cal.), Dkt. No. 333-13 at ¶
     1.35; Dkt. No. 346.

1    The first factor looks to the circumstances in which the parties settled. *Mendez v. C-Two*

2 *Grp., Inc.*, 2017 WL 1133371, at *4 (N.D. Cal. Mar. 27, 2017). "To approve a proposed settlement,

3 a court must be satisfied that the parties 'have engaged in sufficient investigation of the facts to

4 enable the court to intelligently make . . . an appraisal of the settlement.'" *Uschold*, 333 F.R.D. at

5 169 (quoting *Harris v. Vector Mktg. Corp.,* 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011)).

6 "An initial presumption of fairness is usually involved if the settlement is recommended by class

7 counsel after arm's-length bargaining." *Id.* (quoting *Harris*, 2011 WL 1627973, at *8); *see also*

8 *Linney v. Cellular Alaska P'ship,* 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d

9 1234 (9th Cir. 1998) ("The involvement of experienced class action counsel and the fact that the

10 settlement agreement was reached in arm's length negotiations, after relevant discovery had taken

11 place create a presumption that the agreement is fair.").

12    The Settlement reflects the parties' informed knowledge of the strength, weaknesses, and

13 value of the claims. Sloss Decl. ¶ 23. Plaintiffs overcame in whole Defendants' motion to dismiss,

14 and the parties were engaged in discovery and preparing for depositions and class certification

15 briefing when the Settlement was reached. *Id.* ¶ 26. All parties were represented by seasoned

16 counsel who pursued their clients' interests. *Id.* ¶ 23. Initially, parties called off an in-person

17 mediation after a day-long virtual session. *Id.* ¶ 24. After further discovery and informal

18 negotiations following the virtual session, which lasted over the course of months, they managed to

19 reach an agreement at a day-long, in-person session led by a retired federal magistrate judge. *Id.*

20 The Settlement Agreement before the Court is the product of intensive negotiations before an

21 experienced mediator. *See Satchell v. Fed. Express Corp.,* 2007 WL 1114010, at *4 (N.D. Cal. Apr.

22 13, 2007); *Nen Thio v. Genji, LLC,* 14 F. Supp. 3d 1324, 1334 (N.D. Cal. 2014) (granting

23 preliminary approval where, *inter alia*, settlement negotiations occurred at arm's length with

24 assistance of experienced mediator). This factor accordingly supports preliminary approval.

25    **2.    The Settlement Treats Settlement Class Members Fairly and Equally**

26    The second factor is whether the proposed Settlement provides preferential treatment to any

27 Settlement Class Member. *See Mendez*, 2017 WL 1133371, at *4. The Settlement Class definition is

28 objective, comports with the release of liability, aligns with the operative facts and claims, and

makes it easy for all Settlement Class members to self-identify. *See Nicodemus v. Saint Francis Mem'l Hosp.*, 3 Cal. App. 5th 1200, 1212 (2016) (a class definition should "use terminology that will convey sufficient meaning to enable persons hearing it to determine whether they are members of the class") (internal quotation marks and citations omitted). The proposed claim form has been designed for ease of use, allowing Settlement Class Members to submit claims online or by mail by checking a few boxes to confirm their membership in the Settlement Class. *See* Declaration of Carla A. Peak in Support of Plaintiffs' Motion ("Peak Decl."), Ex. F. The Plan of Allocation treats all Settlement Class Members equally, and the same as each of the Plaintiffs. Because the Settlement places all Settlement Class Members on equal footing, this factor supports approval.

### 3. The Settlement Falls Within the Range of Possible Approval

In evaluating the third factor, "whether a settlement 'falls within the range of possible approval,' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Schuchard v. Law Off. of Rory W. Clark*, 2016 WL 232435, at *10 (N.D. Cal. Jan. 20, 2016) (quoting *Tableware*, 484 F. Supp. 2d at 1080). "Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly litigation." *Linkedin*, 309 F.R.D. at 587.

The Settlement meaningfully advances the value of alleged COPPA-violation-based claims. For example, the $1,100,000 settlement reached in 2019 in *T.K. v. Bytedance Tech. Co., Ltd.*, No. 1:19-cv-07915, Dkt. No. 93 (N.D. Ill. Mar. 25, 2022), settled claims predicated on COPPA violations and provided an estimated per-capita recovery of $0.18 to class members.[6] More recently, in *Hubbard et al. v. Google LLC,* No. 5:19CV07016 ("*Hubbard* Action"), Dkt. No. 341 (N.D. Cal.

