Patrick Carey (Bar No. 30862)
Mark Todzo (Bar No. 168389)
LEXINGTON LAW GROUP
503 Divisadero Street
San Francisco, California 94105
Telephone: (415) 913-7800
pcarey@lexlawgroup.com
mtodzo@lexlawgroup.com

David S. Golub (pro hac vice forthcoming)
Steven L. Bloch (pro hac vice)
Ian W. Sloss (pro hac vice)
Jennifer Sclar (pro hac vice forthcoming)
Johnathan Seredynski (pro hac vice forthcoming)
SILVER GOLUB & TEITELL LLP
One Landmark Square, 15th Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491
isloss@sgtlaw.com
sbloch@sgtlaw.com
jsclar@sgtlaw.com
jseredynski@sgtlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTHERN CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| A.B., a minor, by and through his guardian JEN TURNER, C.D.1, C.D.2, and C.D.3 minors, by and through their guardian KIRENDA JOHNSON, E.F.1, and E.F.2, by and through their guardian BARABRA HAYDEN-SEAMAN, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>GOOGLE LLC, ADMOB GOOGLE INC., and ADMOB, INC.,<br><br>*Defendants.* | Civil Case No.: 5:23-cv-03101-PCP<br><br>**DECLARATION OF IAN W. SLOSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Judge: Hon. P. Casey Pitts<br>Courtroom: Courtroom 8 – 4th Floor<br>Hearing Date: February 19, 2026<br>Hearing Time: 10:00 a.m. PST |

I, Ian W. Sloss, declare and state as follows:

1. I am an attorney duly admitted *pro hac vice* to practice before this Court and a partner of Silver Golub & Teitell LLP. I am counsel for Plaintiffs in this matter. I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class ("Motion"). I have personal knowledge of the facts stated herein and, if called upon to do so, could and would testify competently thereto.

2. After two years of litigation, Plaintiffs and Defendants have reached a mediated settlement of this litigation on a nationwide basis under which Defendants will pay $8,250,000 to fully resolve, without any admission of liability or wrongdoing by Defendants, the claims asserted against them in the litigation. The $8,250,000 cash payment by Defendants is non-reversionary and will provide meaningful compensation to Settlement Class Members who choose to participate in the Settlement. In light of what has been achieved in this case, I submit that the Settlement is an outstanding result for the Settlement Class that merits Court approval.

3. Pursuant to Federal Rule of Civil Procedure 23 and the Northern District of California's Procedural Guidance for Class Action Settlements ("N.D. Proc. Guidance"), Plaintiffs now seek: (i) preliminary approval of the Settlement, (ii) certification of the Settlement Class, (iii) appointment of plaintiffs (through their guardians *ad litem*) as Settlement Class Representatives, (iv) appointment of Silver Golub & Teitell LLP and Lexington Law Group as Settlement Class Counsel, (v) approval of the form and substance of the Settlement Class Notice, Summary Notice, Claim Form, and Notice Plan, (vi) approval of Kroll as Settlement Administrator, and (vii) a schedule for Settlement Class Members to exercise their rights in connection with the proposed Settlement and for final approval of the Settlement, the Plan of Allocation, and Plaintiffs' counsel's application for attorneys' fees and expenses.

### I. OVERVIEW OF THE LITIGATION

4. In 2015, Google launched the "Designed for Families" ("DFF") program on the Google Play Store. ECF No. 1 ("Compl."), ¶ 11. Google marketed the DFF program as a way parents and children could find age-appropriate content on the Google Play Store. *Id.,* ¶¶ 11, 93, 104. Most DFF Apps were offered for free but showed user advertisements. *Id.,* ¶¶ 4, 9, 60, 62. The AdMob

software development kit, or "SDK," provides Android App developers with code to include in their Android Apps which (1) enables Google to collect data, including persistent identifiers, from the Android App users; and (2) shows advertisements to Android App users while they are using those Apps based on the persistent identifiers collected. *Id.,* ¶ 5. If embedded in a DFF App by the app developer, the AdMob SDK can send AdMob the personal information of a user of the DFF App and show that user advertisements. *Id.,* ¶¶ 5, 66, 71, 74.

5. In September 2018, the NM AG sued Defendants Google LLC and AdMob Google, Inc. (together, "Google" or "Defendants") and several tracking technology companies on behalf of New Mexico residents, alleging that the use of the AdMob SDK by DFF Apps violated the Children's Online Privacy Protection Act, ("COPPA"), 15 U.S.C. § 6501, *et seq.*, the New Mexico unfair trade practices act, and the common law invasion privacy tort intrusion upon seclusion. *N.M. ex rel. Balderas v. Tiny Lab Prods.,* Case No. 1:18-cv-00854, District of New Mexico ("NM Action"), ECF No. 1, ¶¶ 1-10, 207-51. After United States District Judge Martha Vasquez granted in part and denied in part Google and AdMob's motion to dismiss, *N.M. ex rel. Balderas v. Tiny Lab Prods.,* 516 F.Supp.3d 1293 (D.N.M. 2021), Google and AdMob settled with the NM AG on December 10, 2021, agreeing to pay $5 million and to amend their practices to comply with COPPA. NM Action, ECF No. 149; Compl. ¶ 157.