---

[6] In *T.K.,* the claims asserted, and certified for settlement, included statutory claims based on federal and California privacy law and the VPAA. The claims released were all claims arising from or relating to Plaintiffs' complaint. The settlement amount was $1.1 million for a class size estimated at 6 million. The per claimant relief, based on claims submitted, was $3.06, with $109,206.63 distributed to Cy Pres. Attorneys' fees were $200,000, expenses were $16,133.53, and administrative costs were $391,560.58. The class representatives received service awards of $1,000 each. The settlement received final approval on March 25, 2022.

Sept. 23, 2025), the court granted preliminary approval of a $30 million settlement reached on behalf of a class estimated as totaling between 35 million and 45 million members,[7] representing a per capita between $0.67 and $0.86 per class member.[8] The *Hubbard* settlement received final approval on January 13, 2026. *Hubbard* Action, Dkt. No. 346.

As discussed above, although there is uncertainty as to the precise class size, Plaintiffs' estimate of 3.8 to 10 million class members yields a per class member recovery of $0.83 to $2.17. The low end of Plaintiffs' range of $0.83 is in line with the highest per-capita recovery of $0.86 given final approval in the *Hubbard* Action. At the high end of Plaintiffs' range, $2.17, the recovery reflects a meaningful increase over prior COPPA settlements, advancing the per-capita value of COPPA claims beyond those in the previously approved *T.K.* and *Hubbard* settlements, as outlined above. Moreover, even at the estimated maximum of 19.8 million class members, which Plaintiffs maintain is over-inclusive for the reasons explained above, the settlement provides $0.41 per class member and remains within the range of the *T.K.* and *Hubbard* settlements.

Even if Plaintiffs prevail on liability, which is not guaranteed due to the risks of litigation, they face the risk that a jury could nonetheless award nominal damages of $1 per class member, for a class-wide damage award of $3.8 million to $10 million. Under such circumstances, the $8,250,000 settlement reflects as good of a number (or better) as could be achieved at trial. Similarly, if Plaintiffs obtained a damages verdict at trial, it is likely that it would be a per-class

---

[7] In *Hubbard*, the claims asserted were substantially similar to those in this case: violation of various state consumer protection laws of California, for unjust enrichment under the laws of those states, and common law privacy violations. The claims released were all claims arising from or relating to Plaintiffs' complaint, similar to the release language in this case. See *Supra*, n. 5. The settlement amount was $30 million for a class size estimated at 35 to 45 million. Attorneys' fees were awarded in the amount of 30% of the settlement fund, and the guardians *ad litem* for the class representatives were granted service awards in the amount of $1,500 each. *See Hubbard* Action, Dkt. No. 346.

[8] Some privacy class actions have even settled for non-monetary relief alone. *See, e.g., Campbell v. Facebook Inc.,* 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of settlement providing for declaratory and injunctive relief in litigation alleging Facebook engaged in user privacy violations), *aff'd,* 951 F.3d 1106 (9th Cir. 2020); *In re Google LLC St. View Elec. Commc'ns Litig.,* 611 F. Supp. 3d 872 (N.D. Cal. 2020) (granting final approval of settlement providing injunctive relief and creating a non-distributable cy pres settlement fund in litigation alleging Google violated privacy by illegally gathering Wi-Fi network data).

member verdict because determining class membership would require a claims-made process. *See HsingChing Hsu v. Puma Biotechnology, Inc.*, 2019 WL 4295285, at \*4 (C.D. Cal. Sep. 9, 2019) (jury awarded damages of $4.50 per share and class members were subsequently notified of the verdict and required to submit claims).

Based on claims in similar cases and given the facts here, it is appropriate to assume a 1-2% claims rate. *See Cottle*, 340 F.R.D. at 374; *Anthem*, 327 F.R.D. at 321 (1.8% claims rate); *see also Hubbard* Action, Dkt. No. 341 (noting that a 1–2% net claims rate estimate made by a claims administrator was appropriate based on similar cases). Applying this rate to a class size of 3.8 to 10 million, Plaintiffs estimate that each Settlement Class Member who submits a valid and timely claim form will receive approximately $40 to $200 each, before deducting for notice and administration costs, taxes, attorneys' fees and expenses and service awards.