6. Plaintiffs, six minors residing in three states—California, Florida, and New York—represented by their guardians *ad litem*, filed this action on June 22, 2023, alleging that Defendants collected the personal information and tracked millions of children under the age of 13 without parental consent between April 1, 2015 to the present (the "Class Period").

7. Plaintiffs represent themselves and millions of other children nationwide under the age of 13 who allegedly downloaded or otherwise used an application from Google Play and from whom Defendants allegedly collected, used, or disclosed any personal information without their parents' knowledge or consent.

8. On September 14, 2023, Defendants filed a motion to dismiss the Complaint (ECF No. 27), which Plaintiffs opposed (ECF No. 33), and which the Court denied in its entirety on June 18, 2024. *See* ECF No. 43.

9. The parties participated in ongoing discovery. Plaintiffs served Defendants with two sets of document requests and interrogatories, to which Defendants responded and produced documents, all of which were reviewed by Plaintiffs' counsel. Plaintiffs responded to Defendants' document requests and interrogatories as well.

## II. MEDIATION AND THE SETTLEMENT

10. On September 26, 2024, the Court ordered the parties to file a stipulation selecting an ADR process or a notice for need of ADR conference by October 24, 2024. *See* ECF No. 56. The parties conferred regarding mediation, including exchanging lists of mediators and potential dates for a mediation to take place.

11. After careful consideration, the parties selected the Hon. Jan M. Adler (Ret.) of Judicate West for a mediation to take place in early 2025. After 25 years litigating as a trial lawyer, including class actions, Judge Adler served as a Federal Magistrate Judge for over 15 years and two years as Presiding Magistrate Judge, before acting as a mediator since his retirement in 2018.

12. Mediation was scheduled for February 21, 2025. The parties exchanged confidential mediation statements a week prior on February 14, 2025. Due to the significant differences in each party's position, the mediation was cancelled to continue with discovery and attempt to narrow the gap between the parties' respective positions.

13. Mediation was re-scheduled for August 29, 2025. The parties exchanged new mediation statements based on the intervening discovery and investigation.

14. On September 10, 2025, the parties informed the Court that they had reached a settlement in principle. *See* ECF No. 76.

15. Since then, the parties have been working diligently to document the Settlement with a formal Settlement Agreement, and discussing other aspects of the Settlement, such as the Notice Plan, the form and content of notices and the Claim Form, and the selection of the Settlement Administrator – which was done through a competitive bidding process. Plaintiffs submitted requests for proposals and had Zoom calls with four prospective settlement administrators. Only after receiving and carefully evaluating the bids from each did Plaintiffs select Kroll as the most competitive bid in terms of cost and experience.

16. The Settlement Agreement ("SA"), attached hereto as **Exhibit 1**, was finalized and executed by the parties on January 13, 2026.

17. The Settlement provides for Google to make a $8,250,000 non-reversionary cash payment to create the Settlement Fund. All costs of notice and administration, attorneys' fees and costs awarded to Plaintiffs' counsel, and any service awards to the Settlement Class Representatives will be paid from the Settlement Fund, and the balance will then be distributed on a *pro rata* basis to all Settlement Class Members who file valid and timely claims. SA, ¶¶ 4.1, 4.7–4.11.

18. Plaintiffs will seek fees for Plaintiffs' counsel in an amount not exceeding $2,475,000, which represents 30% of the Settlement Fund. The amount sought represents a modest multiplier of approximately 2.02 on Plaintiffs' counsels' lodestar of $1,195.989.50, based on more than 1,344 hours worked on the litigation for the past two and a half years. Plaintiffs also intend to seek reimbursement of expenses up to $70,905.40. Kroll has estimated the anticipated costs of issuing notice and administering the Settlement as $364,779.

19. The Settlement is an excellent result for a case involving alleged privacy violations based on COPPA, and a significant result more generally in cases alleging similar data-privacy violations.

20. Although there is uncertainty as to the precise class size, Plaintiffs' estimate of 3.8 to 10 million class members yields a per class member recovery of $0.83 to $2.17. The low end of this range of $0.83 is in line with the highest per-capita recovery of $0.86 given preliminary approval in *Hubbard et al. v. Google LLC,* No. 5:19CV07016, Dkt. No. 341 (N.D. Cal. Sept. 23, 2025). At the high end of the range, $2.17 per class member, the recovery reflects a meaningful increase over prior COPPA settlements, advancing the per-capita value of COPPA claims beyond those previously approved in *Hubbard* and *T.K. v. Bytedance Tech. Co., Ltd.*, No. 1:19-cv-07915, Dkt. No. 93 (N.D. Ill. Mar. 25, 2022) (estimated per-capita recovery of $0.18 to class members in claims predicated on COPPA violations).