In contrast to these immediate cash benefits, continued litigation and any trial and appeal would entail significant risk, an uncertain outcome, and further delay. Google has vigorously denied Plaintiffs' allegations of wrongdoing. Absent settlement, Plaintiffs anticipate Google would aggressively defend this action, including by opposing class certification and moving for summary judgment. Google denies that Plaintiffs and Settlement Class members suffered any injury from the conduct alleged in the Complaint and has argued that Plaintiffs will be unable to prove otherwise if the case continues. To take one example, discovery revealed that Google had in place mechanisms designed to prevent the alleged harm at issue: data collection and use from under-13 users of Google Play apps. Moreover, if an under-13 user utilized a third party's Google account (*e.g.*, their parents'), or if they misrepresented their age as over 13 when creating their own Google account, Google would argue it could not have had "actual knowledge" the user was in fact under 13—as is required for liability to attach under COPPA. *See* 15 U.S.C. § 6502(a); 16 C.F.R. § 312.2.

Similarly, Plaintiffs' privacy-based torts rely on showing that Plaintiffs had a reasonable expectation that their information would be kept private, despite Google's disclosures regarding its data collection and use, and that Google's alleged collection and use of that information was

nonetheless highly offensive or serious.[9] Plaintiffs believe the evidence supports their allegation that they had a reasonable expectation of privacy. There are, however, risks associated with proving these privacy-based torts at trial. Google would likely argue that the data allegedly collected and used does not meet that threshold, especially given its public statements and disclosures, and a jury might agree.

Further litigation would require Plaintiffs to incur deposition-related expenses and considerable additional expenses for testifying experts—both for class certification and the merits—as well as expenses that Plaintiffs may ultimately incur in preparing for and conducting a multiweek-long, or more likely, months-long trial. These additional expenses would ultimately be deducted from the Settlement Class's recovery.

Further litigation would also involve complexity at almost every level. Presentation of briefs and arguments would require the extensive expert analysis and synthesis of complex data logs and tables. The parties and the Court would face the complexity of addressing class certification and summary judgment across dozens of claims covering a proposed Class Period of ten years on behalf of a putative class that could present manageability issues, but that certainly numbers in the millions. Those briefs (and others) would address complex legal issues, including whether the aggregate information Google produced is sufficient to establish Plaintiffs' claims.

Lastly, it is likely that litigation would continue for many years. The two remaining procedural hurdles of class certification and summary judgment are substantial and time-consuming. Moreover, there would be a host of other issues for the Court to decide. The parties would likely seek a lengthy jury trial, and this case would not end with a jury verdict. Given the novelty of the claims and the complexity of the facts, one or both parties would almost certainly appeal. Absent a settlement, Plaintiffs believe that Google and its counsel will continue to vigorously defend this action, further increasing the risk of long-lasting litigation.

---

[9] *See* Google Terms of Service, https://policies.google.com/terms ("If you're a parent or legal guardian, and you allow your child to use the services, then these terms apply to you and you're responsible for your child's activity on these services.").

In sum, absent settlement, it could be years before this action is finally resolved. The Settlement provides immediate cash relief tied to the value of the settled claims, now, without the attendant risks of future litigation. As such, it falls within the range of reasonableness.

### 4.    Experienced Counsel Recommend Approval

The Settlement has no material deficiencies and is supported by Plaintiffs and their counsel as fair, reasonable, and adequate. *See* Sloss Decl. ¶¶ 19. Plaintiffs' counsel has extensive experience prosecuting and settling class actions, including a recent settlement in a similar case involving COPPA claims against Google. *See* Sloss Decl. Exs. 2–3. Experienced counsel's judgment carries considerable weight. *See Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (quoting *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 125 (S.D.N.Y. 1997)); *Bellinghausen v. Tractor Supply Co.,* 2014 WL 1289342, at *8 (N.D. Cal. Mar. 20, 2015) ("The trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.").

### B.  The Court Should Certify the Settlement Class

The proposed Settlement Class meets the requirements for certification under Rule 23. Rule 23(a) requires (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). In addition, the Settlement Class must satisfy one of Rule 23(b)'s subsections. But when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there [will] be no trial." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997).