21. Even if Plaintiffs prevail on liability, which is not guaranteed due to the risks of litigation, they face the risk that the jury could nonetheless award nominal damages of $1 per class member, for a class-wide damage award of $3.8 million to $10 million. Under such circumstances,

the $8,250,000 settlement reflects as good of a number (or better) as could be achieved at trial. Similarly, if plaintiffs obtained a damages verdict at trial, it is likely that it would be a per-class member verdict because determining class membership would require a claims-made process. *See HsingChing Hsu v. Puma Biotechnology*, Inc., No. SACV 15-00865 AG (SHKX), 2019 WL 4295285, at *4 (C.D. Cal. Sept. 9, 2019) (jury awarded damages of $4.50 per share and class members were subsequently notified of the verdict and required to submit claims).

22. Assuming a 1-2% claims rate, which is appropriate based on similar cases, Plaintiffs estimate that each Settlement Class Member who submits a valid and timely claim form will receive approximately $40 to $200 each, before deducting for notice and administration costs, taxes, attorneys' fees and expenses and service awards. In contrast to these immediate cash benefits, continued litigation and any trial and appeal would entail significant risk, an uncertain outcome, and further delay.

23. The Settlement here was reached after over two years of litigation and reflects the parties' informed knowledge of the strength, weaknesses, and value of the claims. Plaintiffs overcame in whole Defendants' motion to dismiss, and the parties were engaged in discovery and preparing for depositions and class certification briefing when the Settlement was reached. Before arriving at the Settlement, Plaintiffs' counsel had thoroughly researched the law and the facts, reviewed and analyzed interrogatory responses and documents produced by Google, consulted with experts, and responded to discovery for the Plaintiffs. Plaintiffs' counsel thereby developed an understanding of the strengths and weaknesses of the claims and defenses. All parties were represented by seasoned counsel who pursued their clients' interests.

24. Initially, the parties called off an in-person mediation after a day-long virtual session. After further discovery and informal negotiations following the virtual session, which lasted over the course of months, they managed to reach an agreement at a day-long, in-person session led by a retired federal magistrate judge. The Settlement Agreement before the Court is the product of intensive negotiations before a highly respected mediator.

25. Plaintiffs are unaware of any other cases that will be affected by this Settlement.

### III. SETTLEMENT CLASS COUNSEL AND CLASS REPRESENTATIVES

26. Plaintiffs' counsel have capably and successfully represented Plaintiffs and the proposed class in this action over the past two and a half years. Plaintiffs overcame in whole Defendants' motion to dismiss, *see* ECF No. 43, and the parties were engaged in discovery and preparing for depositions and class certification briefing when the Settlement was reached.

27. The Settlement, which is the product of intensive negotiations before an experienced mediator, reflects the parties' informed knowledge of the strength, weaknesses, and value of the claims.

28. Plaintiffs' counsel negotiated a favorable class-wide settlement that will return a significant portion of potentially recoverable damages to the Settlement Class.

29. As set forth in the firm resumes attached hereto as **Exhibit 2** (Silver Golub & Teitell LLP) and **Exhibit 3** (Lexington Law Group), Plaintiffs' counsel are highly qualified and experienced lawyers who have successfully prosecuted high-stakes, complex cases and consumer class actions, and they have devoted the resources necessary to see this case through despite great risk. Based on this record, Plaintiffs' counsel should be appointed to serve as Settlement Class Counsel on behalf of the Settlement Class.

30. Plaintiffs seek appointment, through their respective guardians *ad litem*, as Settlement Class Representatives for the Settlement Class. Plaintiffs (and their guardians *ad litem*) have claims that are typical of the Settlement Class and have no interests antagonistic to other Settlement Class Members. Plaintiffs and their guardians *ad litem* have ably represented the Settlement Class throughout the litigation. They have provided Plaintiffs' counsel with necessary factual information, responded to Defendants' discovery, communicated regularly with counsel about the case and the settlement, and are aware of their duties and obligations as Settlement Class Representatives. Plaintiffs and their respective guardians *ad litem* should thus be appointed as Settlement Class Representatives for the Settlement Class.

### IV. CONCLUSION

31. The settlement achieved represents a significant portion of potentially recoverable damages for the Settlement Class negotiated by Plaintiffs' counsel, balancing the potential recovery

in the case with the significant risks Plaintiffs faced in continuing to litigate. I recommend the settlement for approval by the Court.

  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and to the best of our knowledge. Executed on this 13th day of January, 2026 in Stamford, Connecticut.

_____
Ian W. Sloss