### 1.    The Settlement Class Satisfies Rule 23(a)

#### a.    *Numerosity*

Numerosity requires the proposed class to be so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a). Numerosity is generally satisfied when the class exceeds forty members. *See, e.g., Nevarez v. Forty Niners Football Co., LLC,* 326 F.R.D. 562, 576 (N.D. Cal. 2018); *Linkedin*, 309 F.R.D. at 583 ("where the number of class members exceeds forty, and particularly where class

1    members number in excess of one hundred, the numerosity requirement will generally be found to

2    be met"). That is easily met here.

3        The proposed Settlement Class includes millions of individuals. Android is the most widely

4    used mobile operating system in the world (Compl. ¶ 53), children under age 13 make up

5    approximately 16% of the population in the United States,[10] and the Settlement Class spans a period

6    of 10 years. SA ¶ 2.42. Although the parties are unable to identify the precise number of Settlement

7    Class Members, based on information available to the parties, Plaintiffs estimate the class size to be

8    3.8 to 10 million individuals. Numerosity is therefore met.

9                                    *b.    Commonality*

10       Commonality requires that the action involve "questions of law or fact common to the

11   class." Fed. R. Civ. P. 23(a)(2). This requirement has "been construed permissively, and all

12   questions of fact and law need not be common to satisfy the rule." *Anthem*, 327 F.R.D. at 308

13   (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011)). "Even a single

14   [common] question" will do. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 359 (2011) (quoting

15   Richard A. Nagareda, *The Preexistence Principle and the Structure of the Class Action*, 103 Colum.

16   L. Rev. 149, 176 n. 110 (2003)); *see also Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 589 (9th

17   Cir. 2012) (characterizing commonality as a "limited burden" which "only requires a single

18   significant question of law or fact"). "Thus, '[w]here the circumstances of each particular class

19   member vary but retain a common core of factual or legal issues with the rest of the class,

20   commonality exists.'" *Anthem*, 327 F.R.D. at 308 (quoting *Parsons v. Ryan,* 754 F.3d 657, 675 (9th

21   Cir. 2014)).

22       The claims here primarily derive from Google's alleged uniform practice during the

23   Settlement Class Period of gathering the personal online identifying information of millions of

24   minor children in the United States without first obtaining verifiable parental consent and then using

25   that data to serve targeted advertising. This alleged common conduct raises common questions,

26

27

28   [10] *Population ages 0-14 (% of total population) – United States*, World Bank Group,
     https://data.worldbank.org/indicator/SP.POP.0014.TO.ZS?locations=US.

1    resolution of which will generate common answers "apt to drive the resolution of the litigation" for

2    the Settlement Class as a whole. *Dukes,* 564 U.S. at 350 (quoting Richard A. Nagareda, *Class*

3    *Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). Plaintiffs'

4    remaining claims are for alleged privacy violations. *See* Compl. ¶¶ 231–350. These claims target an

5    alleged uniform practice or a unified course of conduct. The common legal and factual questions

6    arising from Plaintiffs' claims include whether Google's alleged underlying conduct violated

7    COPPA; whether Google's alleged conduct violated the privacy rights of Settlement Class

8    Members; whether Google disclosed its alleged conduct to Settlement Class Members; whether

9    Google's alleged conduct was highly offensive; whether Settlement Class Members suffered harm

10   as a result of Google's alleged conduct; and whether the Settlement Class is entitled to damages. *Id.*

11   ¶ 226. These more than suffice to meet the commonality requirement.

12               c.      *Typicality*

13        Typicality requires the class representatives' claims to be typical of the claims of the

14   proposed class. Fed. R. Civ. P. 23(a)(3). "[T]he typicality requirement is 'permissive' and requires

15   only that the representative's claims are 'reasonably co-extensive with those of absent class

16   members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th

17   Cir. 2010) (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998)). The purpose of

18   the typicality requirement is to assure that "the interest of the named representative aligns with the

19   interests of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016). Where

20   a plaintiff suffered a similar injury and other class members were injured by the same course of

21   conduct, typicality is satisfied. *See Parsons*, 754 F.3d at 685.

22        Here, the experiences of the Plaintiffs match the experiences of the millions of other minor

23   Android users under the age of 13 in the United States that make up the Settlement Class. Like other

24   Settlement Class Members, each of the Plaintiffs allegedly used Google Play Apps during the

25   Settlement Class Period and was under 13 at the time, and Google allegedly gathered the personal

26   online identifying information of each of the Plaintiffs without first obtaining verifiable parental

27   consent, and then allegedly used that data to serve targeted advertising. *See* Compl. ¶¶ 20–22, 44,

28   150, 193–210, 231–350-. Because Plaintiffs' allegations implicate the "same course of conduct,"

which is "not unique to the named plaintiffs," typicality is satisfied here. *Valliere v. Tesoro Refin. & Mktg. Co. LLC*, 2020 WL 13505042, at *5 (N.D. Cal. June 26, 2020) (citing *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992)).

d.       Adequacy

Rule 23(a)(4) requires "the representative parties [to] fairly and adequately protect the interests of the class." To determine adequacy, courts ask two questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*, 150 F.3d at 1020). Both criteria are easily met here.

First, neither Plaintiffs nor their guardians *ad litem* have any interests antagonistic to the other Settlement Class Members, whose interests they will continue to vigorously protect. *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *4–5 (N.D. Cal. July 22, 2020). Plaintiffs and their guardians *ad litem* are aligned with Settlement Class Members in their interest in proving that Google violated COPPA and their privacy rights. And they are aligned in seeking compensation and restitution for Settlement Class Members from Google for the alleged resulting harm. In addition, the guardians *ad litem*, acting on behalf of the Plaintiffs, understand the duties the Plaintiffs have as Settlement Class Representatives, have agreed to consider and protect the interests of absent Settlement Class Members, and have actively participated in this Action and Settlement. Plaintiffs and their guardians *ad litem* have provided their counsel with necessary factual information, responded to Google's discovery requests, are aware of and willing to carry out their obligations as Settlement Class Representatives, and have regularly communicated with their counsel regarding various issues pertaining to this case, and will continue to do so until the case closes. *See* Sloss Decl. ¶ 30. Their participation easily meets the adequacy requirement. *See Trosper v. Stryker Corp.,* 2014 WL 4145448, at *43 (N.D. Cal. Aug. 21, 2014) ("All that is necessary is a 'rudimentary understanding of the present action and . . . a demonstrated willingness to assist counsel in the prosecution of the litigation.'" (quoting *In Re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 120 (C.D. Cal. 2007) (citation omitted)).

Second, Plaintiffs' counsel are highly qualified lawyers who have successfully prosecuted high-stakes complex cases and consumer class actions. *See* Sloss Decl., Exs. 2–3. They have devoted the resources necessary to see this case through despite great risk. *Id.* ¶¶ 21–22, 29. Their capable representation in this case has included surviving Google's motion to dismiss in its entirety, pursuing and evaluating discovery, consulting with experts, and negotiating a substantial settlement on behalf of the Settlement Class. *Id.* ¶ 23.

### 2.    The Settlement Class Satisfies Rule 23(b)(3)

Plaintiffs seek certification under Rule 23(b)(3), under which courts certify classes when: (i) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (ii) a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As discussed below, the Settlement Class satisfies both prerequisites for settlement purposes.

#### a.    Common issues of law and fact predominate

The predominance inquiry under Rule 23(b)(3) focuses on whether the "common questions present a significant aspect of the case and . . . can be resolved for all members of the class in a single adjudication." *Hanlon,* 150 F.3d at 1022 (citation and quotation omitted). If so, "there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (citation and quotation omitted). Even if just one common question predominates, "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." *Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442, 453 (2016) (quoting 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778 (3d ed. 2005) (footnotes omitted)).

The common questions here, described above, can be resolved for all members of the Settlement Class in a single adjudication. Google's alleged practices during the Settlement Class Period of gathering the personal online identifying information of minor children without first obtaining verifiable parental consent raises common questions of law and fact that can be answered on a class-wide basis. Plaintiffs' claims target an alleged uniform practice and unified course of conduct by Google that allegedly did not vary based on the location of the user.

Common issues predominate in part because Plaintiffs claim that Google's alleged conduct was uniform throughout the United States and in part because an underlying core issue here is whether Google's conduct violated a single federal law: COPPA. In addition, while the claims asserted here are state common law privacy claims, these claims are substantially similar from state to state and are well-suited to class certification on a nationwide basis, particularly in the settlement context, when defendants agree that certification for settlement purposes is appropriate. *See, e.g., In re 23andMe, Inc. Customer Data Sec. Breach Litig.*, 2024 WL 4982986, at *4 (N.D. Cal. Dec. 4, 2024); *Smith v. Keurig Green Mountain, Inc.*, 2022 WL 2644105, at *3 (N.D. Cal. July 8, 2022); *Theodore Broomfield v. Craft Brew All., Inc.*, 2020 WL 1972505, at *22–23 (N.D. Cal. Feb. 5, 2020); *Fitzhenry-Russell v. Coca-Cola Co.*, 2019 WL 11557486, at *3 (N.D. Cal. Oct. 3, 2019); *Kumar v. Salov N. Am. Corp.*, 2017 WL 2902898, at *6 (N.D. Cal. July 7, 2017), aff'd, 737 F. App'x 341 (9th Cir. 2018); *Lundell v. Dell, Inc.*, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006). As recognized by the Seventh Circuit, the settlement context presents no need to "draw fine lines among state-law theories of relief." *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 746–47 (7th Cir. 2001). Thus, "the fact that . . . claims . . . implicate the laws of different states" will not "defeat predominance for the purpose of certifying a settlement class." *T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *6 (N.D. Ill. Mar. 25, 2022) (citation omitted).

There are four non-exclusive factors "pertinent" to a predominance finding: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b).

Here, these factors support a predominance finding. Settlement Class Members' interest in controlling separate actions is low, given the efficiencies of collectively adjudicating the many common legal and factual questions, as well as the risks and expense of litigating this case. Plaintiffs are unaware of any other cases asserting claims against Google substantially similar to those asserted here, but if other cases were to be filed, judicial efficiency and avoiding possible inconsistent rulings would militate towards concentrating those actions here. Although litigating

1  this case has not been without its difficulties, managing millions of individual cases would present

2  exponentially more difficulties. In any event, "[a] class that is certifiable for settlement may not be

3  certifiable for litigation if the settlement obviates the need to litigate individualized issues that

4  would make a trial unmanageable." *In re Hyundai and Kia Fuel Econ. Litig.,* 926 F.3d 539, 558 (9th

5  Cir. 2019).

### *b.    Settlement class treatment is superior*

7  Rule 23(b)(3)'s "superiority" element "requires determination of whether the objectives of

8  the particular class action procedure will be achieved in the particular case." *Hanlon,* 150 F.3d at

9  1023. "Where each class member bringing an individual suit 'would be required to prove the same

10  wrongful conduct to establish liability and thus would offer the same evidence . . . classwide

11  resolution of their claims is clearly favored over other means of adjudication.'" *Cottle*, 340 F.R.D.

12  at 372(cleaned up).

13  Here, settlement class treatment is superior to the litigation of hundreds or thousands of

14  individual claims. "From either a judicial or litigant viewpoint, there is no advantage in individual

15  members controlling the prosecution of separate actions. There would be less litigation or

16  settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon,*

17  150 F.3d at 1023. The damages sought by each Settlement Class Member, when weighed against

18  their risks, are not so large as to counsel against certification. *See Smith v. Cardinal Logistics Mgmt.*

19  *Corp.,* 2008 WL 4156364, at *11 (N.D. Cal. Sep. 5, 2008).

20  The sheer number of separate trials that would be required also favors certification. *See id.*

21  Even if Settlement Class members could afford individual litigation, the court system could not.

22  Individualized litigation creates the potential for inconsistent or contradictory judgments and

23  increases the delay and expense to all parties and the court system. By contrast, the class action

24  device presents far fewer management difficulties, and provides the benefits of single adjudication,

25  economy of scale, and comprehensive supervision by a single court.

### C.  Plaintiffs Should Be Appointed as Settlement Class Representatives and Plaintiffs' Counsel Should Be Appointed as Settlement Class Counsel

Rule 23(g)(1) requires a court that is certifying a class to appoint class representatives and class counsel. In deciding whom to appoint as class counsel, the court considers: (1) the work counsel has done in identifying or investigating claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Plaintiffs' counsel are highly qualified lawyers who have successfully prosecuted high-stakes complex cases and consumer class actions, and they have devoted the resources necessary to see this case through despite great risk. Their capable representation in this case has included surviving Google's motion to dismiss, pursuing discovery, and negotiating a favorable settlement on behalf of the Settlement Class. Sloss Decl. ¶¶ 21–22, 29. The guardians *ad litem,* acting on behalf of the Plaintiffs, understand the duties owed by Plaintiffs and their guardians ad litem as Settlement Class Representatives, have agreed to consider and protect the interests of absent Settlement Class members, and have, on behalf of the Plaintiffs, actively participated in this Action and Settlement. Thus, Plaintiffs, by and through their guardians *ad litem* should be appointed to serve as Settlement Class Representatives on behalf of the Settlement Class and Plaintiffs' counsel should be appointed Settlement Class Counsel for the Settlement Class.

### D. The Proposed Notice Program, Settlement Administrator, and Process for Opt-Outs and Objections Should Be Approved

#### 1. Proposed Notice to the Class

Rule 23 requires the Court to direct the best notice practicable to all settlement class members who would be bound by a proposed settlement. *See* Rule 23(c)(2)(B), (e)(1). The proposed Notice Plan meets those standards. Peak Decl. ¶ 43. It will include paid advertising notice through digital and social media, a paid keyword search campaign, a press release, a dedicated Settlement Website, a toll-free telephone line, and, as needed, additional efforts to obtain a higher claims rate. *Id.* ¶ 9. The Settlement Administrator estimates that the proposed notice campaign will reach approximately 70% of Settlement Class Members – the percentage reach characterized as the "norm" and a "high percentage" by the Federal Judicial Center – and that each Settlement Class

1    Member will be exposed to the notice an average of 3.9 times by way of digital media notice alone.

2    *Id.* ¶¶ 7, 42. For that reason, the Settlement Administrator believes that this notice plan is the best

3    practicable one in these circumstances. *Id.* ¶ 43.

4        As this District's guidance recommends, the draft notice includes the following: (i) contact

5    information for Settlement Class Counsel; (ii) the address for the Settlement Website (which will

6    include, among other things, links to the notice, Claim Form, and, important documents in the case

7    such as, when filed on the docket, the preliminary approval order, motions for preliminary and final

8    approval and for attorneys' fees); (iii) instructions on how to access the case docket via PACER or

9    in person; (iv) the date and time of the final approval hearing, clearly stating that the date may

10   change without further notice to the Settlement Class; and (v) a note to Settlement Class Members

11   to check the settlement website or PACER to confirm the date. Peak Decl. ¶ 31and Ex. E.

12       On behalf of Google, the Settlement Administrator will provide notice pursuant to the Class

13   Action Fairness Act ("CAFA") within ten days of the filing of the Settlement Agreement. SA ¶ 7.9;

14   Peak Decl. ¶ 10.[11]

15               **2.      The Settlement Administrator and Claims Rate**

16       Plaintiffs propose Kroll as the Settlement Administrator. SA ¶ 2.38; Sloss Decl. ¶ 15.

17   Plaintiffs submitted requests for proposals and had Zoom calls with four prospective settlement

18   administrators. *Id*. Only after receiving and carefully evaluating the bids from each did Plaintiffs

19   select Kroll as the most competitive bid in terms of cost and experience. *Id*.

20       Settlement Class Counsel have not engaged Kroll for any other class action settlements in

21   the past two years. However, Kroll has considerable experience as the appointed settlement

22   administrator in large class action settlements involving Google and other social media or

23   technology platforms such as *In re Yahoo!.* Peak Decl. ¶ 5. In the accompanying declaration, Kroll,

24

25   _____

26   [11] Direct notice to the class is not practicable. For instance, the class includes under-13 users who
     accessed the at-issue apps using Google accounts belonging to third parties (*e.g.,* parents or friends),
     and who may have misrepresented their age when creating Google accounts. *Supra* Section I.C. The

27   parties have no way of identifying those accounts. Even as to Google accounts that were registered
     to under-13s, it is not practicable to identify which users may have received targeted advertising,

28   especially given Google attempted to block the service of targeted ads to those users. *See id.*

an industry leader in data security, details the extensive data security measures it has established to securely handle class members' data. *See id.* ¶¶ 36-39 and Ex. A. It also maintains comprehensive insurance coverage, including professional liability insurance, and crime insurance. *Id.* ¶ 37.  Kroll has estimated the anticipated costs of issuing notice and administering the Settlement as $364,779. Sloss Decl. ¶ 18. These costs will be paid out of the Settlement Fund. SA, ¶¶ 4.7.1, 7.3. The estimated costs of notice and administration are more than reasonable when compared to the value of the Settlement and the size of the Settlement Class. The estimated anticipated costs are only 4% of the $8.25 million Settlement Fund.

### 3.    Opt-Outs and Objections

The proposed schedule ensures that Settlement Class Members have at least 75 days from the issuance of the order granting preliminary approval to opt out or object to the Settlement, and 35 days to object to the motion for attorneys' fees and costs. N.D. Cal. Procedural Guidance at ¶ 9. The instructions are in plain language and clearly prompt those who wish to opt-out or object to provide the specific information each action requires. Peak Decl., Ex. E. The notice clearly informs Settlement Class Members of the opt-out deadline and how to opt out, and requires that they supply only the information needed to opt out of the Settlement. *Id.* Similarly, the notice informs Settlement Class Members of the objection deadline and instructs them to send their written objections to the Court, tells them that the Court can only approve or deny the Settlement and cannot change its terms, and clearly identifies the objection deadline. *Id.*

### E.  The Proposed Final Approval Hearing Schedule

Plaintiffs' [Proposed] Order Granting Preliminary Approval of the Class Action Settlement, filed as an attachment hereto, includes the following proposed schedule for the approval process:

| Event | Proposed Timeline for Compliance |
| --- | --- |
| Google shall pay or cause to be paid a portion of the Settlement Fund in an amount sufficient to effectuate the Notice Plan to the Settlement Administrator | 25 days following Preliminary Approval Order |
| Notice disseminated to Settlement Class Members consistent with the Notice Plan | 30 days following Preliminary Approval Order |

| Plaintiffs' Counsel shall file all papers in support of motion for Attorneys' Fees, Expenses, and Service Awards | 55 days following Preliminary Approval Order |
|---|---|
| Plaintiffs' Counsel shall file all papers in support of the motion for Final Approval | 65 days following Preliminary Approval Order |
| Deadline to oppose application for Attorneys' Fees and Expenses Award and/or for Service Awards | 85 days following Preliminary Approval Order |
| Deadline for Settlement Class Members to Object/Exclude themselves from the Settlement | 95 days following Preliminary Approval Order |
| Plaintiffs' Counsel shall file all reply papers in support of the motions for Final Approval and for Attorneys' Fees, Expenses and Service Awards | 105 days following Preliminary Approval Order |
| Final Approval Hearing | 120 days following Preliminary Approval Order |
| Settlement Class Members who wish to make a claim must do so by submitting a claim | 135 days following Preliminary Approval Order |

## V.    CONCLUSION

For all the foregoing reasons, Plaintiffs' motion for (i) preliminary approval of the Settlement, (ii) certification of the Settlement Class, (iii) appointment of Plaintiffs (through their guardians *ad litem*) as Settlement Class Representatives, (iv) appointment of Silver Golub & Teitell LLP and Lexington Law Group as Settlement Class Counsel, (vi) approval of the form and substance of the Settlement Class Notice, Summary Notice, Claim Form, and Notice Plan, (vii) approval of Kroll as Settlement Administrator, and (viii) a schedule for Settlement Class members to exercise their rights in connection with the proposed Settlement and for final approval of the Settlement, the Plan of Allocation, and Plaintiffs' counsel's application for attorneys' fees and expenses and request for service awards should be granted in all respects.

1    DATED: January 13, 2026                   Respectfully submitted,

2

3                                              By: */s/ Patrick Carey*
                                                   David S. Golub (pro hac vice forthcoming)
4                                                  Steven L. Bloch (pro hac vice)
                                                   Ian W. Sloss (pro hac vice)
5                                                  Jennifer Sclar (pro hac vice)
                                                   Johnathan Seredynski (pro hac vice)
6                                                  SILVER GOLUB & TEITELL
                                                   One Landmark Square, 15th Floor
7                                                  Stamford, Connecticut 06901
                                                   Telephone: (203) 325-4491
8                                                  isloss@sgtlaw.com
                                                   sbloch@sgtlaw.com
9                                                  jsclar@sgtlaw.com
                                                   jseredynski@sgtlaw.com
10
                                                   Patrick Carey (Bar No. 30862)
11                                                 Mark Todzo (Bar No. 168389)
                                                   LEXINGTON LAW GROUP
12                                                 503 Divisadero Street
                                                   San Francisco, California 94105
13                                                 Telephone: (415) 913-7800
                                                   pcarey@lexlawgroup.com
14                                                 mtodzo@lexlawgroup.com

15                                                 *Attorneys for Plaintiffs and the Proposed Class*
                                                   *Class*
16

17

18

19

20

21

22

23

24

25

26

27

28